IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv01382 (RMU) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT CENTRAL INTELLIGENCE AGENCY'S**
**MOTION FOR SUMMARY JUDGMENT**

Defendant Central Intelligence Agency hereby moves for summary judgment pursuant to

Fed. R. Civ. P. 56.  The reasons for this motion are set forth in the accompanying memorandum.


Dated:  May 30, 2008

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


 /s / Vesper Mei
VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044

Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE JAMES MADISON PROJECT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07cv01382 (RMU) |
| | ) | |
| CENTRAL INTELLIGENCE AGENCY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**STATEMENT**

In this action filed pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Plaintiff The James Madison Project ("JMP") seeks from the Central Intelligence Agency ("CIA") copies of guidelines, regulations or policy memoranda pertaining to the operation of the CIA's Publications Review Board ("PRB"). Plaintiff's Complaint ("Compl.") ¶ 5. The CIA responded to Plaintiff's FOIA request by conducting a thorough search of its relevant offices, files and automated systems, and released responsive documents to Plaintiff. Moreover, after Plaintiff identified perceived deficiencies in the CIA's initial response, the CIA followed up on those perceived deficiencies, reexamined certain documents identified by Plaintiff, reprocessed and released additional information where appropriate, and located and released additional documents. In making its FOIA production, the CIA withheld certain records pursuant to well-recognized exemptions for protecting classified information; internal agency matters; information protected by statute concerning CIA sources, methods, organization, and functions; and the

attorney-client privilege, the work product doctrine, and the deliberative process privilege.  The

CIA's invocation of these exemptions was necessary and proper, as the detailed declarations and

Vaughn index submitted with this motion makes clear.  The CIA is, therefore, entitled to

summary judgment on Plaintiff's FOIA claim.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 26, 2007, Plaintiff submitted its FOIA request to the CIA.  May 30, 2008

Declaration of Martha M. Lutz, Information Review Officer for the Director of the

Central Intelligence Area, Central Intelligence Agency ("Lutz Decl.") ¶ 11; Ex. B thereto.  In that

request, Plaintiff sought "copies of all internal Central Intelligence Agency ("CIA") documents

constituting guidelines, regulations or policy memoranda pertaining to the creation and operation

of the Publications Review Board."  Id.  On July 4, 2007, the CIA acknowledged receipt of

Plaintiff's FOIA Request, granted Plaintiff's request for a fee waiver, and stated that its backlog

of FOIA requests would prevent it from responding to Plaintiff's FOIA request within the twenty

days prescribed by statute.  Lutz Decl. ¶ 12; Ex. C thereto.  The CIA further stated that, unless

Plaintiff objected, the CIA would limit its search for responsive records to CIA-originated

records existing through the date of the CIA's July 4, 2007 acceptance letter.  Id.  Plaintiff has

not objected to the temporal restrictions placed upon its FOIA request.  Id. ¶ 12.

On July 30, 2007, Plaintiff filed this lawsuit.  The CIA filed its Answer on September 7,

2007.  In a Joint Status Report filed by the parties on November 2, 2007, the parties agreed, inter

alia, that the CIA would process and release any non-exempt documents or portions of

documents responsive to Plaintiff's request by January 11, 2008.  Joint Status Report, Docket #

5.  Pursuant to that agreement, on January 11, 2008, the CIA produced nine redacted-in-part

("RIP") documents.[1]  Lutz Decl. ¶ 14; Ex. E thereto.  The CIA withheld information from the

RIP documents based upon FOIA exemptions (b)(1), (b)(2), (b)(3), and (b)(5).  Id.  The CIA also

withheld three documents in their entirety ("denied-in-full" or "DIF" documents) based upon

FOIA exemptions (b)(1), (b)(3), and (b)(5).[2]  Id.

On January 17, 2008, Plaintiff advised the CIA of several perceived deficiencies in the

CIA's response to Plaintiff's FOIA request.  Lutz Decl. ¶ 15; Ex. E thereto.  Specifically,

Plaintiff: 1) questioned whether the CIA adequately searched for PowerPoint slides that the PRB

had allegedly used during briefings; 2) asserted the CIA should search for, and produce, several

documents and Web pages referenced in document number 1512160; 3) asserted the CIA should

search for, and produce, the written guidance referenced in document number 1512161; 4)

asserted the CIA should search for, and produce, the March 26, 1999 Agency Regulation ("AR")

referenced in document number 1512162; 5) asserted the CIA should search for, and produce,

several documents referenced in document number 1512163; 6) asked the CIA to search for, and

produce, additional policy/internal memoranda responsive to Plaintiff's FOIA request; and 7)

challenged the redactions made to document number 1512164.  Id.  In subsequent

correspondence, Plaintiff indicated it also challenged the redactions that the CIA made in

document number 1512166.  Lutz Decl. ¶ 15.  Plaintiff also asked the CIA to search for a version

of that document containing pages twenty-nine and thirty.  Id.  Plaintiff did not challenge the

withholdings made in the remaining RIP and DIF documents.  Id.

---

[1] Document Numbers 1512158, 1512159, 1512160, 1512161, 1512162, 1512163, 1512164, 1512165, 1512166.

[2] Document Numbers 1512155, 1512156, 1512157.

Although the CIA believed that its original search for responsive records was both reasonable and adequate, and its redactions were reasonable and made pursuant to applicable FOIA exemptions, in order to avoid protracted litigation in this case, the CIA addressed the issues raised in Plaintiff's January 17, 2008 letter.  Id. ¶ 16.  The CIA searched for the documents specifically referenced in that letter, and located several of those documents.  The CIA released the eleven additional documents located in that search to Plaintiff on May 27, 2008.[3]  Id.; Ex. F thereto.  The CIA withheld information from these documents based upon FOIA exemptions (b)(2), (b)(3), and/or (b)(5).  Id.

Pursuant to Plaintiff's January 17, 2008 letter, the CIA also reexamined the information withheld from document number 1512166 and searched for a complete version of that document.  Id. ¶ 17.  The CIA located a version of this document containing pages twenty-nine and thirty, which were missing from the version initially released to Plaintiff.  Id.  With the exception of the additional pages, the CIA determined it could not release any additional information from this document.  Id.  The CIA produced a copy of this document to Plaintiff on May 27, 2008.[4]  Id.

The CIA limited its initial search in this case to the current version of the PRB regulation.  Id. ¶ 18.  Although Plaintiff did not object to this in its January 17, 2008 letter, in an effort to provide Plaintiff with as complete a response as possible, the CIA undertook a search for earlier versions of the CIA's PRB regulation.  Id.  As discussed in the May 27, 2008 Declaration of Joseph W. Lambert, Director, Information Management Services ("IMS"), Office of the Chief

---

[3] Document Numbers 1531053, 1531054, 1531055, 1531056, 1531057, 1531058, 1531067, 1531068, 1531069, 1531120, 1531121.

[4] Document Number 1531059.

Information Officer, Central Intelligence Agency ("Lambert Decl."), this search located twelve rescinded versions of the CIA's PRB regulation.[5]  Lambert Decl. ¶ 5.  On May 27, 2008, the CIA released to Plaintiff six of these regulations in their entirety (the released-in-full or "RIF" documents)[6] and withheld information from six of the documents pursuant to FOIA exemptions (b)(2) and (b)(3).[7]

In total, the CIA located thirty-six records in response to Plaintiff's FOIA request.  Lutz Decl. ¶ 7.  Fifteen of the thirty-six records contained the CIA's PRB regulation (both current and rescinded versions).  Id.  Two of those fifteen documents are memoranda that have earlier, rescinded versions of the PRB attached.[8]  The remaining twenty-one documents located in response to Plaintiff's FOIA request are internal CIA memoranda, transcripts, and/or internal CIA publications.  Id.  The Declaration of Martha M. Lutz addresses the memoranda and regulations included in documents numbers 1512159 and 1512161 as well as the remaining twenty-one non-regulation documents.  Id.  The Declaration of Joseph W. Lambert addresses the documents that contain the current and remaining rescinded versions  (i.e., those not attached to the memoranda) of the PRB regulation.  Lambert Decl. ¶ 5.

## ARGUMENT

The FOIA, 5 U.S.C. § 552, represents a balance struck by Congress "'between the right

---

[5] While the Lambert Declaration refers to "thirteen Agency-wide regulatory issuances," one of those thirteen is version of the PRB regulation that was in effect on July 4, 2007, which was located in the CIA's initial search (Document Number 1512158).

[6] Document Numbers 1531047, 1531048, 1531049, 1531050, 1531051, and 1531052.

[7] Document Numbers 1531061, 1531062, 1531063, 1531064, 1531065, and 1531066.

[8] Document Numbers 1512159 and 1512161.

of the public to know and the need of the Government to keep information in confidence.'" John Doe Agency v. John Doe Corp., 493 U.S. 146, 152 (1989) (quoting H.R. Rep. 89-1497, 89th Cong., 2d Sess. 6 (1966)).  Thus, while the FOIA requires agency disclosure under certain circumstances, the statute recognizes "that public disclosure is not always in the public interest." Baldrige v. Shapiro, 455 U.S. 345, 352 (1982).  Consequently, the FOIA "provides that agency records may be withheld from disclosure under any one of the nine exemptions defined in 5 U.S.C. § 552(b)." Id.  "These exemptions reflect Congress' recognition that the Executive Branch must have the ability to keep certain types of information confidential." Hale v. DOJ, 973 F.2d 894, 898 (10th Cir. 1992), vacated on other grounds, 509 U.S. 918 (1993).  As the Supreme Court has stressed, the statutory exemptions must be construed "to have a meaningful reach and application." John Doe, 493 U.S. at 152.

In a judicial review of an agency's response to a FOIA request, the agency has the burden of justifying nondisclosure, and the court reviews de novo the agency's action.  See 5 U.S.C. § 552(a)(4)(B); Wolf v. CIA, 473 F.3d 370, 374 (D.C. Cir. 2007).  Summary judgment is appropriate in a FOIA case when the agency's affidavits or declarations describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981).  However, in a case concerning questions of national security, such as this one, the D.C. Circuit has instructed district courts to give "substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." Salisbury v. United States, 690 F.2d 966, 970 (D.C. Cir. 1982).  See Gardels v. CIA,

689 F.2d 1100, 1104-05 (D.C. Cir. 1982); <u>Assassination Archives and Research Ctr. v. CIA</u>, 177

F. Supp. 2d 1, 5-6 (D.D.C. 2001), <u>aff'd</u>, 334 F.3d 55, 357 (D.C. Cir. 2003).

The attached declarations and <u>Vaughn</u> Index on behalf of the CIA show that the agency

conducted reasonable searches in response to Plaintiff's FOIA request and appropriately withheld

information pursuant to FOIA's Exemptions 1, 2, 3, and 5.  Because the declarations and <u>Vaughn</u>

Index are reasonably detailed, submitted in good faith, and thoroughly explain the CIA's

withholdings, the CIA is entitled to summary judgment.

## I.    THE CIA'S SEARCH FOR RESPONSIVE RECORDS WAS REASONABLE.

The FOIA requires that an agency conduct a "reasonable" search for responsive records

using methods which can be reasonably expected to produce the information requested by

Plaintiff to the extent it exists.  <u>See</u> 5 U.S.C. § 552(a)(3)(C); <u>Weisburg v.  DOJ</u>, 705 F.2d 1344,

1351 (D.C. Cir. 1983).  The agency need not "set forth with meticulous documentation the details

of an epic search for the requested records," <u>Perry v. Block</u>, 684 F.2d 121, 127 (D.C. Cir. 1982),

but it must demonstrate that it has conducted a search "reasonably calculated to uncover all

relevant documents."  <u>Weisberg v. DOJ</u>, 745 F.2d 1476, 1485 (D.C. Cir. 1984); <u>see also</u> <u>Oglesby</u>

<u>v. Dep't of the Army</u>, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment

the agency must show that it made a good faith effort to conduct a search for the requested

records, using methods which can be reasonably expected to produce the information

requested.").  Failure to uncover a responsive document does not render the search inadequate:

"[T]he issue to be resolved is not whether there might exist any other documents possibly

responsive to the request, but rather whether the search for those documents was adequate."

<u>Weisberg</u>, 745 F.2d at 1485.  Importantly, the agency is not required to search every record

system, but need only search those systems in which it believes responsive records are likely to be located.  See Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 9 (D.D.C. 2000), aff'd, 22 Fed. Appx. 14 (D.C. Cir. 2001) (per curiam).  Agency declarations are the appropriate vehicle to show that an agency's search was reasonable, and are afforded a presumption of good faith in this regard.  See SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991); Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C. Cir. 1981) (per curiam).

Here, the CIA conducted a reasonable and adequate search of its relevant record systems for records responsive to Plaintiff's FOIA request, and in fact went far beyond what was necessary to fulfill its search obligations, addressing a number of concerns that Plaintiff raised after the initial search and release of documents in an effort to avoid protracted litigation.

After receiving Plaintiff's FOIA request, the CIA determined that the following seven CIA components were most likely to have responsive records, and tasked them to search their relevant record systems for "copies of all internal Central Intelligence Agency . . . documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board":  Office of General Counsel, Office of Public Affairs, CIA Director's Action Center, Office of the Inspector General ("OIG"), Publications Review Board, Historical Regulations Repository, and IMS.  Lutz Decl. ¶ 28.  The searches also included a search of the CIA's regulation database, which contains copies of the CIA's current regulations, for records responsive to Plaintiff's FOIA request.  Id.

The CIA used the following search terms/search strings in its search for responsive records: 1) Publications Review Board; 2) Publications Review; 3) PRB OR Publications Review Board AND Policy AND Operations AND creation AND guidelines AND regulations; 4)

Publication Review Board AND PRB; 5) PRB; 6) Publication; and 7) the CIA's internal

regulation number for the PRB regulation.  <u>Id.</u> ¶ 29.  As noted in the CIA's July 4, 2007 letter to

Mark Zaid, the CIA limited its search to records that were in existence as of July 4, 2007.  Ex. C

to Lutz Decl.  These searches located twelve responsive documents.  <u>Id.</u>  As noted above, on

January 11, 2008, the CIA produced nine of these documents to Plaintiff in redacted, segregable

form, and withheld three of these documents in their entirety.

Although the CIA believed that its initial response was reasonable and adequate, after

receiving Plaintiff's January 17, 2008 letter identifying seven perceived deficiencies in the CIA's

initial response, the CIA asked the PRB to search for the PRB-related documents identified in

Plaintiff's letter.  Lutz Decl. ¶ 31.  As set forth above, in its January 17, 2008 letter, Plaintiff:  1)

questioned whether the CIA adequately searched for PowerPoint slides that the PRB had

allegedly used during briefings; 2) asserted the CIA should search for, and produce, several

documents and Web pages referenced in document number 1512160; 3) asserted the CIA should

search for, and produce, the written guidance referenced in document number 1512161; 4)

asserted the CIA should search for, and produce, the March 26, 1999 Agency Regulation ("AR")

referenced in document number 1512162; 5) asserted the CIA should search for, and produce,

several documents referenced in document number 1512163; 6) asked the CIA to search for, and

produce, additional policy/internal memoranda responsive to Plaintiff's FOIA request; and 7)

challenged the redactions made to document number 1512164.  <u>Id.</u> ¶ 15; Ex. E.  The CIA also

asked the OIG to specifically search for the "October 1991 Inspection Report" referenced in

Plaintiff's letter, and revisited the information withheld from document numbers 1512164 and

1512166.  <u>Id.</u> ¶ 31.   In searching for the PRB-related items listed in Plaintiff's January 17, 2008

letter, the PRB used the following search terms: 1) briefing; 2) EOD's; 3) web page; 4) ethics; 5) managers; 6) guidance; 7) supervisors; and 8) contracting officers.  Id. ¶ 32.

With respect to Item 1 in Plaintiff's January 17, 2008 letter, the PRB located five PowerPoint briefings from the PRB, which the CIA produced to Plaintiff on May 27, 2008.[9]  Id. ¶ 33.  The CIA did not locate any additional responsive documents related to Items 2, 3, or 6 of Plaintiff's January 17, 2008 letter.  Id. ¶¶ 34-35, 38.  With respect to Item 4, the CIA determined that the document referenced in the footnote cited by Plaintiff was an Employee Bulletin and not an agency regulation.  Id. ¶ 36.  The CIA searched for, but was unable to locate, that Employee Bulletin.  Id.  The CIA located five additional documents in response to Item 5 of Plaintiff's letter, including the October 1991 Inspection Report sought by Plaintiff.[10]  Id. ¶ 37.  The CIA released copies of these documents to Plaintiff on May 27, 2008.  Id.  Regarding Item 7 in Plaintiff's letter, the CIA determined it could release additional information previously withheld from document number 1512164, and produced a copy of this document to Plaintiff on May 27, 2008.[11]  Id. ¶ 39.  After reexamining document number 1512166, the CIA determined that it could not release any additional information from this document.  Id. ¶ 40.  However, the CIA did locate and produce a version of this document containing the originally missing pages twenty-nine and thirty.[12]  Id.

In addition, after completing its initial search, the CIA also searched for earlier,

---

[9] Document numbers 1531054, 1531055, 1531056, 1531057, and 1531058.

[10] Document Numbers 1512167, 1531068, 1531069, 1531120, 1531121.

[11] Document Number 1531053.

[12] Document Number 1531059.

rescinded, versions of the CIA's PRB regulations.  Lutz Decl. ¶ 18.  The CIA produced copies of

the additional twelve PRB regulations located in this search to Plaintiff on May 27, 2008.[13]  Id.

In sum, the CIA's search was not only reasonable and adequate, but it was exhaustive,

following up on what Plaintiff considered to be the perceived deficiencies in its search and

processing of responsive documents, despite not being required to do so.  As a result, summary

judgment should be granted to the CIA on the adequacy of its search.

## II.    THE CIA PROPERLY WITHHELD CLASSIFIED INFORMATION PURSUANT TO EXEMPTION (b)(1).

The CIA withheld information under Exemption 1 in only one document, document

number 1512157, a legal memorandum from PRB's Associate Legal Advisor to the PRB.  The

CIA was fully justified in withholding this properly classified national security information.

### A.    Requirements under Exemption (b)(1).

Exemption 1 protects records that are:  (1) specifically authorized under criteria

established by an Executive Order to be kept secret in the interest of national defense or foreign

policy, and (2) are in fact properly classified pursuant to Executive Order.  See 5 U.S.C. § 552

(b)(1).  Substantial weight is accorded to an agency's determination that potential harm merits

classification of particular information. See, e.g., Frugone v. CIA, 169 F.3d 772, 775 (D.C. Cir.

1999); Taylor v. Dep't of the Army, 684 F.2d 99, 109 (D.C. Cir. 1982); Military Audit Project,

656 F.2d at 745; Washington Post v. DOD, 766 F. Supp. 1, 6-7 (D.D.C. 1991).  A court should

be reluctant to second-guess such agency determinations in a FOIA case implicating national

security.  Students Against Genocide v. Dep't of State, 257 F.3d 828, 837 (D.C. Cir. 2001);

---

[13] Document Numbers 1531047, 1531048, 1531049, 1531050, 1531051, 1531052, 1531061, 1531062, 1531063, 1531064, 1531065, and 1531066.

Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980). Accordingly, summary judgment for the

government in an Exemption 1 FOIA action should be granted on the basis of agency affidavits if

they simply contain "reasonable specificity" rather than conclusory statements, and if they are not

called into question by contradictory evidence in the record or by evidence of agency bad faith.

Halperin, 629 F.2d at 148. Further, if after putting as much information on the public record as

possible, it is still not possible to address adequately the withheld material without risking

disclosure, the agency may submit additional explanations in camera and ex parte. Phillippi v.

CIA, 546 F.2d 1009, 1013 (D.C. Cir. 1976); Public Citizen, Inc., 100 F. Supp. 2d at 27, aff'd in

part, rev'd in part on other grounds, 276 F.3d 634 (D.C. Cir. 2002).

The relevant Executive Order currently in effect is Executive Order ("E.O.") 12958,

"Classified National Security Information." Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr.

20, 1995), reprinted as amended in 50 U.S.C. § 435 note (Supp. V 2005). An agency can

demonstrate that it has properly withheld information under Exemption 1 if it establishes that it

has met the requirements of E.O. 12958, as amended. Under E.O. 12958, as amended,

information may be classified if:

> (1) an original classification authority is classifying the information;

> (2) the information is owned by, produced by or for, or is under the control of the
> United States Government;

> (3) the information falls within one or more of the categories of information listed
> in section 1.4 of this order; and

> (4) the original classification authority determines that the unauthorized disclosure
> of the information reasonably could be expected to result in damage to the
> national security and the original classification authority is able to identify or
> describe the damage.

E.O. 12958, Sec. 1.1 (a), as amended; Lutz Decl. ¶ 46.  The agency must also follow the proper

procedures in classifying the information.  Procedural requirements may be met by demonstrating

that (1) each document is marked as required and stamped with the proper classification

designation, E.O. 12958, Sec. 1.6(a)(1)-(5), as amended; (2) each document is marked to indicate

clearly which portions are classified, which portions are exempt from declassification as set forth

in E.O. 12958, Sec. 1.5(b), as amended, and which portions are unclassified, E.O. 12958, Sec.

1.6(a)(5)(c), as amended; (3) the prohibitions and limitations on classification specified in E.O.

12958, Sec. 1.7, as amended are adhered to; (4) the declassification policies set forth in E.O.

12958, Sec. 3.1, as amended are followed; and (5) any reasonably segregable portion of the

classified documents is declassified and marked for release, unless withholding is otherwise

warranted under the law.  5 U.S.C. § 552(b); see also Salisbury v. United States, 690 F.2d 966,

970-73 (D.C. Cir. 1982); Military Audit Project, 656 F.2d at 737-38.

       Classification decisions cannot be made in a vacuum, but must be examined in the

context in which the information is found.  While it is true that "whenever possible, sensitive

information must be disentangled from nonsensitive information to allow for the release of the

latter," Ellsberg v. Mitchell, 709 F.2d 51, 57 (D.C. Cir. 1983), the inherent risk of disclosure

involved in trying to separate classified and unclassified information is significant.  As the Court

of Appeals put it: "[t]housands of bits and pieces of seemingly innocuous information can be

analyzed and fitted into place to reveal with startling clarity how the unseen whole must operate."

Halkin v. Helms, 598 F.2d 1, 8 (D.C. Cir. 1978).  Thus, facts that are in isolation unclassified,

may be classified because when aggregated and discussed in the context of the responsive

records, they would reveal another underlying fact, association, or relationship that is classified.

Halperin, 629 F.2d at 150 (observing that "each individual piece of intelligence information, much like a piece of a jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself"); see also E.O. 12958, Sec. 1.7(e), as amended.

**B.      The CIA Followed the Mandated Procedures.**

In determining that the information withheld under Exemption 1 is classified, the CIA has adhered to the mandated procedures. Ms. Lutz has been delegated original TOP SECRET classification authority by the Director of the CIA (whom the President has designated as an original Top Secret classification and declassification authority). E.O. 12958, Sec. 1.3(c)(2), as amended. Lutz Decl. ¶¶ 2, 48. The information classified is within the control of the United States, and the information falls within the categories of information listed in E.O. 12958, Sec. 1.4(c), as amended. Lutz Decl. ¶¶ 49, 50. The document discusses the PRB's decision to prohibit publication of details surrounding specific CIA clandestine activities, and contains SECRET information regarding the CIA's intelligence activities, sources, and methods, including identifying specific classified sources and methods and discussing how the PRB might handle a request to disclose information about them. Id. ¶ 58. Release of the information withheld from this document could provide foreign intelligence services with confirmation of various CIA sources and methods, as well as insights into the CIA's past activities and clandestine operations. Id. In addition, release of this information could jeopardize the CIA's liaison relationships and U.S. foreign policy by revealing CIA activities in certain foreign countries. Id.

Further, Ms. Lutz properly determined that "the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security," and both

identified and described that damage.  E.O. 12958, Sec. 1.1(a)(4), as amended.  She also ensured that the procedural requirements were followed: that the documents were properly marked, with the proper declassification instructions and reasons for classification.  Lutz Decl. ¶ 60.

### C.    The CIA Properly Withheld Information Concerning its Intelligence Sources and Methods.

The classified information withheld in this case contains information concerning the CIA's intelligence activities, sources, and methods.  Id. ¶ 50-56.  As detailed in the Lutz Declaration, intelligence activities lie at the core of the CIA's functions.  Id. ¶ 51.  Information regarding specific intelligence activities reveals the interests and capabilities of the CIA, and could be used by foreign intelligence services and others who have interests opposed to those of the United States in their efforts to defeat CIA activities.  Id.

With respect to intelligence sources, the primary mission of the CIA is the collection of foreign intelligence through clandestine human sources.  Id. ¶ 52.  To collect useful intelligence, the CIA must often depend upon information that can only be gathered from knowledgeable human sources under an arrangement of absolute, lasting secrecy, which extends both to the existence of the source's relationship with the CIA and to the kind of information or type of operational assistance the source is supplying.  Intelligence sources include individual human sources, foreign intelligence and security services, and foreign governments generally, and can be expected to furnish information only when confident they are protected from harm, retribution, or embarrassment by the absolute secrecy surrounding their CIA relationship.  Id.  The safety and welfare of the source, his family and even his associates could be jeopardized if the CIA disclosed information that might compromise the source's identity or affiliation with the CIA.

-15-

This sort of compromise could occur if the CIA were to reveal information contained in documents such as its internal regulations or procedures for releasing classified or sensitive information, or releases information that would allow foreign intelligence services to associate a CIA officer with a particular human source.  Id. ¶53.

Any compromise of the information about a source could also hamper future cooperation with sources and damage ongoing intelligence efforts.  Id. ¶ 54.  If the U.S. Government breached the trust and confidentiality upon which a source's relationship is formed, current and potential sources across the globe could surmise the U.S. Government is unable or unwilling to maintain confidentiality and that further cooperation with our government is ill-advised.  If the compromise of a particular source becomes known, it would likely discourage other sources from cooperating with the CIA at a time when international cooperation is critical to combating terrorism.  Thus, protection of information concerning intelligence sources is among the most important responsibilities charged to the Director of the CIA.  Id.

Intelligence methods are the means by which an intelligence agency accomplishes its objectives.  Id. ¶ 55.  Intelligence methods include the basic business practices and methodological "tools" used by the CIA to accomplish its mission.  Each intelligence method must be protected from disclosure in every situation where a certain intelligence interest, capability or technique is unknown to those groups that could take countermeasures to nullify its effectiveness.  Once the nature of an intelligence method or the fact of its use in a certain situation is discovered, its usefulness in that situation is neutralized and the CIA's ability to apply that method in other situations is significantly degraded.  In fact, detailed knowledge of each intelligence method must be protected from disclosure because such knowledge would be of

material assistance to those who seek to detect, prevent or damage U.S. intelligence operations. Moreover, once an intelligence method or its use is discovered, the method may eventually be used against the CIA.  Id.

The term "intelligence methods" is not limited to sophisticated techniques and electronic devices.  Id. ¶ 56.  Rather, "intelligence methods" also include the special internal practices and procedures of an intelligence agency.  One example of a method involves the means by which the CIA decides what information it can release to the public.  Id.  The disclosure of this information would allow foreign intelligence services to manipulate and circumvent the rules, practices, and procedures the CIA uses when deciding whether it can release classified or sensitive information to the public without jeopardizing U.S. security.  Id.

Thus, as noted above, and as detailed in the Lutz Declaration, the disclosure of the information in Document Number 1512157 withheld under Exemption 1 would reveal classified information regarding the CIA's intelligence activities, sources and/or methods, including general information regarding CIA clandestine activities.  Id. ¶ 58.  The release of the withheld information contained in this document could provide foreign intelligence services with confirmation of various CIA sources and methods, and with insights into the CIA's past activities and clandestine operations.  Id.  Finally, the release of the withheld information in this document could jeopardize the CIA's liaison relationships and U.S. foreign policy by revealing CIA activities in certain foreign countries.  Id.  Such information is properly protected under Exemption 1, and summary judgment should be granted to the CIA on these grounds.

**III.    THE CIA PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTION (b)(3).**

Much of the information withheld from disclosure to Plaintiff is exempt from disclosure under Exemption 3 because it concerns CIA intelligence sources, intelligence methods, organization, functions, employee names, and official titles.[14]  Lutz Decl. ¶ 74.  In addition, information from the current and rescinded versions of the PRB regulation was withheld from disclosure because it concerns internal regulation numbers; internal organizational data, units, and their abbreviations; employee room, fax, and phone numbers; e-mail addresses identifying specific CIA organizational units; procedures and functions of CIA organizational units; an internal CIA form number; and the name of a CIA database used in connection with a CIA form.  Lambert Decl. ¶ 10.  Under Exemption 3,  FOIA does not require disclosure of information that is:

> specifically exempted from disclosure by statute (other than section 552b of this title) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

5 U.S.C. § 552(b)(3).  "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  Fitzgibbon v. CIA, 911 F.2d 755, 761-62 (D.C. Cir. 1990).  Thus, with respect to the CIA's Exemption 3 claim, the sole task for the court "is to determine whether or not the material withheld falls within the exemption claimed    i.e., whether it relates to intelligence sources and

---

[14] All of the documents that were not released in full contain information withheld on the basis of Exemption (b)(3).

methods." Id. at 762.  In making this determination, the court is to "accord substantial weight and due consideration to the CIA's affidavits."  Id.

Ms. Lutz and Mr. Lambert reviewed the documents responsive to Plaintiff's FOIA request.  For the regulations, Mr. Lambert determined that the CIA Act, as amended, is the withholding statute applicable to this case.  Lambert Decl. ¶ 10.  For the other documents, Ms. Lutz determined that the National Security Act, as amended, and the CIA Act, as amended, are the applicable withholding statutes applicable to this case.  Lutz Decl. ¶ 74.

## A.  National Security Act of 1947

Section 102A(i)(1) of the National Security Act, 50 U.S.C. § 403-1(i)(1), as amended, provides that the Director of National Intelligence ("DNI") "shall protect intelligence sources and methods from unauthorized disclosure."  In CIA v. Sims, 471 U.S. 159, 167 (1985), the Supreme Court determined that the precursor to this provision of the National Security Act, which "call[ed] for the Director of Central Intelligence to protect 'intelligence sources and methods'" qualified as a withholding statute under Exemption 3.  Section 102(A)(i) of the National Security Act transferred authority for protecting intelligence sources and methods from the Director of Central Intelligence to the DNI.  Courts that have addressed the issue have held that the new statute similarly qualifies as a withholding statute under Exemption 3.  See, e.g., Nat'l Security Archive Fund v. CIA, 402 F. Supp. 2d 211, 222 (D.D.C. 2005) (protecting CIA's intelligence sources and methods found in the 2004 Iraq National Intelligence Estimate under 50 U.S.C. § 403-1(i)(1) and Exemption 3).

In this case, Ms. Lutz reviewed the challenged RIP and DIF documents and determined that disclosure of the information withheld would reveal intelligence sources and methods.  Lutz

Decl. ¶ 75. Accordingly, the CIA relies on the National Security Act to withhold any information that would reveal intelligence sources and methods. Id.

As noted above, the definition of "intelligence sources" is much broader than a source's identity. Lutz Decl. ¶ 76. The definition also includes the fact of the source's relationship with the CIA and the type of information or operational assistance the source is providing. Id. Similarly, "intelligence methods" are not limited to sophisticated techniques and electronic devices. Id. Rather, "intelligence methods" include the special practices and procedures of an intelligence agency. The National Security Act exempts the information withheld from regulations in this case because disclosure of such special practices and procedures (such as those contained in the regulations) would reveal the CIA's intelligence sources and methods. Id.

## B.     Central Intelligence Agency Act of 1949

Section 6 of the CIA Act, 50 U.S.C. § 403g, as amended, provides further authority for withholdings under Exemption 3. That provision provides:

> In the interests of the security of the foreign intelligence activities of the United States and in order to further implement section 403-1(i) of this title that the Director of National Intelligence shall be responsible for protecting intelligence sources and methods from unauthorized disclosure, the . . . [CIA] shall be exempted from . . . the provisions of any other law which require the publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency.

Like section 102(A)(i)(1) of the National Security Act, section 6 of the CIA Act also meets the requirements for withholding information under FOIA Exemption 3. See, e.g., Military Audit Project, 656 F.2d at 737 n.39; Morley v. CIA, 453 F. Supp. 2d 137, 150-151 (D.D.C.,2006) (protecting CIA employee names and personal identifiers under section 6 of the CIA Act and Exemption 3), rev'd on other grounds, 508 F.3d 1108 (D.C. Cir. 2007); Judicial Watch, Inc. v.

Dep't of Commerce, 337 F. Supp. 2d 146, 167-68 (D.D.C. 2004) (same).

As the CIA's primary function is to collect intelligence through human sources and by other appropriate methods, section 6 of the CIA Act authorizes the CIA to withhold "intelligence sources" and "intelligence methods" that are related to the CIA's core function. 50 U.S.C. § 403g, as amended. Lutz Decl. ¶ 78. Moreover, section 6 of the CIA Act authorizes specific and absolute protection from disclosure of CIA employees' names and personal identifiers (e.g., employee signatures, employee numbers, or initials), titles, file numbers, and internal organizational data. Id.

In contrast to Executive Order 12958, neither the National Security Act's statutory requirement to protect intelligence methods nor the CIA Act's statutory requirement to further protect intelligence sources and methods by protecting CIA organization and functions, requires the CIA to identify or describe the damage to national security that reasonably could be expected to result from unauthorized disclosure. See, e.g., Hayden v. Nat'l Security Agency/Central Sec. Serv., 608 F.2d 1381, 1390 (D.C. Cir. 1979) (stating that specific showing of potential harm to national security was unnecessary under Exemption 3, because in enacting withholding statute Congress had already decided that disclosure of information covered by statute was potentially harmful). Thus, Ms. Lutz's and Mr. Lambert's determinations that Exemption 3 applies to preclude disclosure of information within the documents at issue in this case that would lead to disclosure of intelligence sources and methods, as well as CIA employees' names and personal identifiers (e.g., employee signatures, employee numbers, or initials), titles, file numbers, and internal organizational data, is entitled to substantial weight, and should be upheld.

### C.    Information Withheld Under Exemption (b)(3)

The CIA properly determined to withhold exempt information and documents from

release under Exemption 3 where that information, if disclosed, would reveal CIA sources,

methods, organization, functions, employee names, and/or official titles.  Lutz Decl. ¶ 80;

Lambert Decl. ¶ 10.  Pursuant to Exemption 3, the CIA withheld, for example, portions of

internal CIA policies and regulations; CIA employee names, identification numbers, titles,

telephone numbers, email addresses, signatures, and fax numbers; internal CIA Web page URLs;

CIA addresses; CIA regulation, publication, form, and Employee Bulletin names and numbers;

the name of the CIA's intranet; and internal CIA organizational information.  Lutz Decl. ¶ 80;

Lambert Decl. ¶¶ 10-12; Vaughn Index; see, e.g., Document Numbers 1512155 (withholding

internal CIA regulation numbers; CIA employee names, titles, telephone numbers, email

addresses; and internal CIA organizational information); 152158 (withholding internal CIA

regulation numbers; internal CIA organizational units and their abbreviations, email addresses,

and procedures and functions; official titles; CIA facility names and locations; CIA employee

room numbers, fax numbers, phone numbers; and internal CIA form number).  On the basis of

the CIA Act, section 6 and, thus, under Exemption 3, this information is absolutely protected

from disclosure by law.  Id.  Pursuant to section 102(A)(i)(1) of the National Security Act and

section 6 of the CIA Act, that information is exempt from production under Exemption 3.

Summary judgment should be granted to the CIA on its Exemption 3 withholdings.

### IV.    THE CIA PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTION (b)(2).

Exemption 2 protects from disclosure "matters that are . . . related solely to the internal

personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Information falls within this

category if it is "used for predominantly internal purposes."  Schiller v. NLRB, 964 F.2d 1205,

1207 (D.C. Cir. 1992) (quoting Crooker v. ATF, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (en

banc)).  Exemption 2 has been held to exempt two types of information:  (1) information the

release of which would risk circumvention of the law, and (2) "internal matters of a relatively

trivial nature."  Wiesenfelder v. Riley, 959 F. Supp. 532, 535 (D.D.C. 1997).  The former

application of the exemption is known as "high 2," while the latter is known as "low 2."  Id.  The

court applies a two-step process to determine whether records fall within Exemption 2:  "First,

the material withheld should fall within the terms of the statutory language. . . . Second, [i]f so,

the agency may defeat disclosure by proving that either disclosure may risk circumvention of

agency regulation, . . . or the material relates to trivial administrative matters of no genuine

public interest."  Morley v. CIA, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (internal quotations

omitted).  All of the information that the CIA is withholding under Exemption 2 is related solely

to the internal practices and procedures of the Agency.[15]  Notably, the CIA released the

segregable, non-exempt portions of the PRB regulations that affect the public.  Lutz Decl. ¶ 64.

The CIA has properly asserted Exemption 2 in this case.

### A.    "High 2" Withholdings

The "high 2" exemption applies in this case to exempt from disclosure internal

information, the disclosure of which may facilitate circumvention of CIA regulations.  Lutz Decl.

---

[15] Eighteen of the RIP documents contain information withheld on the basis of Exemption (b)(2). These are Document Numbers 1512158, 1512159, 1512160, 1512161, 1512162, 1512163, 1512164, 15131053, 15131061, 15131062, 15131063, 15131064, 15131065, 15131066, 15131067, 15131068, 15131069, 15131121.

¶ 63; <u>Schiller</u>, 964 F.2d at 1207.  High 2 information was withheld from four documents: 1512164, 1531053, 1531068, and 1531069.  Lutz Decl ¶ 71; <u>Vaughn</u> Index.  All of these documents are versions of an internal handbook for CIA publication reviewers.  The high 2 information withheld from these documents includes the CIA's internal procedures for: 1) reviewing works of fiction; 2) reviewing information from other agencies or foreign governments; 3) handling and classifying manuscripts; 4) reviewing galley proofs; 5) reviewing material previously disclosed; 6) reviewing publications that contain classified information available in open sources; and 7) reviewing materials intended for use in official publications.[16] Lutz Decl. ¶ 71.

The material was withheld under the high 2 exemption because disclosure would "significantly risk circumvention of the regulations from which the information came."  Lutz Decl. ¶ 72; <u>Crooker</u>, 670 F.2d at 1053.  The information withheld from these documents would provide a blueprint that an individual could use to circumvent the CIA's prepublication review process.  Lutz Decl. ¶ 72.  Disclosing the information withheld from these documents would allow a would-be author to "game the system" and force the disclosure of classified information that could damage the national security by writing around the CIA's PRB regulation.[17]  <u>Id.</u>; <u>Schiller</u>, 964 F.2d at 1208 (noting that D.C. Circuit has held that "where disclosure of a particular set of documents would render those documents operationally useless, the <u>Crooker</u> analysis is satisfied whether or not the agency identifies a specific statute or regulation threatened by

---

[16] None of the PRB regulations contain information withheld under the low 2 exemption.

[17] The CIA also withheld low 2 information from these documents, including but not limited to, internal information regarding the PRB's functions and authorizing documents.

disclosure") (internal citations omitted).  Thus, because the information that the CIA withheld

under the high 2 exemption is predominantly internal and disclosure would "significantly risk

circumvention of federal statutes or regulation," the CIA's withholdings under the high 2

exemption should be upheld.  PHE, Inc. v. DOJ, 983 F.2d 248, 249-50 (D.C. Cir. 1993) (stating

that Exemption 2 is applicable to materials if their disclosure would risk circumvention of law or

agency regulations).

      **B.**     **"Low 2" Information.**

     The CIA also invoked Exemption 2 to withhold "low 2" information from disclosure.

Lutz Decl. ¶ 63; Vaughn Index.  The low 2 information withheld from these documents is

internal information and not of any genuine public interest.  Id. ¶ 64.  Like the information

withheld under the high 2 exemption, information that the CIA has withheld from disclosure

under the low 2 exemption does not purport to regulate the public's activities or set standards

CIA personnel must follow when deciding whether to proceed against or take action affecting

members of the public.  Lutz Decl. ¶ 64; Crooker, 670 F. 2d at 1069.  The information withheld

under the low 2 exemption includes: 1) CIA employee identification numbers and official titles;

2) CIA employee telephone and fax numbers; 3) the names and/or numbers for internal CIA

regulations, publications, Employee Bulletins, review handbooks, reports, and forms (e.g.,

Document Number 1512163; 4) internal CIA organizational information, including but not

limited to, component abbreviations; 5) internal procedures used by the PRB to resolve

intra-PRB disagreements regarding the damage to national security that could result from the

publication of sensitive information; 6) the CIA's internal policy regarding which CIA

publications are exempt from the PRB regulation; 7) the CIA's internal review process used to

evaluate CIA employees' resumes; and 8) the CIA's internal policy regarding OGC's ethics review of the circumstances surrounding the release of publications by CIA employees.  <u>Id.</u>; <u>Vaughn</u> Index; <u>see</u>, <u>e.g.</u>, Document Number 1512161 (withholding internal CIA regulation numbers; CIA employee names, signatures, telephone numbers; internal name of CIA web site; internal CIA addresses; internal CIA regulation, publication, form names and numbers; CIA organizational information, including a component abbreviation; internal and external PRB mailing addresses, fax numbers, telephone numbers, and email addresses; internal procedures used by the PRB to resolve intra-PRB disagreements; CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; CIA's internal management and ethics review process).  Such information is properly withheld under the low 2 exemption.  <u>See</u> <u>Schiller</u>, 964 F.2d at 1208 (upholding exemption 2 for internal time deadlines and procedures, recordkeeping directions, instructions on contacting agency officials for assistance, and guidelines on agency decisionmaking); <u>Edmonds v. FBI</u>, 272 F. Supp. 2d 35, 50-51 (D.D.C. 2003) (upholding low (b)(2) exemption for FBI internal rules and regulations for granting waivers from ordinary language testing requirements); <u>Keys v. Dep't of Homeland Security</u>, 510 F. Supp. 2d 121, 128 (D.D.C. 2007) (low (b)(2) exemption applies to computer codes, internal file numbers, and internal operation information).  Summary judgment should be granted to the defendant on its Exemption 2 withholdings.

## V.     THE CIA PROPERLY WITHHELD INFORMATION PURSUANT TO EXEMPTION (b)(5).

FOIA's Exemption 5 exempts from mandatory disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party . . . in litigation with the

agency." 5 U.S.C. § 552(b)(5). To meet the threshold criterion of the exemption, a record must

qualify as an "inter-agency or intra-agency memorandum." If a record qualifies under this

standard, it is exempt from disclosure if it would be "normally privileged in the civil discovery

context." NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975); see also United States v.

Weber Aircraft Corp., 465 U.S. 792, 799-800 (1984) (Exemption 5 incorporates civil discovery

privileges); Florida House of Representatives v. Dep't of Commerce, 961 F.2d 941, 944-45 (11th

Cir. 1992) (Exemption 5 exempts from disclosure documents privileged under relevant statutory

and case law in pretrial discovery context). Accordingly, Exemption 5 has been held to

incorporate the privileges that are available to an agency in civil litigation, including the

attorney-client privilege, the attorney work-product doctrine, and the deliberative process

privilege. NLRB, 421 U.S. at 148-49; Cf., EPA v. Mink, 410 U.S. at 86-87. Here, the CIA

withheld information pursuant to Exemption 5 based upon all of these litigation privileges.[18]

### A.     Deliberative Process Privilege.

The deliberative process privilege exempts from mandatory disclosure documents that

reflect pre-decisional agency deliberations, and has been recognized to fall under the auspices of

Exemption 5. See NLRB, 421 U.S. at 150-52; Wolfe v. Dep't of Health & Human Servs., 839

F.2d 768, 774 (D.C. Cir. 1988) (en banc). The privilege is based on the recognition that public

disclosure of pre-decisional, deliberative documents would harm the quality of agency

decision-making. See Judicial Watch, Inc. v. Dept. of Justice, 365 F.3d 1108, 1113 (D.C. Cir.

---

[18] Information was withheld on the basis of the deliberative process privilege in the following
eight documents: 1512155, 1512156, 1512157, 15121163, 1531057, 1531058, 15311120, and
1531121. Lutz Decl. ¶ 85, 91-97. Information was also withheld on the basis of the attorney-
client privilege from two documents: 1512156 and 1512157, and on the basis of the the work
product doctrine from three documents: 1512155, 1512156, and 1512157. Id.

2004); Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) ("The deliberative

process privilege protects materials that are both predecisional and deliberative.") (citations

omitted).  "The deliberative process privilege rests on the obvious realization that officials will

not communicate candidly among themselves if each remark is a potential item of discovery and

front page news, and its object is to enhance the quality of agency decisions by protecting open

and frank discussion among those who make them within the Government."  Dep't of Interior v.

Klamath Water Users Protective Assoc., 532 U.S. 1, 8-9 (2001) (internal quotations and citation

omitted).  The purpose of the deliberative process privilege is to "encourage the frank discussion

of legal and policy issues" and "protect[] the decisionmaking processes of government agencies."

Wolfe, 839 F.2d at 773 (internal quotations and citation omitted).  It also serves "to ensure that a

decisionmaker will receive the unimpeded *advice* of his associates."  Florida House of

Representatives, 961 F.2d at 947 (emphasis in original) (citing Federal Open Market Comm. v.

Merrill, 443 U.S. 340 (1979)).

   "There should be considerable deference to the [agency's] judgment as to what

constitutes. . . 'part of the agency give-and-take    of the deliberative process    by which the

decision itself is made.'"  Chemical Mfrs. Ass'n v. Consumer Prod. Safety Comm'n, 600 F.

Supp. 114, 118 (D.D.C. 1984) (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir.

1975)).  The agency is best situated "to know what confidentiality is needed 'to prevent injury to

the quality of agency decisions . . . while the decisionmaking process is in progress.'"  Id. at 118

(quoting NLRB, 421 U.S. at 151).

   In this case, the CIA withheld information from eight documents on deliberative process

privilege grounds.  All of this withheld information is both pre-decisional and deliberative in

nature.  Lutz Decl. ¶¶ 91-97.  For example, document number 1512155, an internal memorandum

from the Chairman of the PRB to the Director of the CIA, contains specific pre-decisional and

deliberative recommendations on proposed revisions to the CIA's procedure for reviewing

official and nonofficial publications.  Id. ¶ 92.   Document numbers 1512156 and 1512157 are

legal memoranda from the PRB's Associate Legal Advisor to the PRB, in which the attorney

analyzes various options available to the PRB, and offers specific recommendations on future

PRB-related actions.  Id. ¶ 93.  Document number 1512163 is a memorandum to the CIA's

Inspector General, from which the CIA withheld an operational recommendation regarding who

should chair the PRB.  Id. ¶ 94.  Document numbers 1531057 and 1531058 are PowerPoint

presentations regarding the PRB, and contain recommendations, analyses, and discussions

designed to inform and/or assist in future decision-making processes.  Id. ¶ 95.  Document

number 1531120 is the CIA Inspector General's October 1991 Inspection Report on the PRB,

which documents the CIA Inspector General's inspection of the PRB and is pre-decisional and

deliberative in nature.  This report contains factual and legal recommendations, analyses, and

discussions designed to inform and assist in future decision-making.  Id. ¶ 96.  The CIA withheld

the following information from this document: 1) specific findings and operational

recommendations regarding the internal mission, organization, administration, management, and

operation of the PRB's review and appeal processes; 2) comments and observations from the

various CIA components and employees interviewed by the Inspector General's inspection team;

3) the inspection team's analysis and reply to the comments and observations made by the

various CIA components and employees interviewed during the Inspector General's

investigation; 4) legal analysis of disclosure statutes relevant to the PRB; 5) the Inspector

General's analysis of the PRB's workload and technology support; and 6) background on the Inspector General's inspection methodology.  Id.  Finally, document number 1531121 is a memorandum from the CIA's Deputy Director for Planning and Coordination to the CIA Inspector General, which contains the Public Affairs Office's response to four operational recommendations made in a preceding PRB inspection report.  The withheld information includes: 1) the Public Affairs Office's pre-decisional and deliberative analysis regarding the adoption of one of the operational recommendations; and 2) a description of the Public Affairs Office's proposed revisions to the PRB regulation and handbook.  Id. ¶ 97.  The CIA has properly invoked Exemption 5 in withholding this deliberative, pre-decisional information.

### B.    Attorney-Client and Work Product Privileges.

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  See Fisher v. United States, 425 U.S. 391, 403 (1976); In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984).  The attorney work-product doctrine protects information prepared in anticipation of litigation.  FTC v. Grolier, Inc., 462 U.S. 19, 25 (1983).  Exemption 5 applies with equal force to information protected under the attorney-client privilege and attorney work product doctrine.  See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862  (D.C. Cir. 1980).

Two documents (1512156 and 1512157) were withheld in this case because they contain legal advice from the PRB's Associate Legal Advisor to the PRB.  Lutz Decl. ¶ 93.  Information in these documents is also withheld under the work product doctrine, because the attorney drafting these memoranda reasonably anticipated litigation over the subject matter of the

-30-

memoranda (the CIA's compliance with the PRB's prescribed timeline, and how the CIA reviews factual material in fictional manuscripts). Id.; Vaughn Index. Similarly, information in document 1512155 was withheld under the work product doctrine, as it included email correspondence from a CIA Information Review Officer discussing a search for PRB records in a FOIA case that was in litigation. Id. ¶ 92. All are properly withheld under Exemption 5.

## VI.    THE CIA HAS REASONABLY SEGREGATED EXEMPT PORTIONS OF THE RESPONSIVE DOCUMENTS.

The FOIA requires agencies to release "any reasonably segregable portion of a record . . . after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Consistent with this obligation, the CIA has provided Plaintiff with as much non-exempt information as possible without compromising the interests in nondisclosure protected by the FOIA. Lutz Decl. ¶¶ 64, 98-99. Thus, the CIA's segregation of the information at issue is reasonable.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant summary judgment in favor of the CIA.


Dated: May 30, 2008

<div style="margin-left:auto">

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

</div>

_/s/ Vesper Mei_____

VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE JAMES MADISON PROJECT,     )
             )
         Plaintiff,     )
             )
      v.     )     Case No. 1:07cv01382 (RMU)
             )
CENTRAL INTELLIGENCE AGENCY,     )
             )
         Defendant.     )
             )
_____)

**[DEFENDANT'S PROPOSED]
ORDER GRANTING SUMMARY JUDGMENT**

The defendant Central Intelligence Agency has moved for summary judgment in this

action pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Upon consideration of Defendant's motion and of all materials submitted in relation to

the motion, IT IS HEREBY ORDERED that

Defendant's motion be, and it hereby is, GRANTED.


Dated: _____, 2008

                _____
                THE HONORABLE RICARDO M. URBINA
                UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THE JAMES MADISON PROJECT,    )
                                        )
             Plaintiff,      )
                                        )
      v.                        )     Case No. 1:07cv01382 (RMU)
                                        )
CENTRAL INTELLIGENCE AGENCY,   )
                                        )
            Defendant.    )
                                        )
_____)

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

In support of its Motion for Summary Judgment, defendant Central Intelligence Agency

("CIA") submits the following Statement of Material Facts as to Which There is No Genuine

Issue:

1.      On June 26, 2007, Plaintiff submitted its FOIA request to the CIA.  Exhibit B to

May 30, 2008 Declaration of Martha M. Lutz, Information Review Officer for the Director of the

Central Intelligence Area, Central Intelligence Agency ("Lutz Decl.")

2.      In its FOIA request, Plaintiff sought "copies of all internal Central Intelligence

Agency ("CIA") documents constituting guidelines, regulations or policy memoranda pertaining

to the creation and operation of the Publications Review Board."  Id.

3.      On July 4, 2007, the CIA acknowledged receipt of Plaintiff's FOIA Request,

granted Plaintiff's request for a fee waiver, and stated that its backlog of FOIA requests would

prevent it from responding to Plaintiff's FOIA request within the twenty days prescribed by

statute.  Lutz Decl. ¶ 12; Ex. C thereto.  The CIA further stated that, unless Plaintiff objected, the

CIA would limit its search for responsive records to CIA-originated records existing through the

date of the CIA's July 4, 2007 acceptance letter.  Id.  Plaintiff has not objected to the temporal restrictions placed upon its FOIA request.

4.      In a Joint Status Report filed by the parties on November 2, 2007, the parties agreed, inter alia, that the CIA would process and release any non-exempt documents or portions of documents responsive to Plaintiff's request by January 11, 2008.  Joint Status Report, Docket # 5.

5.      After receiving Plaintiff's FOIA request, the CIA determined that the following seven CIA components were most likely to have responsive records, and tasked them to search their relevant record systems for "copies of all internal Central Intelligence Agency . . . documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board":  Office of General Counsel, Office of Public Affairs, CIA Director's Action Center, Office of the Inspector General ("OIG"), Publications Review Board, Historical Regulations Repository, and Information Management Services.  Lutz Decl. ¶ 28.  The searches also included a search of the CIA's regulation database, which contains copies of the CIA's current regulations, for records responsive to Plaintiff's FOIA request.  Id.

6.      The CIA used the following search terms/search strings in its search for responsive records: 1) Publications Review Board; 2) Publications Review; 3) PRB OR Publications Review Board AND Policy AND Operations AND creation AND guidelines AND regulations; 4) Publication Review Board AND PRB; 5) PRB; 6) Publication; and 7) the CIA's internal regulation number for the PRB regulation.  Id. ¶ 29.  The CIA limited its search to records that were in existence as of July 4, 2007.  Ex. C to Lutz Decl.  These searches located twelve responsive documents.  Id.

7.     Pursuant to the Joint Status Report, on January 11, 2008, the CIA produced to Plaintiff nine documents that were redacted in part.  Lutz Decl. ¶ 14; Ex. D thereto.  The CIA withheld information from these documents based upon FOIA exemptions (b)(1), (b)(2), (b)(3), and (b)(5).  Id.  The CIA also withheld three documents in their entirety based upon FOIA exemptions (b)(1), (b)(3), and (b)(5).  Id.

8.     On January 17, 2008, Plaintiff advised the CIA of several perceived deficiencies in the CIA's response to Plaintiff's FOIA request.  Lutz Decl. ¶ 15; Ex. E thereto.

9.     After receiving Plaintiff's January 17, 2008 letter, the CIA asked the PRB to search for the PRB-related documents identified in Plaintiff's letter.  Lutz Decl. ¶ 31. In searching for the PRB-related items listed in Plaintiff's January 17, 2008 letter, the PRB used the following search terms: 1) briefing; 2) EOD's; 3) web page; 4) ethics; 5) managers; 6) guidance; 7) supervisors; and 8) contracting officers.  Id. ¶ 32.  As a result of this additional search, the CIA located several of the documents referenced in Plaintiff's January 17, 2008 letter. The CIA released the eleven additional documents located in that search to Plaintiff on May 27, 2008.  Lutz Decl. ¶ 16; Ex. F thereto.  The CIA withheld information from these documents based upon FOIA exemptions (b)(2), (b)(3), and/or (b)(5).  Id.

10.     Pursuant to Plaintiff's January 17, 2008 letter, the CIA also reexamined the information withheld from document number 1512166 and searched for a complete version of that document.  Id. ¶ 17.  The CIA located a version of this document containing pages twenty-nine and thirty, which were missing from the version initially released to Plaintiff.  Id. With the exception of the additional pages, the CIA determined it could not release any additional information from this document.  Id.  The CIA produced a copy of this document to

Plaintiff on May 27, 2008.  Id.

11.    The CIA had limited its initial search in this case to the current version of the PRB regulation.  Id. ¶ 17.  Although Plaintiff did not object to this in its January 17, 2008 letter, in an effort to provide Plaintiff with as complete a response as possible, the CIA undertook a search for earlier versions of the CIA's PRB regulation.  Id.

12.    The CIA's searches for PRB regulations located the current version, as well as twelve rescinded versions, of the CIA's PRB regulation.  May 27, 2008 Declaration of Joseph W. Lambert, Director, Information Management Services, Office of the Chief Information Officer, Central Intelligence Agency ("Lambert Decl.") ¶ 5.  The CIA released to Plaintiff six of these regulations in their entirety and withheld information from seven of the documents pursuant to FOIA exemptions (b)(2) and (b)(3).  Id. ¶¶ 5-6.


Dated: May 30, 2008

                                        Respectfully submitted,

                                        GREGORY G. KATSAS
                                        Acting Assistant Attorney General

                                        JEFFREY A. TAYLOR
                                        United States Attorney

                                        ELIZABETH J. SHAPIRO
                                        Assistant Branch Director


                                         /s/ Vesper Mei
                                        VESPER MEI
                                        (D.C. Bar No. 455778)
                                        Trial Attorney
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch

-4-

Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT,        )
                                  )
            Plaintiff,            )
                                  )
      v.                          )    Case No. 1:07cv01382 (RMU)
                                  )
CENTRAL INTELLIGENCE AGENCY,      )
                                  )
            Defendant.            )
_____ )

**DECLARATION OF MARTHA M. LUTZ,**
**INFORMATION REVIEW OFFICER FOR THE DIRECTOR OF THE**
**CENTRAL INTELLIGENCE AREA, CENTRAL INTELLIGENCE AGENCY**

**I.  INTRODUCTION**

I, MARTHA M. LUTZ, hereby declare and say:

1.  I am the Information Review Officer ("IRO") for the
Director of Central Intelligence Area ("Director's Area") of the
Central Intelligence Agency ("CIA").  The Director's Area
encompasses the Office of the Director of the Central
Intelligence Agency.  I have held this position since 19 January
1999.  I have held various administrative and professional
positions within the CIA since 1989.

2.  As IRO for the Director's Area, I am responsible for
the final review of documents containing information originated
by offices organized under the Director's Area or that otherwise
implicate Director's Area interests, when such documents are the
subject of FOIA or other requests for public disclosure.  I also
task and coordinate records searches concerning files or

documents reasonably likely to be maintained by the Director's
Area.  In addition and under a written delegation of authority
pursuant to section 1.3(c) of Executive Order 12958, as amended,[1]
I hold original classification authority at the TOP SECRET
level.  Therefore, I am authorized to conduct classification
reviews and to make original classification and declassification
decisions.

3.  As part of my official duties, I ensure that
determinations as to the release or withholding of information
related to the Agency are proper and do not jeopardize CIA
interests, personnel, or facilities, and, on behalf of the
Director of Central Intelligence, do not jeopardize intelligence
activities, sources or methods.

4.  Through the exercise of my official duties, I am
familiar with this civil action.  I make the following
statements based upon my personal knowledge and information made
available to me in my official capacity.

5.  This declaration addresses both the CIA's search for
records in this case and the non-regulation documents located in
response to Plaintiff The James Madison Project's FOIA request.
The contemporaneously filed declaration by Joseph W. Lambert

---

[1] Executive Order 12958 was amended by Executive Order 13292.  See Exec. Order
No. 13,292, 68 Fed. Reg. 15,315 (Mar. 28, 2003).  All citations to Executive
Order 12958 are to the Order as amended by Executive Order 13292.  See Exec.
Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 20, 1995), reprinted as amended
in 50 U.S.C. § 435 note (Supp. V 2005).

("Lambert Declaration") addresses the regulations located in
response to Plaintiff's FOIA request.[2]  To the greatest extent
possible on the public record, this declaration describes:
a) the CIA's search for records responsive to Plaintiff's FOIA
request; b) the records the CIA located; and c) the FOIA
exemptions upon which the CIA relied to withhold certain
information responsive to Plaintiff's FOIA request.

7.  In total, the CIA located thirty-six records in
response to Plaintiff's FOIA request.  Fifteen of the thirty-six
records contained the CIA's Publication Review Board ("PRB")
regulation.[3]  Two of these fifteen documents are memoranda that
have earlier, rescinded versions of the PRB regulation attached
(document numbers 1512159 and 1512161).  The remaining twenty-
one documents located in response to Plaintiff's FOIA request
are internal CIA memoranda, transcripts, or internal CIA
publications.  This declaration addresses the twenty-one non-
regulation documents as well as the memoranda and regulations
included in documents numbers 1512159 and 1512161.[4]

---

[2] The Lambert Declaration discusses the following thirteen documents:
1531047, 1531048, 1531049, 1531050, 1531051, 1531052, 1512158, 1531061,
1531062, 1531063, 1531064, 1531065, and 1531066.  The CIA released the first
six documents in their entirety.  The CIA released the remaining seven
documents in redacted, segregable form.
[3] Document numbers 1512158, 1512159, 1512161, 1531047, 1531048, 1531049,
1531050, 1531051, 1531052, 1531061, 1531062, 1531063, 1531064, 1531065, and
1531066.
[4] This declaration discusses the following twenty-three documents:  1512155,
1512156, 1512157, 1512159, 1512160, 1512161, 1512162, 1512163, 1512164,
1512165, 1512166, 1531053, 1531054, 1531055, 1531056, 1531057, 1531058,
1531059, 1531120, 1531067, 1531068, 1531069, and 1531121.

8.  I carefully reviewed the foregoing twenty-three documents to determine whether these records, or any part of them, could be released to Plaintiff.  I determined the CIA could release twenty of these records in redacted, segregable form.  I refer to these redacted-in-part ("RIP") records as "RIP documents."[5]  I further determined the CIA should withhold three of the records responsive to Plaintiff's FOIA request in their entirety.  I refer to these denied-in-full ("DIF") records as "DIF documents."[6]  I determined the release of the withheld information in the RIP and DIF documents would reveal information exempt from disclosure pursuant to FOIA exemptions (b)(1), (b)(2), (b)(3), or (b)(5).

9.  For the Court's convenience, I divided this declaration into six parts:  a) introduction; b) Plaintiff's FOIA request; c) the procedural history of this case; d) the CIA's records systems; e) the CIA's search for records responsive to Plaintiff's FOIA request; and f) the FOIA exemptions applicable to the information withheld from records responsive to Plaintiff's FOIA request.  Attached as Exhibit A to this declaration, and incorporated by reference herein, is a <u>Vaughn</u> Index which:  a) describes the responsive records challenged by

---

[5] The RIP documents discussed in this declaration are numbered as follows: 1512159, 1512160, 1512161, 1512162, 1512163, 1512164, 1512165, 1512166, 1531053, 1531054, 1531055, 1531056, 1531057, 1531058, 1531059, 1531120, 1531067, 1531068, 1531069, and 1531121.
[6] The DIF documents are numbered as follows: 1512155, 1512156, and 1512157.

Plaintiff; b) identifies the FOIA exemptions applicable to the responsive records challenged by Plaintiff; and c) explains why the applicable FOIA exemptions justify withholding information from the responsive records challenged by Plaintiff.

## II.   **PLAINTIFF'S FOIA REQUEST**

10.  Plaintiff's FOIA request seeks "copies of all internal CIA documents constituting guidelines, regulations or policy memoranda pertaining to the operation of the Publications Review Board." See Pl.'s Compl. ¶ 5.

## III.   **PROCEDURAL HISTORY**

11.  On 26 June 2007, Plaintiff submitted its FOIA request to the CIA.  See Letter from Zaid to Koch of 6/26/07 at 1, attached as Exhibit B.  Therein, Plaintiff asked the CIA to produce "copies of all internal Central Intelligence Agency ("CIA") documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board."  See id.

12.  On 4 July 2007, the CIA acknowledged receipt of Plaintiff's FOIA Request.  See Letter from Koch to Zaid of 7/4/07, attached as Exhibit C.  Therein, the CIA granted Plaintiff's request for a fee waiver.  See id.  The CIA also stated its backlog of FOIA requests would prevent it from responding to Plaintiff's FOIA request within the twenty days prescribed by statute.  See id.  The CIA further stated that,

unless Plaintiff objected, the CIA would limit its search for responsive records to CIA-originated records existing as of the date of the CIA's 4 July 2007 acceptance letter.  <u>See</u> <u>id.</u>  It is my understanding Plaintiff never objected to the temporal restrictions placed upon its FOIA request.

13.  Plaintiff filed the instant action on 30 July 2007. The CIA filed its Answer on 7 September 2007.  Pursuant to this Court's order, the parties filed a Joint Status Report on 2 November 2007.  Therein, the parties agreed the CIA would process and release any non-exempt documents or portions of documents responsive to Plaintiff's request by 11 January 2008.

14.  Pursuant to the parties' agreement, the CIA produced nine RIP documents to Plaintiff on 11 January 2008.[7]  <u>See</u> Letter from Koch to Zaid of 1/11/08, attached as Exhibit D.  The CIA withheld information from the RIP documents based upon FOIA exemptions (b)(1), (b)(2), (b)(3), and (b)(5).  <u>See</u> <u>id.</u>  The CIA also noted it withheld additional information in its entirety (the three DIF documents) based upon FOIA exemptions (b)(1), (b)(3), and (b)(5).  <u>See</u> <u>id.</u>

15.  On 17 January 2008, Plaintiff advised the CIA of several perceived deficiencies in the CIA's response to

---

[7] The following is a list of the nine RIP documents that the CIA produced to Plaintiff on 11 January 2008:  1512158, 1512159, 1512160, 1512161, 1512162, 1512163, 1512164, 1512165, and 1512166.  The following is a list of the three DIF documents withheld in their entity pursuant to FOIA exemptions (b)(1), (b)(3), and (b)(5):  1512155, 1512156, and 1512157.

Plaintiff's FOIA request.  <u>See</u> Letter from Zaid to Mei of

1/17/08, attached as Exhibit E.  Specifically, Plaintiff:

a) questioned whether the CIA adequately searched for PowerPoint

slides that the PRB allegedly used during briefings; b) asserted

the CIA should search for, and produce, several documents and

Web pages referenced in document number 1512160; c) asserted the

CIA should search for, and produce, the written guidance

referenced in document number 1512161; d) asserted the CIA

should search for, and produce, the 26 March 1999 Agency

Regulation ("AR") referenced in document number 1512162;

e) asserted the CIA should search for, and produce, several

documents referenced in document number 1512163; f) asked the

CIA to search for, and produce, additional policy/internal

memorandum responsive to Plaintiff's FOIA request; and

g) challenged the redactions made to document number 1512164.

<u>See</u> <u>id.</u>  In subsequent correspondence, Plaintiff indicated it

also challenges the redactions that the CIA made in document

number 1512166.  Plaintiff also asked the CIA to search for a

version of document number 1512166 containing pages twenty-nine

and thirty.  Significantly, I understand Plaintiff does not

challenge the withholdings made in the remaining RIP and DIF

documents.

16.  The CIA disagrees with Plaintiff's assertions and

contends its original search for responsive records was both

reasonable and adequate.  Similarly, the CIA submits its
redactions were reasonable and made pursuant to applicable FOIA
exemptions.  Notwithstanding the CIA's position regarding both
the adequacy of its search and production of responsive records,
the CIA conducted a search for the documents specifically
referenced in Plaintiff's 17 January 2008 letter.  The CIA
conducted this search solely in an attempt to avoid protracted
litigation in this case.  This search located eleven of the
documents referenced in Plaintiff's 17 January 2008 letter.  The
CIA produced these eleven documents in redacted form to
Plaintiff on 27 May 2008.  See Letter from Mei to Zaid of
5/27/08, attached as Exhibit F.  The CIA withheld information
from these documents based upon FOIA exemptions (b)(2), (b)(3),
and (b)(5).

17.  Pursuant to Plaintiff's 17 January 2008 letter, the
CIA also reexamined the information withheld from document
number 1512166 and searched for a complete version of this
document.  The CIA located a version of this document containing
the originally missing pages twenty-nine and thirty.  With the
exception of the additional pages, the CIA determined it could
not release any additional information from this document.  The

CIA produced a copy of this document to Plaintiff on 27 May 2008.[8]  See Exhibit F.

18.    Significantly, the CIA also searched for earlier versions of the CIA's PRB regulation.  The CIA limited its initial search in this case to the current version of the CIA's PRB regulation.  In an effort to provide Plaintiff with as complete a response as possible, the CIA undertook this search on its own initiative.  As discussed in the Lambert Declaration, this search located twelve rescinded versions of the CIA's PRB regulation.  The CIA released six of these regulations in their entirety (the released-in-full documents or "RIF documents") and withheld information from six of the documents pursuant to FOIA exemptions (b)(2) and (b)(3).  The CIA produced copies of these documents to Plaintiff on 27 May 2008.[9]  See Exhibit F.

**IV.    THE CIA'S RECORD SYSTEMS AND PROCESSING OF FOIA REQUESTS**

19.    The CIA continually faces the risk that there may be a spy within its ranks.  Prudence dictates the CIA take appropriate counterintelligence and security precautions to minimize the potential damage to national security that could result from a spy in the CIA's midst.  One way to minimize such

---

[8] The following is a list of the twelve non-regulation documents that the CIA produced to Plaintiff on 27 May 2008:  1531053, 1531054, 1531055, 1531056, 1531057, 1531058, 1531059, 1531120, 1531067, 1531068, 1531069, and 1531121.
[9] The following is a list of the twelve regulations that the CIA produced to Plaintiff on 27 May 2008:  1531061, 1531062, 1531063, 1531064, 1531065, 1531066, 1531047, 1531048, 1531049, 1531050, 1531051, and 1531052.

damage is to limit the amount of information to which any particular employee has access.

20.  The CIA limits employee access to information by employing a "need-to-know" policy.  This policy provides an employee access to only that information required to perform the employee's duties.  The CIA implements this policy through decentralizing and compartmenting its records systems.

21.  While the counterintelligence advantage of this practice is obvious, a disadvantage of this practice is equally obvious:  the inherent inefficiencies created in the records search and retrieval processes.  These inefficiencies impact the CIA's process for responding to FOIA requests.

22.  The CIA Information and Privacy Coordinator in the IMS is the initial reception point for all FOIA requests.  Under the direction and supervision of the CIA Information and Privacy Coordinator, experienced IMS information management professionals analyze each request and determine which CIA components might reasonably be expected to possess records responsive to a particular request.  IMS then transmits a copy of the request to each relevant component.  When a request is broad, it is quite common for IMS to transmit the request to many components.  Because the CIA's records systems are decentralized and compartmented, each component must devise its own search strategy.  Each component identifies which of its

record systems it will search as well as what search tools, indices, and terms it will employ during the search.  The information management professionals who conduct FOIA searches for each component are the same professionals who search records in support of the component's daily mission.

23.  After a tasked component locates documents in response to a FOIA request, officers must review the documents to determine whether the documents are responsive to the request. Because of the nature of a particular records system and the search tools, indices, or terms employed during the search, a search may locate many documents that are not responsive to the request.

24.  After officers remove the non-responsive documents, Information Review Officers must then review the remaining documents to determine which, if any, FOIA exemptions apply, and whether they can reasonably segregate non-exempt information from exempt information.  In evaluating responsive documents, officers must segregate exempt information to avoid the inadvertent disclosure of classified information, information concerning intelligence sources and methods and other information protected by FOIA exemptions.  This process is laborious and time-consuming.

25.  In the course of reviewing documents for exempt information and segregability, a component frequently identifies

information that it must coordinate with, or refer to, another
CIA component or another agency because the other component or
agency originated the information or otherwise has an equity in
it.[10]  This coordination and referral process itself can be quite
time-consuming because other components and agencies have their
own mission and FOIA procedures.

26.  When all of the components and agencies complete their
respective reviews, IMS professionals, under my direction and
supervision, incorporate all of their recommendations regarding
exemption, segregation, redaction, and release.  These IMS
professionals then conduct a review from a corporate perspective
on behalf of the entire CIA.  In this review, the IMS
professionals:  a) resolve conflicting recommendations; b)
ensure the release or withholding determinations comply with
applicable law and published CIA regulations; c) identify
additional exempt information that reflects overall CIA
equities; d) ultimately produce the integrated final record copy
of each document; and e) respond to the requestor.

27.  In response to a broad FOIA request, the CIA may
locate potentially responsive documents in several different
components.  When considered individually, a particular document
may not indicate on its face that it contains exempt

---

[10] See Exec. Order No. 12,958 § 3.6(b), 60 Fed. Reg. 19,825 (Apr. 20, 1995),
reprinted as amended in 50 U.S.C. § 435 note (Supp. V 2005).

information.  Nevertheless, when reviewers consider all responsive documents in total, it frequently becomes apparent that, considered collectively, the documents reveal information exempt from release.  For this reason, the CIA cannot make final release determinations with respect to any particular document until it completes a review of all responsive documents.  In certain instances, the CIA Information & Privacy Coordinator may withhold additional information whenever it is necessary to apply FOIA exemptions to protect overall CIA equities.

**V.    THE ADEQUACY OF THE CIA'S SEARCH FOR RESPONSIVE DOCUMENTS**

    28.  The CIA conducted a reasonable and adequate search of its relevant record systems for records responsive to Plaintiff's FOIA request.  In late 2007, the CIA tasked the following seven CIA components to search their relevant record systems for "copies of all internal Central Intelligence Agency . . . documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board": Office of General Counsel, Office of Public Affairs, CIA Director's Action Center, Office of the Inspector General ("OIG"), PRB, Historical Regulations Repository, and IMS.  These searches included a search of the CIA's regulation database--known as the Regulatory Repository-- for records responsive to Plaintiff's FOIA request.  The CIA's

Regulatory Repository contains copies of the CIA's current regulations.

29.  The CIA used the following search terms and search strings in its search for responsive records:  a) Publications Review Board; b) Publications Review; c) PRB OR Publications Review Board AND Policy AND Operations AND creation AND guidelines AND regulations; d) Publication Review Board AND PRB; e) PRB; f) Publication; and (g) the CIA's internal regulation number for the PRB regulation.  As noted in the CIA's 4 July 2007 acceptance letter, the CIA limited its search to records that were in existence as of 4 July 2007.  <u>See</u> Exhibit C.  These searches located twelve responsive documents.  On 11 January 2008, the CIA produced nine of these documents to Plaintiff in redacted, segregable form.  The CIA withheld three of these documents in their entirety (the DIF documents).

30.  As noted above, on 17 January 2008, Plaintiff sent the CIA a letter specifically identifying seven perceived deficiencies in the CIA's initial response:

> **Item 1:** Plaintiff questioned whether the CIA adequately searched for PowerPoint slides allegedly used by the PRB during briefings given to CIA employees;
>
> **Item 2:** Plaintiff asserted the CIA should search for and produce the following documents and Web pages referenced in document number 1512160 (1) the "briefing or information packet on the prepublication review process," (2) the "web page . . .

that explains the prepublication review process," (3) the PRB-related segment of the "annual ethics briefing for SIS officers," and (4) the "briefing or informational packet" allegedly provided to all employees leaving the CIA;

**Item 3:** Plaintiff asserted the CIA should search for and produce the written guidance allegedly given to "supervisors and contracting officers" as referenced in section 4.f of document number 1512161;

**Item 4:** Plaintiff asserted the CIA should search for, and produce, the 26 March 1999 AR referenced on Page 3, Footnote 5, of document number 1512162;

**Item 5:** Plaintiff asserted the CIA should search for, and produce, the October 1991 Inspection Report, the 17 January 1992 memo from the Deputy Director for Planning and Coordination ("DDP&C"), an "appointing document" containing a statement of the PRB's members' duties and a Headquarters Handbook referenced in document number 1512163;

**Item 6:** Plaintiff asked the CIA to search for, and produce, additional policy/internal memorandum responsive to Plaintiff's FOIA request; and

**Item 7:** Plaintiff challenged the propriety of the redactions the CIA made to document number 1512164 and asked the CIA to examine the document again to determine if the CIA could release additional information from the document.

31. In an effort to avoid protracted litigation, the CIA responded to Plaintiff's 17 January 2008 letter by asking the PRB to search for the PRB-related documents identified in Plaintiff's letter. The CIA also asked the OIG to specifically

search for the "October 1991 Inspection Report" referenced in
Plaintiff's letter.  The CIA also revisited the information
withheld from document numbers 1512164 and 1512166.

32.  The PRB used the following search terms during its
search for the items listed in Plaintiff's 17 January 2008
letter:  a) briefing; b) EOD's; c) web page; d) ethics;
e) managers; f) guidance; g) supervisors; and h) contracting
officers.

33.  Regarding Item 1 in Plaintiff's 17 January 2008
letter, the PRB's search located five PowerPoint briefings from
the PRB.  The CIA produced copies of these documents to
Plaintiff on 27 May 2008 (document numbers 1531054, 1531055,
1531056, 1531057, and 1531058).  See Exhibit F.

34.  Regarding Item 2 in Plaintiff's 17 January 2008
letter, the CIA did not locate any responsive documents related
to:  a) the "briefing or information packet on the
prepublication review process" allegedly added to the entry-on-
duty briefing or information packet; b) a "web page . . . that
explains the prepublication review process;" c) a PRB-related
segment of the "annual ethics briefing for SIS officers;" or
d) a "briefing or informational packet" allegedly provided to
all employees leaving the CIA.

35.  Regarding Item 3 in Plaintiff's letter, the CIA did
not locate any responsive documents related to the "written

guidance" allegedly given to "supervisors and contracting officers" as referenced in section 4.f of document number 1512161.

36.  Regarding Item 4 in Plaintiff's letter, the CIA states that Plaintiff's assumption that Footnote 5 on Page 3 of document number 1512162 references an Agency Regulation dated 26 March 1999 is incorrect.  The document referenced in this footnote is an Employee Bulletin and not an agency regulation. The CIA searched for, but was unable to locate, the Employee Bulletin referenced in document number 1512162.

37.  Regarding Item 5 in Plaintiff's letter, the CIA located the October 1991 Inspection Report referenced in document number 1512163 (document number 1531120).  The CIA also located the 17 January 1992 memo from the DDP&C referenced in Plaintiff's letter (document number 1531121); two earlier versions of a handbook used during PRB reviews (document numbers 1531068 and 1531069); and a 2 February 1992 memorandum regarding the PRB (document number 1531067). The CIA produced copies of these documents to Plaintiff on 27 May 2008.  See Exhibit F.

38.  Regarding Item 6 in Plaintiff's letter, the CIA did not locate any additional policy/internal memorandum responsive to Plaintiff's FOIA request.  However, as noted above, the CIA did locate:  a) five PowerPoint briefings; b) the October 1991 "Inspection Report;" c) the 17 January 1992 memo from the DDP&C;

17

d) two early versions of the PRB handbook; and e) a 14 February 1992 memorandum from the PRB's Chairman.

39.  Regarding Item 7 in Plaintiff's letter, the CIA determined it could release additional information previously withheld from document number 1512164.  The CIA produced a copy of this document to Plaintiff on 27 May 2008 (document number 1531053).  See Exhibit F.

40.  Regarding the information withheld from document number 1512166, the CIA reexamined this document and determined it could not release any additional information from this document.  However, the CIA did locate and produce a version of this document containing the originally missing pages twenty-nine and thirty (document number 1531059).  See Exhibit F.

41.  As noted above and in the Lambert Declaration, the CIA also searched for earlier, rescinded, versions of the CIA's PRB. The CIA produced copies of the PRB regulations located in this search to Plaintiff on 27 May 2008.  See Exhibit F.

## VI.  APPLICABLE FOIA EXEMPTIONS

42.  I have reviewed the RIP and DIF documents in this case and determined the information withheld from these documents is exempt from disclosure based upon four FOIA exemptions:  (b)(1), (b)(2), (b)(3), and (b)(5).  As is explained in detail below, FOIA exemption (b)(1) exempts classified information from FOIA's

disclosure requirements.[11]  FOIA exemption (b)(2) exempts an

agency's "internal personnel rules and practices" from FOIA's

disclosure requirements.[12]  FOIA exemption (b)(3) authorizes the

CIA to withhold responsive records that could reveal CIA

sources, methods, organization, and functions.[13]  On its own,

FOIA exemption (b)(3) allows the CIA to withhold all of the

information withheld from the RIP and DIF documents in this

case.  FOIA exemption (b)(5) exempts inter-agency or intra-

agency memoranda or letters which would not be available by law

to a private party other than an agency in litigation with the

CIA.[14]  Significantly, the same information may fall under more

than one FOIA exemption.  For example, CIA employee telephone

numbers are exempt under both (b)(2) and (b)(3); and information

regarding classified sources and methods is exempt under both

(b)(1) and (b)(3).

---

[11] The information withheld from one of the DIF documents (document number
1512157) under FOIA exemption (b)(1) is also protected from disclosure under
FOIA exemptions (b)(3) and (b)(5).  See discussion infra ¶¶ 74-97.

[12] The information withheld from the RIP documents under FOIA exemption (b)(2)
is also protected from disclosure under FOIA exemptions (b)(3) and (b)(5).
See discussion infra ¶¶ 74-97.

[13] The information withheld from the DIF and RIP documents under FOIA
exemption (b)(3) is also protected from disclosure under FOIA exemptions
(b)(1), (b)(2) and (b)(5).  See discussion infra ¶¶ 43-73, 85-97.

[14] As discussed below, FOIA exemption (b)(5) encompasses the attorney-client
privilege, the work product doctrine, and the deliberative process privilege.
Significantly, the information withheld from the DIF and RIP documents under
FOIA exemption (b)(5) is also protected from disclosure under FOIA exemptions
(b)(1), (b)(2), and (b)(3).  See discussion infra ¶¶ 43-84.

A.   **FOIA Exemption (b)(1)**

43.   FOIA exemption (b)(1) provides FOIA does not apply to matters that are:  "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order."[15]

44.   The authority to classify information is derived from a succession of Executive orders, the most recent of which is Executive Order 12958.  I reviewed the records responsive to Plaintiff's FOIA request under the criteria established by Executive Order 12958, as amended, and determined the information withheld from disclosure under FOIA exemption (b)(1) is in fact properly classified.

45.   Section 6.1(h) of Executive Order 12958, as amended, defines "classified national security information" or "classified information" as "information that has been determined pursuant to this order or any predecessor order to require protection against unauthorized disclosure and is marked to indicate its classified status when in documentary form."[16] Section 6.1(y) of Executive Order 12958, as amended, defines "national security" as the "national defense or foreign

---

[15] 5 U.S.C. § 552(b)(1) (2000).
[16] Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 20, 1995), reprinted as amended in 50 U.S.C. § 435 note (Supp. V 2005).

relations of the United States."[17]  Section 1.2(a) of Executive

Order 12958, as amended, establishes three levels of

classification for national security information.  Information

shall be classified TOP SECRET if its unauthorized disclosure

reasonably could be expected to result in *extremely grave damage*

to the national security; SECRET if its unauthorized disclosure

reasonably could be expected to result in *serious damage* to the

national security; and CONFIDENTIAL if its unauthorized

disclosure reasonably could be expected to result in *damage* to

the national security.

    46.  Section 1.1(a) of Executive Order 12958, as amended,

provides information may be originally classified under the

terms of this Executive Order only if all of the following

conditions are met:

> (1)   an original classification
> authority is classifying the information;
>
> (2)   the information is owned by,
> produced by or for, or is under the control
> of the United States Government;
>
> (3)   the information falls within one
> or more of the categories of information
> listed in Section 1.4 of this order; and
>
> (4)   the original classification
> authority determines that the unauthorized
> disclosure of the information reasonably
> could be expected to result in damage to the
> national security, which includes defense
> against transnational terrorism, and the

---

[17] Id.

original classification authority is able to
identify or describe the damage.[18]

## 1.  Original Classification Authority

47.  Section 1.3(a) of Executive Order 12958, as amended,
provides the authority to classify information originally may be
exercised only by the President and, in the performance of
executive duties, the Vice President; agency heads and officials
designated by the President in the Federal Register; and U.S.
Government officials delegated this authority pursuant to
section 1.3(c) of Executive Order 12958, as amended.[19]  Section
1.3(c)(2) provides TOP SECRET original classification authority
may be delegated only by the President; in the performance of
executive duties, the Vice President; or an agency head or
official designated pursuant to section 1.3(a)(2) of Executive
Order 12958, as amended.[20]

48.  In accordance with section 1.3(a)(2), the President
designated the Director of the CIA as an official who may
classify information originally as TOP SECRET.[21]  Under the
authority of section 1.3(c)(2), the Director of the CIA
delegated original TOP SECRET classification authority to me.

---

[18] Id.

[19] See id.

[20] See id.

[21] See Presidential Order of April 21, 2005, Designation under Executive Order
12958, 70 Fed. Reg. 21,609 (Apr. 26, 2005), reprinted in 50 U.S.C. § 435 note
(Supp. V 2005).  Similarly, the Presidential Order of 13 October 1995
designates the Director of the CIA as an official authorized to classify
information originally as TOP SECRET.  See Presidential Order of Oct. 13,
1995, 60 Fed. Reg. 53,845 (Oct. 17, 1995), reprinted in 50 U.S.C. § 435 note
(2000).

Section 1.3(b) of the Executive Order provides original TOP SECRET classification authority includes the authority to classify information originally as SECRET and CONFIDENTIAL.[22] With respect to the information for which the CIA asserts FOIA exemption (b)(1) in this case, as indicated in the attached Vaughn Index, I reviewed document number 1512157 and determined it contains information that is currently and properly classified SECRET by an original classification authority.

### 2. U.S. Government Information

49. Information may be originally classified only if the information is owned by, produced by or for, or is under the control of the U.S. Government. With respect to the information for which the CIA asserts FOIA exemption (b)(1) in this case, as indicated in the attached Vaughn Index, I reviewed document number 1512157 and determined it is owned by the U.S. Government, produced by the U.S. Government, and under the control of the U.S. Government.

### 3. Categories of Information Listed in Section 1.4 of Executive Order 12958

50. Executive Order 12958, as amended, addresses classification of information relating to intelligence and national security. Section 1.4 provides information shall be classified only when it includes information concerning

---

[22] Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 20, 1995), reprinted as amended in 50 U.S.C. § 435 note (Supp. V 2005).

"intelligence activities (including special activities),
intelligence sources or methods, or cryptology." With respect
to the information for which the CIA asserts FOIA exemption
(b)(1) in this case, as indicated in the attached Vaughn Index,
I reviewed document number 1512157 and determined it contains
information concerning intelligence sources and  methods.

51. *Intelligence Activities* – Intelligence activities lie
at the core of the CIA's functions.  Information regarding
specific intelligence activities reveals the interests and
capabilities of the CIA.  This information could be used by
foreign intelligence services and others who have interests
opposed to those of the United States.  These parties search
constantly for information regarding the activities of the CIA
and are able to gather information from myriad sources, analyze
this information, and create ways to defeat CIA activities from
seemingly disparate pieces of information.

52. *Intelligence Sources* – The primary mission of the CIA
is the collection of foreign intelligence through clandestine
human sources.  To collect useful intelligence, the CIA must
often depend upon information that can only be gathered from
knowledgeable human sources under an arrangement of absolute,
lasting secrecy.  This secrecy extends both to the existence of
the source's relationship with the CIA and to the kind of
information or type of operational assistance the source is

supplying.  Intelligence sources include individual human
sources, foreign intelligence and security services, and foreign
governments generally.

53.  Intelligence sources can be expected to furnish
information only when confident they are protected from harm,
retribution, or embarrassment by the absolute secrecy
surrounding their CIA relationship.  The safety and welfare of
the source, his or her family, and even his or her associates
could be jeopardized if the CIA disclosed information that might
compromise the source's identity or affiliation with the CIA.
This sort of compromise can occur if the CIA reveals its
internal regulations for releasing classified or sensitive
information.  The release of any information that would allow a
foreign intelligence service to associate a CIA officer with a
particular human source imperils the human source, his family,
and even his associates.  Similarly, the release of internal
regulations and/or procedures governing the CIA's review and
possible release of no longer classified or sensitive
information, like the PRB regulation, also would assist foreign
intelligence services obtain classified and sensitive
information regarding CIA sources.

54.  Any compromise of the information about a source could
also hamper future cooperation with sources and damage ongoing
intelligence efforts.  If the U.S. Government breached the trust

and confidentiality upon which a source's relationship is formed, current and potential sources across the globe could surmise the U.S. Government is unable or unwilling to maintain confidentiality and that further cooperation with our government is ill-advised.  If the compromise of a particular source becomes known, it would likely discourage other sources from cooperating with the CIA at a time when international cooperation is critical to combating terrorism.  Thus, protection of information concerning intelligence sources is among the most important responsibilities charged to the Director of the CIA.  Protection of information concerning intelligence sources necessarily includes information related to the internal rules, practices and procedures the CIA follows when deciding whether to release classified or sensitive information to the public.

55.  *Intelligence Methods* – Intelligence methods are the means by which an intelligence agency accomplishes its objectives.  Intelligence methods include the basic business practices and methodological "tools" used by the CIA to accomplish its mission.  Each intelligence method must be protected from disclosure in every situation where a certain intelligence interest, capability, or technique is unknown to those groups that could take countermeasures to nullify its effectiveness.  Once the nature of an intelligence method or the

fact of its use in a certain situation is discovered, its usefulness in that situation is neutralized and the CIA's ability to apply that method in other situations is significantly degraded.  In fact, detailed knowledge of each intelligence method must be protected from disclosure because such knowledge would be of material assistance to those who seek to detect, prevent, or damage U.S. intelligence operations. Moreover, once an intelligence method or its use is discovered, the method may eventually be used against the CIA.

56.  Significantly, the term "intelligence methods" is not limited to sophisticated techniques and electronic devices. Rather, "intelligence methods" also include the special internal practices and procedures of an intelligence agency.  One example of a method involves the means by which the CIA decides what information it can release to the public.  The disclosure of this information would allow foreign intelligence services to manipulate and circumvent the rules, practices, and procedures the CIA uses when deciding whether it can release classified or sensitive information to the public without jeopardizing U.S. security.

### 4.  Damage to the National Security

57.  With respect to the information for which the CIA asserts FOIA exemption (b)(1) in this case, as indicated in the attached <u>Vaughn</u> Index, I reviewed document number 1512157 and

27

determined that disclosure of the SECRET information contained therein reasonably could be expected to cause serious damage to the national security.

58.    Document number 1512157 is a legal memorandum from the PRB's Associate Legal Advisor to the PRB.  This document contains SECRET information regarding the CIA's intelligence activities, sources, and methods.  For example, this document discusses the PRB's decision to prohibit publication of details surrounding specific CIA clandestine activities.  The document also identifies specific CIA classified sources and methods and discusses how the PRB might handle a request to disclose this information.  The release of the withheld information contained in this document could provide foreign intelligence services with confirmation of various CIA sources and methods. Similarly, the release of the withheld information also would provide foreign intelligence services with insights into the CIA's past activities and clandestine operations.  Finally, the release of the withheld information in this document could jeopardize the CIA's liaison relationships and U.S. foreign policy by revealing CIA activities in certain foreign countries.

### 5.  Proper Purpose

59.    With respect to the information for which the CIA asserts FOIA exemption (b)(1) in this case, as indicated in the attached <u>Vaughn</u> Index, I reviewed document number 1512157 and

determined no information has been classified in order to
conceal violations of law; inefficiency or administrative error;
prevent embarrassment to a person, organization, or agency;
restrain competition; or prevent or delay the release of
information that does not require protection in the interests of
national security.

### 6.  Marking

60.  With respect to the information for which the CIA
asserts FOIA exemption (b)(1) in this case, as indicated in the
attached Vaughn Index, I reviewed document number 1512157 and
determined it is properly marked in accordance with section 1.6
of Executive Order 12958, as amended.  Document number 1512157
bears on its face one of the three classification levels defined
in section 1.2 of Executive Order 12958, as amended; the
identity, by name or personal identifier and position, of the
original classification authority; the agency and office of
origin, if not otherwise evident; declassification instructions;
and a concise reason for classification that, at a minimum,
cites the applicable classification categories of section 1.4.

### 7.  Proper Classification

61.  With respect to the information for which the CIA
asserts FOIA exemption (b)(1) in this case, as indicated in the
attached Vaughn Index, I reviewed document number 1512157 and
determined it has been classified in accordance with the

substantive and procedural requirements of Executive Order
12958, as amended, and that, therefore, it is currently and
properly classified.[23]

62.  Accordingly, I determined the CIA properly withheld
the SECRET information contained in document number 1512157
pursuant to FOIA exemption (b)(1).

**B.    FOIA Exemption (b)(2)**

63.  FOIA exemption (b)(2) exempts from disclosure
information that is "related solely to the internal personnel
rules and practices of an agency."[24]  FOIA exemption (b)(2)
encompasses two distinct categories of information:  a) internal
information of a less significant nature, such as administrative
routing notations and agency rules and practices, sometimes
referred to as "low (b)(2)" information; and b) more substantial
internal information, the disclosure of which would risk
circumvention of a legal requirement, sometimes referred to as
"high (b)(2)" information.

**1.  Low (b)(2) Information**

64.  As noted in the attached Vaughn Index, the CIA
properly invoked FOIA exemption (b)(2) to withhold low (b)(2)

---

[23] Document numbers 1531120 and 1531121 were erroneously classified SECRET.
These documents do not contain classified information and the CIA does not
assert FOIA exemption (b)(1) to withhold information in these documents.
[24] 5 U.S.C. § 552(b)(2) (2000).

information from eighteen of the RIP documents.[25]  The low (b)(2)

information withheld from these documents is internal

information and not of any genuine public interest.  The

information withheld from these documents does not purport to

regulate the public's activities or set standards CIA personnel

must follow when deciding whether to proceed against or take

action affecting members of the public.  The CIA detailed the

specific application of the low (b)(2) exemption to particular

documents in the Vaughn Index accompanying this declaration.[26]

However, information withheld under the low (b)(2) exemption

includes:

- CIA employee identification numbers and
  official titles;

- CIA employee telephone and fax numbers;

---

[25] As detailed in the Vaughn Index accompanying this declaration, the CIA also withheld low (b)(2) information from the regulations produced in this case. The low (b)(2) information withheld from these regulations is internal information and not of any genuine public interest.  The information withheld from these regulations does not purport to regulate the public's activities or set standards CIA personnel must follow when deciding whether to proceed against or take action affecting members of the public.  The information withheld under the low (b)(2) exemption includes: a) CIA employee identification numbers and official titles; b) CIA employee telephone and fax numbers; c) the names and/or numbers for internal CIA regulations, publications, review handbooks, reports, and forms; d) internal CIA organizational information, including but not limited to, component abbreviations; e) internal procedures used by the PRB to resolve intra-PRB disagreements; f) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and g) the CIA's internal management and ethics review process.
[26] Although I have discussed the general categories of information withheld under FOIA exemptions in this case, the CIA respectfully submits the Court should review this declaration and the Lambert Declaration together and in conjunction with the attached Vaughn Index.  As noted above, the Vaughn Index identifies the particular FOIA exemptions applicable to particular documents and/or information withheld from release.

- the names and/or numbers for internal CIA
  regulations, publications, Employee
  Bulletins, review handbooks, reports, and
  forms;

- internal CIA organizational information,
  including but not limited to, component
  abbreviations;

- internal procedures used by the PRB to
  resolve intra-PRB disagreements regarding
  the damage to national security that could
  result from the publication of sensitive
  information;

- the CIA's internal policy regarding which
  CIA publications are exempt from the PRB
  regulation;

- the CIA's internal review process used to
  evaluate CIA employees' resumes; and

- the CIA's internal policy regarding the
  OGC's ethics review of the circumstances
  surrounding the release of publications by
  CIA employees.

Significantly, the CIA released the segregable, non-exempt

portions of the PRB regulations that affect the public.

    65.  By way of example, I refer the Court to document

number 1512159.  This document, an internal CIA email, contains

the following low (b)(2) information:  a) internal CIA

regulation, publication, and/or form names and numbers; b)

telephone numbers for CIA employees; c) names of CIA employees;

d) internal email addresses for CIA employees; and e) telephone

numbers for CIA employees.  This document also contains withheld

information regarding:  a) the CIA's prohibition against current

employees receiving compensation for teaching, speaking or
writing related to the employee's official duties; and b) which
CIA component is responsible for reviewing proposed nonofficial
publications submitted by current employees and contractors.
The rescinded PRB regulation attached to this email also
contains withheld low (b)(2) information.  The rescinded
regulation describes the CIA's polices and procedures for the
submission and review of material proposed for publication or
public dissemination by current employees, former employees,
contractors, and other individuals obligated by a CIA secrecy
agreement to protect from unauthorized disclosure certain
information they obtain as a result of their contract with the
CIA.  Specifically, the rescinded regulation contains the
following low (b)(2) information:  a) internal CIA regulation,
publication, and form names and numbers; b) a CIA employee's
telephone number; c) a CIA employee's internal identification
number; d) CIA organizational information, including component
abbreviations; e) external and internal mailing addresses, fax
numbers, telephone numbers, and email addresses for the PRB; and
f) internal CIA personnel rules and practices.

    66.  Similarly, document number 1512160 is an internal CIA
Employee Bulletin.  This document contains withheld information
regarding:  a) the CIA's prohibition against current employees
receiving compensation for teaching, speaking or writing related

33

to the employee's official duties; and b) which CIA component is responsible for reviewing proposed nonofficial publications submitted by current employees and contractors.

67.  Document number 1512161 contains two internal CIA memoranda discussing the CIA's revised procedures for official and nonofficial publications.  The CIA withheld the following low (b)(2) information from these memoranda:  a) internal CIA regulation numbers; b) CIA employees' names and signatures; c) the internal name of a CIA Web site; d) internal CIA addresses; and e) internal CIA personnel rules and practices.  The CIA also withheld the following low (b)(2) information from the rescinded regulation attached to these memoranda:  a) internal CIA regulation, publication, and form names and numbers; b) a CIA employee's telephone number; c) CIA organizational information, including component abbreviations; d) external and internal mailing addresses, fax numbers, telephone numbers, and email addresses for the PRB; and e) internal CIA personnel rules and practices.

68.  Document number 1512162 is an internal CIA memorandum summarizing the CIA Director of Information Management's review of the PRB standards used to review nonofficial publications.  This document contains withheld information regarding the CIA's ability to track CIA employees' official representational activities (speeches, conference participation, interviews,

etc.). The withheld information is purely internal, pertains to CIA employees only, and has no impact on the general public.

69. Document number 1512163 is an internal CIA memorandum regarding the closure of the CIA Inspector General's October 1991 Inspection Report. The CIA withheld internal rules and practices outlining the duties of one PRB member. The withheld information in this document does not purport to regulate the public's activities or set standards CIA personnel must follow when deciding whether to proceed against or take action affecting members of the public.

70. Document numbers 1531067 and 1531121 are internal memoranda regarding the internal management and operation of the PRB. The CIA withheld the following low (b)(2) information from these documents: a) internal CIA regulation, publication, and file numbers; b) telephone numbers for CIA employees; c) internal CIA addresses; and d) internal CIA personnel rules and practices regarding, *inter alia*, internal procedures and record keeping requirements related to the review of manuscripts for classified information.

### 2. High (b)(2) Information

71. As noted in the attached <u>Vaughn</u> Index, the CIA properly invoked FOIA exemption (b)(2) to withhold high (b)(2) information contained in the four versions of the reviewers' handbooks produced to Plaintiff (document numbers 1512164,

1531053, 1531068, and 1531069).  The high (b)(2) information withheld from these documents includes the CIA's internal procedures for:  a) reviewing works of fiction; b) reviewing information from other agencies or foreign governments; c) handling and classifying manuscripts; d) reviewing material previously disclosed; e) reviewing publications that contain classified information available in open sources; and f) reviewing materials intended for use in official publications.

72.  The disclosure of the withheld information would significantly risk circumvention of the regulations from which the information came.  The information withheld from these documents would provide a blueprint that one could use to circumvent the CIA's prepublication review process.  Disclosing the withheld information in these documents would allow a would-be author to "game the system" and force the disclosure of classified information that could damage the national security. Stated simply, the disclosure of the withheld information in these documents would allow an author to write around the CIA's PRB regulation.

73.  Significantly, the CIA also withheld low (b)(2) information from these documents, including but not limited to, internal information regarding the PRB's functions and authorizing documents.

### C. FOIA Exemption (b)(3)

74.  The RIP and DIF documents contain information disclosing CIA intelligence sources, intelligence methods, organization, functions, employee names, and official titles. This information is exempt from disclosure under FOIA exemption (b)(3).  FOIA exemption (b)(3) provides FOIA does not apply to matters that are:

> specifically exempted from disclosure by statute (other than section 552b of this title) provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.[27]

I reviewed the documents responsive to Plaintiff's FOIA request and determined the National Security Act of 1947 ("National Security Act"), as amended, and the Central Intelligence Agency Act of 1949 ("CIA Act"), as amended, are the withholding statutes applicable to this case.

### 1. National Security Act of 1947

75.  Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 403-1(i)(1), as amended, requires the protection of intelligence sources and methods.  I reviewed the RIP and DIF documents in this case and determined disclosure of the information withheld from these documents would reveal

---

[27] 5 U.S.C. § 552(b)(3) (2000).

intelligence sources and methods.  Accordingly, the CIA relies on the National Security Act to withhold any information that would reveal intelligence sources and methods.

76.  As noted in Paragraphs 51-53 above, the definition of "intelligence sources" is much broader than a source's identity. The definition also includes the fact of the source's relationship with the CIA and the type of information or operational assistance the source is providing.  Similarly, "intelligence methods" are not limited to sophisticated techniques and electronic devices.  Rather, "intelligence methods" also include the special practices and procedures of an intelligence agency.  The National Security Act exempts the information at issue in this case because disclosure of this information could reveal the CIA's intelligence sources and/or methods.

77.  In contrast to Executive Order 12958, the National Security Act's statutory requirement to protect intelligence sources and methods does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure.

### 2.  Central Intelligence Agency Act of 1949

78.  Section 6 of the CIA Act, 50 U.S.C. § 403g, as amended, provides:

38

> In the interests of the security of the
> foreign intelligence activities of the
> United States and in order to further
> implement section 403-1(i) of this title
> that the Director of National Intelligence
> shall be responsible for protecting
> intelligence sources and methods from
> unauthorized disclosure, the . . . [CIA]
> shall be exempted from . . . the provisions
> of any other law which require the
> publication or disclosure of the
> organization, functions, names, official
> titles, salaries, or numbers of personnel
> employed by the Agency.

As the CIA's primary function is to collect intelligence through human *sources* and by other appropriate *methods*, section 6 of the CIA Act authorizes the CIA to withhold "intelligence sources" and "intelligence methods" that are related to the CIA's core function. Moreover, CIA employees' names and personal identifiers (e.g., employee signatures, employee numbers or initials), titles, file numbers, and internal organizational data are specifically and absolutely protected from disclosure by the CIA Act.

79. In contrast to Executive Order 12958, the CIA Act's statutory requirement to further protect intelligence sources and methods by protecting CIA organization and functions does not require the CIA to identify or describe the damage to national security that reasonably could be expected to result from their unauthorized disclosure.

80.  The RIP documents and the DIF documents contain information that, if disclosed, could reveal CIA sources, methods, organization, functions, employee names, and official titles.  The CIA detailed the specific application of the (b)(3) exemption to particular documents in the Vaughn Index accompanying this declaration.  However, information withheld under the (b)(3) exemption includes, *inter alia*:  a) internal CIA policies and regulations; b) CIA employee names; c) CIA employee identification numbers; d) CIA employee titles; e) CIA employee telephone numbers; f) CIA employee email addresses; g) CIA employee signatures; h) CIA employee fax numbers; i) internal CIA Web page URLs; j) CIA addresses; k) CIA regulation, publication, form, and Employee Bulletin names and numbers; l) the name of the CIA's intranet; and m) internal CIA organizational information.

81.  By way of example, I refer the Court to document number 1512163.  The CIA withheld the following from this document:  a) an employee name; b) employee title; c) internal organizational information; d) internal regulation and handbook numbers; e) employee signatures; and f) internal policies and regulations.

82.  Similarly, document number 1512165 is an internal CIA memorandum regarding the PRB.  The CIA withheld internal organizational information from this document.

83.  Likewise, the CIA withheld internal regulation numbers
from document number 1512166.  As noted above, the CIA did not
withhold pages 29 and 30 of this document.  Rather, these pages
were simply missing from the document that the CIA located
during its initial search for responsive records.

84.  In the interests of securing the U.S. Government's
foreign intelligence activities and in order to further
implement the DNI's responsibility to protect intelligence
sources and methods from unauthorized disclosure, the CIA relies
on the CIA Act to withhold any information that would reveal the
CIA's sources, methods, organization, or functions.  On the
basis of the CIA Act section 6 and, thus, under FOIA exemption
(b)(3), this information is absolutely protected from disclosure
by law.  Section 6 requires no showing of harm.

### D.  **FOIA Exemption (b)(5)**

85.  FOIA exemption (b)(5) provides FOIA does not apply to
matters that are inter-agency or intra-agency memoranda or
letters which would not be available by law to a private party
in litigation with the CIA.[28]  I reviewed the documents
responsive to Plaintiff's FOIA request and determined document
numbers 1512155, 1512156, 1512157, 1512163, 1531057, 1531058,
1531120, and 1531121 are intra-agency and inter-agency memoranda
containing information protected from disclosure by one or more

---

[28] Id. § 552(b)(5).

of the following three privileges:  a) the attorney-client privilege; b) the work product doctrine; and c) the deliberative process privilege.

86. *Attorney-Client Privilege* – The attorney-client privilege protects confidential communications between a client and his attorney relating to a matter for which the client has sought legal advice.

87. *Work-Product Doctrine* – The work-product doctrine protects information, legal analysis, and opinions prepared in anticipation of criminal, civil, and administrative proceedings or litigation.

88. *Deliberative Process Privilege* – The scope of FOIA exemption (b)(5) is quite broad and incorporates virtually all civil discovery privileges.  Courts have construed FOIA exemption (b)(5) to incorporate the civil discovery concept that information or documents of pre-decisional, deliberative process are exempt from disclosure.  The deliberative process privilege protects the internal deliberations of the government by exempting from release those recommendations, analyses, and discussions--both factual and legal--prepared to inform or in anticipation of decision-making.  The integrity of the government's deliberative process--not just the documents themselves--is protected by this privilege.

89.  This privilege is designed to protect and encourage open and candid policy discussions between subordinates and superiors.  It also protects the ability of decision-makers to receive confidential advice and counsel; and allows agencies to explore alternative avenues of action and engage in internal debates without fear of public scrutiny.

90.  If an agency's pre-decisional policy analysis or deliberations were subject to public release, agency pre-decisional debates would be stifled or "chilled."  Indeed, participants would hesitate to voice opinions or points of view that may, at first blush, appear radical or "outside the box," or that could be subject to misinterpretation.  Consequently, if the deliberative process was unprotected, participants would likely refrain from providing the unvarnished truth in their analyses to policy-makers.

91.  As noted above, the CIA properly invoked FOIA exemption (b)(5) to withhold information protected by the deliberative process privilege from eight documents in this case.

92.  Document number 1512155 is an internal memorandum from the Chairman of the PRB to the Director of the CIA.  This document contains specific recommendations on proposed revisions to the CIA's procedure for reviewing official and nonofficial publications.  These recommendations are pre-decisional and

deliberative in nature and, thus, protected by the deliberative process privilege.  This document also includes email correspondence from a CIA Information Review Officer ("IRO") discussing a search for PRB records in a litigated FOIA case. As the IRO prepared this document in conjunction with pending litigation, the work product doctrine also protects this information from disclosure.

93.  Document numbers 1512156 and 1512157 are legal memoranda from the PRB's Associate Legal Advisor to the PRB. These documents contain attorney-client communications protected from disclosure by the attorney-client privilege.  Indeed, these documents contain specific legal advice from the PRB's Associate Legal Advisor to the PRB.  These memoranda contain specific legal advice regarding the CIA's compliance with the PRB's thirty-day review requirement and the CIA's prepublication review of factual material in fictional manuscripts.  Similarly, the work product doctrine protects these documents from disclosure as the attorney drafting these memoranda reasonably could anticipate litigation over the subject matters discussed in the memoranda, i.e., the CIA's compliance with the PRB's prescribed timeline and how the CIA reviews factual material in fictional manuscripts.  Finally, the deliberative process privilege also protects these memoranda from disclosure.  The attorney's recommendations are both pre-decisional and

deliberative in nature as the attorney is analyzing the PRB's various options and offering specific recommendations on future PRB-related actions.

94.  Document number 1512163 is a memorandum to the CIA's Inspector General.  The CIA withheld a pre-decisional and deliberative operational recommendation from page two of this memorandum regarding who should chair the PRB.  The deliberative process privilege exempts this information from disclosure.

95.  Document numbers 1531057 and 1531058 are PowerPoint presentations regarding the PRB.  These documents contain recommendations, analyses, and discussions designed to inform or assist in future decision-making processes.  The deliberative process privilege exempts this information from disclosure.

96.  Document number 1531120 is the CIA Inspector General's October 1991 Inspection Report on the PRB.  This report documents the CIA Inspector General's inspection of the PRB. The CIA withheld pre-decisional and deliberative information that the PRB did not ultimately adopt.  This report contains factual and legal recommendations, analyses, and discussions designed to inform and assist in future decision-making.  For example, the CIA withheld the following exempt information from this document:  a) operational recommendations regarding the internal mission, organization, administration, management, and operation of the PRB's review and appeal processes; b) comments

and observations from the various CIA components and employees interviewed by the Inspector General's inspection team; c) the inspection team's analysis and reply to the comments and observations made by the various CIA components and employees interviewed during the Inspector General's investigation; d) legal analysis of disclosure statutes relevant to the PRB; e) the Inspector General's analysis of the PRB's workload and technology support; and f) background on the Inspector General's inspection methodology.

97.   Document number 1531121 is a memorandum from the DDP&C to the CIA Inspector General.  This document contains the Public Affairs Office's response to four operational recommendations made in a preceding PRB inspection report.  The withheld information in this document includes:  a) the Public Affairs Office's pre-decisional and deliberative analysis regarding the adoption of operational recommendation number 2; and b) a description of the Public Affairs Office's proposed revisions to the PRB regulation and handbook.  The deliberative process privilege exempts the withheld information in this document from disclosure.

**E.   Segregability**

98.   The CIA conducted a line-by-line review of all the RIP documents at issue in this case, individually and as whole, to identify and release meaningful, reasonably segregable, non-

exempt portions of documents.  The CIA released any information that was segregable and not otherwise exempt.

99.  Regarding the DIF documents, the CIA determined no meaningful, reasonably segregable, portion of those documents could be released.  The CIA made this determination of segregability based upon a careful review of the DIF documents in this case, both individually, and as a whole.  The CIA conducted a line-by-line review of the DIF documents, individually and as whole, to identify and release meaningful, reasonably segregable, non-exempt portions of documents.  The CIA determined that any non-exempt information is so inextricably intertwined with the exempt information that there are no meaningful, reasonably segregable, non-exempt portions. Therefore, the CIA determined there are no meaningful segments of information in the DIF documents that reasonably can be segregated for release.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 30th day of May, 2008.

Martha M. Lutz
Information Review Officer
Director of the Central Intelligence
Area
Central Intelligence Agency

EXHIBIT A

# James Madison Project v . CIA (2) Vaughn Index

|  |  |
|---|---|
| **FOIA/PA Request No.:** | F-2007-01553 |
| **Document Number:** | MORI 1512155 |
| **Date of Document:** | 11/10/2004 |
| **Document Type:** | Memo |
| **Classification:** | Unclassified |
| **From/To:** | Chairman, Publications Review Board to Director of Central Intelligence |
| **Subject:** | Recommended Revisions to CIA Procedures for Review of Official and Nonofficial Publications |
| **Document Pages:** | 7 |

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ● Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ○ Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☒ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description :** This document is a memorandum from the Chairman of the CIA's Publications Review Board ("PRB") to the Director of the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(3) and (b)(5). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers, CIA employee names, CIA employee titles, CIA employee telephone numbers, CIA employee email addresses, and internal CIA organizational information. This document also contains predecisional and deliberative recommendations on proposed revisions to the PRB's procedure for reviewing official and nonofficial publications. The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure. Similarly, this document contains email correspondence from a CIA Informational Review Officer regarding a search for PRB records in a litigated FOIA case. The work product doctrine and, thus, FOIA exemption (b)(5), exempt this information from disclosure. Significantly, FOIA exemption (b)(5), on its own, allows the CIA to withhold this document in its entirety.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v. CIA (2) Vaughn Index

|                         |                                                   |
|------------------------:|---------------------------------------------------|
| FOIA/PA Request No.:    | F-2007-01553                                      |
| Document Number:        | MORI 1512156                                      |
| Date of Document:       | 06/02/1987                                        |
| Document Type:          | Memo                                              |
| Classification:         | Unclassified                                      |
| From/To:                | Associate Legal Advisor to Publications Review Board |
| Subject:                | Completion of PRB Review within 30 Days           |
| Document Pages:         | 3                                                 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☒ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ● Denied in Full
- ○ Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is a legal memorandum from the Publications Review Board's ("PRB") Associate Legal Advisor to the PRB. The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(3) and (b)(5). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: an internal CIA regulation number, a CIA employee's name, and a CIA employee's signature. This document also contains specific legal advice from the PRB's Associate Legal Advisor to the PRB. The attorney-client privilege and, thus, FOIA exemption (b)(5), exempts this information from disclosure. As the attorney drafting this memorandum reasonably could anticipate litigation over the subject matter of the memorandum - the CIA's compliance with the PRB's prescribed timeline - this document also contains attorney work product protected from disclosure pursuant to the work product doctrine and, thus, FOIA exemption (b)(5). Similarly, this document contains predecisional and deliberative recommendations regarding the PRB's future options and actions. The predecisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure. Significantly, FOIA exemption (b)(5), on its own, allows the CIA to withhold this document in its entirety.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1512157

Date of Document:  07/20/1987

Document Type:  Memo

Classification:  Secret

From/To:  Associate Legal Advisor to Publications Review Board

Subject:  Prepublication Review of Factual Material in Fictional Manuscripts

Document Pages:  4

**FOIA Exemptions:**
- ☒ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☒ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ● Denied in Full
- ○ Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is a legal memorandum from the Publications Review Board's ("PRB") Associate Legal Advisor to the PRB.   The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(1), (b)(3) and (b)(5). The information withheld  pursuant to FOIA exemption (b)(1) includes information disclosing intelligence activities , sources,  and methods currently and properly classified at the SECRET level. Specifically, this document discusses the PRB's decision to prohibit publication of details surrounding specific CIA clandestine activities . The document also identifies specific CIA classified sources and methods and discusses how the PRB might handle a request to disclose this information.  Disclosure of the classified information withheld pursuant to FOIA exemption (b)(1) reasonably could be expected to result in serious damage to the national security of the United States.  The exempt information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes:  an internal CIA regulation number, a CIA employee's name, a CIA employee's signature, and a CIA employee's identification number.  This document also contains specific legal advice from the PRB's Associate Legal Advisor to the PRB.  The attorney-client privilege and, thus, FOIA exemption (b)(5), exempts this information from disclosure.  As the attorney drafting this memorandum reasonably could anticipate litigation over the subject matter of the memorandum - how the CIA reviews factual material in fictional manuscripts - this document also contains attorney work product protected from disclosure pursuant to the work product doctrine and, thus, FOIA exemption (b)(5).  Similarly, this document contains predecisional and deliberative recommendations regarding the PRB's future  options and actions.  The predecisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure.

Significantly, FOIA exemption (b)(5), on its own, allows the CIA to withhold this document in its entirety.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v. CIA (2) Vaughn Index

|  |  |
|---|---|
| **FOIA/PA Request No.:** | F-2007-01553 |
| **Document Number:** | MORI 1512158 |
| **Date of Document:** | 05/30/2007 |
| **Document Type:** | Regulation |
| **Classification:** | Unclassified |
| **From/To:** | |
| **Subject:** | CIA Prepublication Review of Certain Material Prepared for Public Dissemination |
| **Document Pages:** | 10 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including: a) internal procedures used by the PRB to resolve intra-PRB disagreements; b) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and c) the CIA's internal management and ethics review process. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers, internal CIA organizational units, abbreviations for internal CIA organizational units, official titles, CIA facility names and locations, CIA employee room numbers, CIA employee fax numbers, CIA employee phone numbers, CIA email addresses identifying specific CIA organizational units, procedures and functions of CIA organizational units, and an internal CIA form number. The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v. CIA (2) Vaughn Index

**FOIA/PA Request No.:** F-2007-01553

**Document Number:** MORI 1512159

**Date of Document:** 08/26/2005

**Document Type:** Memorandum and Regulation

**Classification:** Unclassified

**From/To:**

**Subject:** Publication Review Board to Assist in Reviewing Publications of Current Employees

**Document Pages:** 13

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description:** This document is comprised of an internal CIA memorandum and the 22 July 2005 version of the CIA's Publication Review Board regulation. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices and includes:  a) internal CIA regulation, publication, and/or form names and numbers; b) telephone numbers for CIA employees; c) names of CIA employees; d) internal email addresses for CIA employees; e) telephone numbers for CIA employees; f) a CIA employee's internal identification number; g) CIA organizational information, including component abbreviations; h) external and internal mailing addresses, fax numbers, telephone numbers, and email addresses for the PRB; i) the CIA's prohibition against current employees receiving compensation for teaching, speaking or writing related to the employee's official duties; j) which CIA component is responsible for reviewing proposed nonofficial publications submitted by current employees and contractors; k) internal procedures used by the PRB to resolve intra-PRB disagreements; l) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and m) the CIA's internal management and ethics review process. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes:  internal CIA regulation and form numbers, CIA employee email addresses, CIA employee names, an internal Employee Bulletin number, CIA employee telephone

numbers, internal CIA Web page URLs, a CIA employee's identification number, internal CIA organizational information, CIA addresses, CIA employee fax numbers, and a CIA employee title.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

**FOIA/PA Request No.:** F-2007-01553

**Document Number:** MORI 1512160

**Date of Document:** 8/25/2005

**Document Type:** Publication

**Classification:** Unclassified

**From/To:**

**Subject:** Publications Review Board to Coordinate Review of Publications of Current Employe

**Document Pages:** 5

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ◯ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ◯ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ◯ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description :** This document is an internal CIA Employee Bulletin. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including the CIA's rules and practices regarding CIA employees' engagement in teaching, speaking or writing activities related to their official duties; and which CIA component is responsible for reviewing proposed nonofficial publications submitted by current employees and contractors. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA Web page URLs, an internal CIA Employee Bulletin number, internal CIA regulation and form numbers, the name of the CIA's intranet, CIA employee email addresses, CIA employee telephone numbers, CIA employee identification numbers, internal CIA organizational information, and CIA addresses. The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

| | |
|---|---|
| FOIA/PA Request No.: | F-2007-01553 |
| Document Number: | MORI 1512161 |
| Date of Document: | 05/26/2005 |
| Document Type: | Memorandum and Regulation |
| Classification: | Unclassified |
| From/To: | |
| Subject: | Revised Agency Regulation on Procedures for Review of Official or Nonofficial Publications |
| Document Pages: | 22 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is comprised of two internal CIA memoranda and the 5 March 2005, version of the CIA's Publication Review Board regulation. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices and includes: a) internal CIA regulation numbers; b) CIA employees' names and signatures; c) the internal name of a CIA Web site; d) internal CIA addresses; e) internal CIA regulation, publication, and form names and numbers; f) a CIA employee's telephone number; g) CIA organizational information, including component abbreviations; h) external and internal mailing addresses, fax numbers, telephone numbers, and email addresses for the PRB; i) internal procedures used by the PRB to resolve intra-PRB disagreements; j) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and k) the CIA's internal management and ethics review process. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation and form numbers, CIA employee names, the name of the CIA's intranet, CIA employee telephone numbers, CIA employee signatures, internal CIA organizational information, CIA addresses, CIA employee fax numbers, and CIA employees email addresses. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

| | |
|---|---|
| **FOIA/PA Request No.:** | F-2007-01553 |
| **Document Number:** | MORI 1512162 |
| **Date of Document:** | 04/05/2000 |
| **Document Type:** | Form |
| **Classification:** | Unclassified |
| **From/To:** | |
| **Subject:** | Executive Correspondence Routing Sheet and Memorandum |
| **Document Pages:** | 8 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description :**  This document is an internal CIA memorandum.  The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3).  The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers and information regarding CIA employees' official representational activities, i.e., speeches, conference participation, interviews, etc.  The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public.  The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes:  CIA employee signatures, a CIA employee's telephone number, a CIA address, internal CIA regulation numbers, and an internal CIA Employee Bulletin number.  The information withheld from this document is predominantly internal and not of any genuine public interest.  The withheld information does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1512163

Date of Document: 5/11/1995

Document Type: Memo

Classification: Secret

From/To:

Subject: Closure of Inspection Report, Publications Review Board, dated October 1991

Document Pages: 4

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☒ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description : This document is an internal CIA memorandum. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2), (b)(3) and (b)(5). The information withheld from this document pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers and an operational recommendation regarding the duties of one PRB member. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: a CIA employee's name, a CIA employee's title, internal CIA organizational information, internal CIA regulation numbers, and CIA employee signatures. This document also contains predecisional and deliberative recommendations regarding who should chair the PRB. The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1512164

Date of Document: UNDATED

Document Type: Publication

Classification: Unclassified

From/To:

Subject: Procedures for Review Handbook

Document Pages: 18

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description: This document is an internal CIA handbook for publication reviewers. The CIA withheld exempt information in this document pursuant to FOIA exemptions high (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption high (b)(2) would reveal internal personnel rules and practices, including the CIA's internal procedures for: a) reviewing works of fiction; b) reviewing information from other agencies or foreign governments; c) handling and classifying manuscripts; d) reviewing galley proofs; e) reviewing material previously disclosed; f) reviewing publications that contain classified information available in open sources; and g) reviewing materials intended for use in official publications. The CIA also withheld exempt high (b)(2) information regarding the administration of the Publications Review Board ("PRB"). The information withheld pursuant to FOIA exemption high (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. Moreover, the disclosure of the information withheld pursuant to FOIA exemption high (b)(2) would significantly risk circumvention of the CIA's PRB regulation. The disclosure of this information would allow an author to write around the CIA's PRB regulation. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers and CIA employee telephone numbers. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1512165

Date of Document: 11/09/2000

Document Type: Memo

Classification: Unclassified

From/To:

Subject: Publication Review Prior to Formation of PRB

Document Pages: 1

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description :** This document is an internal CIA memorandum. The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes:  internal CIA organizational information, including the name and abbreviation for a CIA component. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1512166

Date of Document: 03/06/1980

Document Type: Transcript

Classification: Unclassified

From/To:

Subject: Transcript from U.S. House of Representatives Permanent Select Committee on Intelligence Hearing on CIA Publication Review Process

Document Pages: 68

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description :** This document is a transcript from a hearing before the U.S. House of Representatives Permanent Select Committee on Intelligence. The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers. The CIA provided a copy of this document to Plaintiff.

**Case Number :** 1:07cv01382
**Judge's Initials :** RMU

# James Madison Project v. CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531053

Date of Document: UNDATED

Document Type: Publication

Classification: Unclassified

From/To:

Subject: Procedures for Review Handbook

Document Pages: 18

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description:** This document is an internal CIA handbook for publication reviewers. The CIA withheld exempt information in this document pursuant to FOIA exemptions high (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption high (b)(2) would reveal internal personnel rules and practices, including the CIA's internal procedures for: a) reviewing works of fiction; b) reviewing information from other agencies or foreign governments; c) handling and classifying manuscripts; d) reviewing material previously disclosed; e) reviewing publications that contain classified information available in open sources; and f) reviewing materials intended for use in official publications. The CIA also withheld exempt high (b)(2) information regarding the administration of the Publications Review Board ("PRB"). The information withheld pursuant to FOIA exemption high (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. Moreover, the disclosure of the information withheld pursuant to FOIA exemption high (b)(2) would significantly risk circumvention of the CIA's PRB regulation. The disclosure of this information would allow an author to write around the CIA's PRB regulation. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers and CIA employee telephone numbers. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531054

Date of Document:  UNDATED

Document Type:  Briefing Slides

Classification:  Unclassified

From/To:

Subject:  Publications Review Board Guidelines

Document Pages:  1

FOIA Exemptions:
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

Privacy Act Exemptions:
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

Disposition:
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

Document Description:  This document is part of an internal CIA PowerPoint presentation regarding the Publication Review Board.  The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3).  The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA organizational information, CIA email addresses, CIA telephone numbers, and CIA addresses.  The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

|  |  |
|---|---|
| FOIA/PA Request No.: | F-2007-01553 |
| Document Number: | MORI 1531055 |
| Date of Document: | UNDATED |
| Document Type: | Briefing Slides |
| Classification: | Unclassified |
| From/To: | |
| Subject: | Publications Review Board  Information and Guidelines |
| Document Pages: | 7 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:**  This document is an internal CIA PowerPoint presentation regarding the Publication Review Board.  The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3).  The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation and form numbers, internal CIA publication names, CIA email addresses, CIA addresses, CIA telephone numbers, and internal CIA organizational information.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531056

Date of Document:  07/01/2007

Document Type:  Briefing Slides

Classification:  Unclassified

From/To:

Subject:  Publication Review

Document Pages:  8

FOIA Exemptions :
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

Privacy Act Exemptions :
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

Disposition :
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description :**  This document is an internal CIA PowerPoint presentation regarding the Publication Review Board.  The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3).  The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes:  a CIA employee's name, the name of an internal CIA publication, internal CIA organizational information, CIA addresses, CIA email addresses, CIA telephone number, and CIA fax number.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials :** RMU

# James Madison Project v . CIA (2) Vaughn Index

|  |  |
|---|---|
| FOIA/PA Request No.: | F-2007-01553 |
| Document Number: | MORI 1531057 |
| Date of Document: | UNDATED |
| Document Type: | Briefing Slides |
| Classification: | Unclassified |
| From/To: | |
| Subject: | Prepublication Review: Your Rights and Responsibilities |
| Document Pages: | 12 |

**FOIA Exemptions:**
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☒ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is an internal CIA PowerPoint presentation regarding the Publication Review Board. The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(3) and (b)(5). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers, internal CIA organizational information, CIA telephone numbers, a CIA fax number, a CIA email address, and CIA addresses. This document also contains recommendations, analyses, and discussions designed to inform and/or assist during future decision making processes. The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure. The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

**FOIA/PA Request No.:**   F-2007-01553

**Document Number:**   MORI 1531058

**Date of Document:**   06/25/2001

**Document Type:**   Briefing Slides

**Classification:**   Unclassified

**From/To:**

**Subject:**   CIA's Publication Review Board Horizons Program

**Document Pages:**   12

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☒ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description:**  This document is an internal CIA PowerPoint presentation regarding the Publication Review Board.  The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(3) and (b)(5).  The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes:  CIA employee names, internal CIA regulation numbers, internal CIA organizational information, CIA telephone numbers, a CIA fax number, a CIA email address, and CIA addresses.  This document also contains recommendations, analyses, and discussions designed to inform and/or assist during future decision making processes.  The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531059

Date of Document: 03/06/1980

Document Type: Transcript

Classification: Unclassified

From/To:

Subject: Transcript from U.S. House of Representatives Permanent Select Committee on Intelligence Hearing on CIA Publication Review Process

Document Pages: 70

FOIA Exemptions:
- ☐ (b) (1)
- ☐ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

Privacy Act Exemptions:
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

Disposition:
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

Document Description : This document is a transcript from a hearing before the U.S. House of Representatives Permanent Select Committee on Intelligence. The CIA withheld exempt information in this document pursuant to FOIA exemption (b)(3). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531120

Date of Document: 10/01/1991

Document Type: Report

Classification: Secret

From/To:

Subject: Report by the CIA's Office of Inspector General on The Publications Review Board, October 1991

Document Pages: 32

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☒ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description : This document is the CIA Inspector General's October 1991 Inspection Report on the Publications Review Board. The CIA withheld exempt information in this document pursuant to FOIA exemptions (b)(3) and (b)(5). The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation, report, and publication numbers, a CIA employee identification number, CIA employee names, CIA employee titles, CIA employee telephone numbers, and internal CIA organizational information. This document also contains pre-decisional and deliberative recommendations, analyses, and discussions designed to inform and assist in future decision-making, including: a) operational recommendations regarding the internal mission, organization, administration, management, and operation of the PRB's review and appeal processes; b) comments and observations from the various CIA components and employees interviewed by the Inspector General's inspection team; c) the inspection team's analysis and reply to the comments and observations made by the various CIA components and employees interviewed during the Inspector General's investigation; d) legal analysis of disclosure statutes relevant to the PRB; e) the Inspector General's analysis of the PRB's workload and technology support; and f) background on the Inspector General's inspection methodology. The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure. The CIA provided Plaintiff with a copy of this document.

Case Number: 1:07cv01382

**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531061

Date of Document:  12/04/2006

Document Type:  Regulation

Classification:  Unclassified

From/To:

Subject:  CIA's Prepublication Review of Certain Material Prepared For Public Dissemination

Document Pages:  10

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description :  This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including:  a) internal procedures used by the PRB to resolve intra-PRB disagreements; b) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and c) the CIA's internal management and ethics review process. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes:  internal CIA regulation numbers, internal CIA organizational units, abbreviations for internal CIA organizational units, official titles, CIA facility names and locations, CIA employee room numbers, CIA employee fax numbers, CIA employee phone numbers, CIA email addresses identifying specific CIA organizational units, procedures and functions of CIA organizational units, and an internal CIA form number. The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531062

Date of Document:  07/22/2005

Document Type:  Regulation

Classification:  Unclassified

From/To:

Subject:  CIA's Prepublication Review of Certain Material Prepared for Public Dissemination

Document Pages:  10

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description: This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including: a) internal procedures used by the PRB to resolve intra-PRB disagreements; b) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and c) the CIA's internal management and ethics review process. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers, internal CIA organizational units, abbreviations for internal CIA organizational units, CIA official titles, CIA facility names and locations, CIA employee room numbers, CIA employee fax numbers, CIA employee phone numbers, CIA email addresses identifying specific CIA organizational units, procedures and functions of CIA organizational units, an internal CIA form number, and the name of a CIA database used in connection with a CIA form. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v. CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531063

Date of Document: 03/14/1995

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: CIA's Review of Material Intended for Nonofficial Publication

Document Pages: 10

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description: This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers, CIA organizational data, units, and functions, and a CIA employee's telephone number. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531064

Date of Document: 07/22/2005

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: CIA's Review of Material Intended for Nonofficial Publication

Document Pages: 8

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description : This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbersm, CIA organizational data, units, and functions, and a CIA employee's telephone number. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531065

Date of Document: 03/14/1995

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: CIA's Review of Material Intended for Nonofficial Publication

Document Pages: 7

| FOIA Exemptions : | Privacy Act Exemptions : | Disposition : |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description : This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation numbers and CIA organizational data, units, and functions. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531066

Date of Document:  11/08/1992

Document Type:  Regulation

Classification:  Unclassified

From/To:

Subject:  CIA's Requirements for Prepublication Review in Accordance with the Provisions of Secrecy Agreements

Document Pages:  3

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description:**  This regulation describes the CIA's policies and procedures for the submission and review of material proposed for publication or public dissemination by current and former employees and contractors and other individuals obligated by a CIA secrecy agreement to protect from unauthorized disclosure certain information they obtain as a result of their contract with the CIA.  The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3).  The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including internal CIA regulation numbers.  The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public.  The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations.  Information withheld pursuant to FOIA exemption (b)(3) includes:  internal CIA regulation numbers and CIA organizational data, units, and functions.  The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number :  MORI 1531047

Date of Document :  11/08/1992

Document Type :  Regulation

Classification :  Unclassified

From/To:

Subject:  Nonofficial Publications and Oral Presentations by Employees and Former Employe

Document Pages :  3

FOIA Exemptions :
- ☐ (b) (1)
- ☐ (b) (2)
- ☐ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

Privacy Act Exemptions :
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

Disposition :
- ○ Denied in Full
- ○ Partial Release
- ● Released in Full
- ○ Referred to Third Agency

Document Description :

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531048

Date of Document: 10/27/1989

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: Nonofficial Publications and Oral Presentations by Empolyees and Former Employe

Document Pages: 3

**FOIA Exemptions :**
- ☐ (b) (1)
- ☐ (b) (2)
- ☐ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions :**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition :**
- ○ Denied in Full
- ○ Partial Release
- ● Released in Full
- ○ Referred to Third Agency

Document Description :

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531049

Date of Document: 08/07/1984

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: Nonofficial Publication and Oral Representations by Employees and Former Employ

Document Pages: 3

| FOIA Exemptions : | Privacy Act Exemptions : | Disposition : |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ○ Partial Release |
| ☐ (b) (3) | ☐ (j) (2) | ● Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description :

Case Number: 1:07cv01382
Judge's Initials : RMU

# James Madison Project v . CIA (2) Vaughn Index

**FOIA/PA Request No.:** F-2007-01553

**Document Number:** MORI 1531050

**Date of Document:** 03/04/1983

**Document Type:** Regulation

**Classification:** Unclassified

**From/To:**

**Subject:** Nonofficial Publications and Oral Presentations by Employees and Former Employe

**Document Pages:** 2

**FOIA Exemptions:**
- ☐ (b) (1)
- ☐ (b) (2)
- ☐ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ○ Partial Release
- ● Released in Full
- ○ Referred to Third Agency

**Document Description:**

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

**FOIA/PA Request No.:** F-2007-01553

**Document Number:** MORI 1531051

**Date of Document:** 09/27/1979

**Document Type:** Regulation

**Classification:** Unclassified

**From/To:**

**Subject:** Nonofficial Publications and Oral Representations by Employees and Former Employees

**Document Pages:** 2

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☐ (b) (2) | ☐ (j) (1) | ○ Partial Release |
| ☐ (b) (3) | ☐ (j) (2) | ● Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

**Document Description:**

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531052

Date of Document: 04/24/1980

Document Type: Regulation

Classification: Unclassified

From/To:

Subject: Nonofficial Publications and Oral Presentations by Employees and Former Employe

Document Pages: 2

**FOIA Exemptions:**
- ☐ (b) (1)
- ☐ (b) (2)
- ☐ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ○ Partial Release
- ● Released in Full
- ○ Referred to Third Agency

Document Description :

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531067

Date of Document:  02/14/1992

Document Type:  Memo

Classification:  Unclassified

From/To:  Chairman, Publications Review Board/Deputy Chief of IMS

Subject:  Publications Review Board

Document Pages:  2

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is an internal CIA memorandum. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices and includes: internal CIA regulation, publication, and file numbers; telephone numbers for CIA employees; internal CIA addresses; and internal CIA personnel rules and practices regarding, *inter alia*, internal procedures and record keeping requirements related to the review of manuscripts for classified information. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: CIA employee names, a CIA employee's telephone number, and internal CIA regulation and publication numbers. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v. CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531068

Date of Document: 02/07/1983

Document Type: Handbook

Classification: Unclassified

From/To:

Subject: Procedures for Review Handbook

Document Pages: 28

| FOIA Exemptions: | Privacy Act Exemptions: | Disposition: |
|---|---|---|
| ☐ (b) (1) | ☐ (d) (5) | ○ Denied in Full |
| ☒ (b) (2) | ☐ (j) (1) | ● Partial Release |
| ☒ (b) (3) | ☐ (j) (2) | ○ Released in Full |
| ☐ (b) (4) | ☐ (k) (1) | ○ Referred to Third Agency |
| ☐ (b) (5) | ☐ (k) (2) | |
| ☐ (b) (6) | ☐ (k) (5) | |
| ☐ (b) (7) (c) | | |
| ☐ (b) (7) (d) | | |
| ☐ (b) (7) (e) | | |
| ☐ (b) (7) (f) | | |

Document Description: This document is an internal CIA handbook for publication reviewers. The CIA withheld exempt information in this document pursuant to FOIA exemptions high (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption high (b)(2) would reveal internal personnel rules and practices, including the CIA's internal procedures for: a) reviewing works of fiction; b) reviewing information from other agencies or foreign governments; c) handling and classifying manuscripts; d) reviewing materials intended for use in official publications; and e) reviewing material previously disclosed. The CIA also withheld exempt high (b)(2) information regarding the administration of the Publications Review Board ("PRB"). The information withheld pursuant to FOIA exemption high (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. Moreover, the disclosure of the information withheld pursuant to FOIA exemption high (b)(2) would significantly risk circumvention of the CIA's PRB regulation. The disclosure of this information would allow an author to write around the CIA's PRB regulation. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation, publication, and form numbers, CIA employee telephone numbers, and internal CIA organizational information. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v. CIA (2) Vaughn Index

FOIA/PA Request No.: F-2007-01553

Document Number: MORI 1531069

Date of Document: 07/27/1983

Document Type: Handbook

Classification: Unclassified

From/To:

Subject: Procedures for Review Handbook

Document Pages: 9

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☐ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

**Document Description:** This document is an internal CIA handbook for publication reviewers. The CIA withheld exempt information in this document pursuant to FOIA exemptions high (b)(2) and (b)(3). The information withheld pursuant to FOIA exemption high (b)(2) would reveal internal personnel rules and practices, including the CIA's internal procedures for: a) reviewing works of fiction; b) reviewing information from other agencies or foreign governments; c) handling and classifying manuscripts; d) reviewing materials intended for use in official publications; and e) reviewing material previously disclosed. The CIA also withheld exempt high (b)(2) information regarding the administration of the Publications Review Board ("PRB"). The information withheld pursuant to FOIA exemption high (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. Moreover, the disclosure of the information withheld pursuant to FOIA exemption high (b)(2) would significantly risk circumvention of the CIA's PRB regulation. The disclosure of this information would allow an author to write around the CIA's PRB regulation. The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA regulation, publication, and form numbers, CIA employee telephone numbers, and internal CIA organizational information. The CIA provided a copy of this document to Plaintiff.

Case Number: 1:07cv01382
Judge's Initials: RMU

# James Madison Project v . CIA (2) Vaughn Index

FOIA/PA Request No.:  F-2007-01553

Document Number:  MORI 1531121

Date of Document:  01/07/1992

Document Type:  Memo

Classification:  Secret

From/To:  Deputy Director for Planning and Coordination/Inspector General

Subject:  Inspection Report on the Publications Review Board

Document Pages:

**FOIA Exemptions:**
- ☐ (b) (1)
- ☒ (b) (2)
- ☒ (b) (3)
- ☐ (b) (4)
- ☒ (b) (5)
- ☐ (b) (6)
- ☐ (b) (7) (c)
- ☐ (b) (7) (d)
- ☐ (b) (7) (e)
- ☐ (b) (7) (f)

**Privacy Act Exemptions:**
- ☐ (d) (5)
- ☐ (j) (1)
- ☐ (j) (2)
- ☐ (k) (1)
- ☐ (k) (2)
- ☐ (k) (5)

**Disposition:**
- ○ Denied in Full
- ● Partial Release
- ○ Released in Full
- ○ Referred to Third Agency

Document Description : This document is an internal CIA memorandum. The CIA withheld exempt information in this document pursuant to FOIA exemptions low (b)(2), (b)(3) and (b)(5). The information withheld pursuant to FOIA exemption low (b)(2) would reveal internal personnel rules and practices, including: internal CIA regulation, publication, and file numbers; telephone numbers for CIA employees; internal CIA addresses; and internal CIA personnel rules and practices regarding, *inter alia*, internal procedures and record keeping requirements related to the review of manuscripts for classified information. The information withheld pursuant to FOIA exemption low (b)(2) is predominantly internal, not of any genuine public interest, and does not purport to regulate the public's activities or set standards that CIA personnel must follow when deciding whether to proceed against or take action affecting members of the general public. The information withheld from this document pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA exemption (b)(3) includes: CIA employee names, internal CIA regulation, publication, and file numbers, CIA employee telephone numbers, a CIA employee's identification number, and a CIA employee's signature. This document also contains the Public Affairs Office's response to four operational recommendations made in a preceding PRB inspection report. The withheld information in this document includes: a) the Public Affairs Office's pre-decisional and deliberative analysis regarding the adoption of operational recommendation number 2; and b) a description of the Public Affairs Office's proposed revisions to the PRB regulation and handbook. The deliberative process privilege exempts the withheld information in this document from disclosure. The pre-decisional privilege and, thus, FOIA exemption (b)(5), exempt this information from disclosure.  The CIA provided a copy of this document to Plaintiff.

**Case Number:** 1:07cv01382
**Judge's Initials:** RMU

EXHIBIT B

Charlie

F-07-01553

# The James Madison Project
## 1250 Connecticut Avenue, N.W.
### Suite 200
### Washington, D.C. 20036

(202) 498-0011
(202) 330-5610 fax

E-Mail: JaMadPro@aol.com
http://www.jamesmadisonproject.org

26 June 2007

2007 JUN 27 AM 6:46

Scott A. Koch
Central Intelligence Agency
Information and Privacy Coordinator
Washington, D.C. 20505

Re: FOIA Request – PRB Policy Memoranda

Dear Mr. Koch:

This is a request on behalf of The James Madison Project under the Freedom of Information Act, 5 U.S.C. § 552, et seq., for copies of all internal Central Intelligence Agency ("CIA") documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board ("PRB").

If you deny all or part of this request, please cite the specific exemptions you believe justifies your refusal to release the information or permit the review and notify us of your appeal procedures available under the law. In excising material, please "black out" rather than "white out" or "cut out".

We are hereby requesting a waiver of all fees. The James Madison Project is a non-profit organization under the laws of the District of Columbia and has the ability to disseminate information on a wide scale. Stories concerning our activities have received prominent mention in many publications including, but not limited to, *The Washington Post, The Washington Times, St. Petersburg Tribune, San Diego Union Tribune, European Stars & Stripes, Christian Science Monitor, U.S. News and World Report, Mother Jones* and *Salon Magazine*. Our website, where much of the information received

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

*The James Madison Project*

through our FOIA requests is or will be posted for all to review, can be accessed at *http://www.jamesmadisonproject.org*. Prior requests submitted by our organization have all received fee waivers by your Agency.

Furthermore, there can be no question that the information sought would contribute to the public's understanding of government operations or activities and is in the public interest. Most of the CIA's regulations remain publicly unavailable, particularly its guidelines pertaining to the operation of the PRB. Enclosed are articles from *Newsweek*, *National Journal* and *USA Today* detailing the continuing shift in CIA policy on prepublication review and the growing strain that has been placed both on PRB reviewers, as well as authors, in trying to balance the 1st Amendment with the national security interests of the United States. Understanding the guidelines that form the basis of PRB's procedures and the history will clearly contribute to the public's understanding of government operations or activities.

Please respond to this request within 20 working days as provided for by law. Failure to timely comply may result in the filing of a civil action against your agency in the United States District Court for the District of Columbia. Your cooperation in this matter would be appreciated. If you wish to discuss this request, please do not hesitate to contact me at either (202) 498-0011 or my law office at (202) 454-2809.

Finally, please have all return correspondence addressed specifically to my attention to ensure proper delivery.

Sincerely,

Mark S. Zaid
Executive Director

---

*"Knowledge will forever govern ignorance, and a people who mean to be their own Governors, must arm themselves with the power knowledge gives."*

*James Madison, 1822*

EXHIBIT C



Central Intelligence Agency

Washington, D.C. 20505

JUL 0 4 2007

Mr. Mark S. Zaid, Executive Director
The James Madison Project
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

Reference: F-2007-01553

Dear Mr. Zaid:

On 27 June 2007 the Office of the Information and Privacy Coordinator received your 26 June 2007 Freedom of Information Act (FOIA) request for records **constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board ("PRB").** We have assigned your request the reference number above. Please use this number when corresponding with us so that we can identify it easily.

We accept your request and will process it according to the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Unless you object, we will limit our search to CIA-originated records existing through the date of this acceptance letter.

Concerning your request for a fee waiver, we have determined that your request meets fee waiver criteria. Therefore, your request for a fee waiver is granted.

The heavy volume of FOIA requests received by the Agency has created delays in processing. Since we cannot respond within the 20 working days stipulated by the Act, you have the right to consider this as a denial and may appeal to the Agency Release Panel. It would seem more reasonable, however, to have us continue processing your request and respond as soon as we can. You can appeal any denial of records at that time. Unless we hear from you otherwise, we will assume that you agree, and we will proceed on this basis.

Sincerely,

Scott Koch
Information and Privacy Coordinator

EXHIBIT D



Washington, D.C. 20505

JAN 1 1 2008

Mr. Mark S. Zaid, Executive Director
The James Madison Project
1250 Connecticut Avenue, NW
Suite 200
Washington, D.C. 20036

Reference: F-2007-01553

Dear Mr. Zaid:

This is a final response to your 26 June 2007 Freedom of Information Act (FOIA) request, which the office of the Information and Privacy Coordinator received on 27 June 2007, for information pertaining to *"...Central Intelligence Agency ("CIA") documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the Publications Review Board ("PRB")."* We processed your request in accordance with the FOIA, 5 U.S.C. § 552, as amended, and the CIA Information Act, 50 U.S.C. § 431, as amended. Our processing included a search for records as described in our 4 July 2007 acceptance letter existing through the date of that letter.

We completed a thorough search for records responsive to your request and located material, and made the following determinations:

Enclosed is material that can be released in segregable form with deletions made on the basis of FOIA exemptions (b)(1), (b)(2), (b)(3), and (b)(5).

We determined that the remaining material is properly classified and must be denied in its entirety on the basis of FOIA exemptions (b)(1), (b)(3), and (b)(5).

Because this matter is in litigation, the CIA regulations governing administrative appeals, set forth at 32 C.F.R. § 1900.2 state that you have no right of administrative appeal in this matter.

Thank you for your patience while we processed this request.

Sincerely,

Scott Koch
Information and Privacy Coordinator

Enclosures

EXHIBIT E

# MARK S. ZAID, P.C.
### ATTORNEY-AT-LAW

1250 CONNECTICUT AVENUE, N.W.
SUITE 200
WASHINGTON, DC 20036

———

TELEPHONE: (202) 454-2809
FACSIMILE: (202) 330-5610

MARK S. ZAID, MANAGING PARTNER
E-MAIL: MARK@MARKZAID.COM
BRADLEY P. MOSS, ASSOCIATE
E-MAIL: BRAD@MARKZAID.COM

January 17, 2008

<u>VIA E-MAIL AND FACSIMILE</u>

Vesper Mei
Trial Attorney
United States Department of Justice
Civil Division, Rm. 7308
20 Massachusetts Ave, NW
Washington, D.C. 20530

Re: <u>JMP v. CIA et al.</u>, Civil Action No. 07-1382 (DDC)(RMU)

Dear Vesper:

I trust this letter finds you well and that you had an enjoyable holiday season.

As you likely know, by letter dated January 11, 2008, the CIA provided a final response to JMP's June 26, 2007 FOIA request that is the subject of the above lawsuit and provided copies of several documents.

I have now reviewed the documents and wanted to bring to your attention several perceived deficiencies with the hope that these can be addressed administratively rather than through court filings challenging the CIA's adequacy of its search (or even though additional FOIA requests/litigation if it comes to that). The issues I see at the current time, and this may of course not be completely inclusive, are as follows:

1)    The PRB has provided briefing sessions to Agency employees using, I presume, power-point slides. An example of a briefing, which I do not believe I previously provided you, is attached for your review. In our opinion, any additional documents pertaining to past briefings fall within the scope of the litigation;

2)    MORI DocID: 1512160 reveals that there exists "a briefing or informational packet on the prepublication review process", "a web page on REDACTED that explains the prepublication review process", "a segment on the prepublication review process to the annual ethics briefing for SIS officers", and "a briefing or

informational packet" that is provided to "all employees leaving the Agency". In our opinion, these documents/web pages all fall within the scope of the litigation.

3)    MORI DocID: 1512161 reveals that "4.f. - Guidance will be given to supervisors and contracting officers ...." I would presume this is written guidance. Section 5 also refers to similar documents and briefings set forth in the preceding document above. In our opinion, these documents/pages all fall within the scope of the litigation.

4)    MORI DocID: 1512162, page 3 fn. 5 refers to an AR dated March 26, 1999 that pertains to PRB authority or process that applies to DCI employees. In our opinion, this AR falls within the scope of the litigation.

5)    MORI DocID: 1512163, page 1, refers to an October 1991 Inspection Report on the PRB, as well as other relevant memorandums (such as a January 17, 1992 memo from DDP&C). Page 2 mentions an "appointing document" containing a statement of the PRB member's duties, and references a Headquarters Handbook (is that MORI DocID: 1512164?). In our opinion, these documents, and any others like or related to them, fall within the scope of the litigation.

6)    I cannot imagine that over the years there are not additional policy/internal memorandums (such as MORI DocID: 1512162 and MORI DocID: 1512165) or LOTUS notes (or whatever else documents would be called or styled) that do not fall within the scope of the litigation, particularly with respect to the operations of the PRB (or its predecessor, the records of which were transferred to the PRB). Have past PRB directors been asked to see if they can identify relevant records? I know of at least two who are still employed by the Agency directly and another who serves as a contractor. Furthermore, clearly the cases of Frank Snepp and Michael Scheuer both led to significant policy changes and discussions regarding prepublication review (especially Agency reactions to the publication of their respective books and how that came to be). Yet no documents were provided that specifically discuss either situation by name (other than some legal cite references to the Snepp litigation). Of course, we are not seeking Privacy Act protected information.

Finally, specifically with respect to MORI DocID: 1512164, can you let me know the year of this document and whether it is still in effect? If it is not still in effect, is there not any subsequent version of the Handbook? For the most part I am not overly concerned with the redactions in the released documents, except for this one where a significant amount of the text has been withheld. I would respectfully ask that you have the CIA take a second, closer look at this particular document to see if anything else can be released, especially since Exemption (b)(2) is being relied upon.

In responding you do not need to seek to educate me on the case law regarding the identification of potentially responsive documents within released documents, or the nature of speculating on whether documents may or may not, or should or should not, exist. I am exploring

options in an administrative capacity, not from a litigation standpoint. For now I am trying to simply see if we can resolve this matter short of further litigation, which is something we are completely amenable to doing if possible.

I look forward to hearing from you soon. If you have any questions, please do not hesitate to let me know.

Sincerely,

/s/

Mark S. Zaid

Attachment

EXHIBIT F



| *Mailing Address* | *Street/Courier Address* |
|---|---|
| Room 7316 | Room 7316 |
| P.O. Box 883 | 20 Massachusetts Avenue NW |
| Washington, DC 20044 | Washington, DC 20001 |

Vesper Mei                                          Tel:    (202) 514-4686
Senior Counsel                                     Fax:   (202) 616-8470

May 27, 2008

**BY FEDERAL EXPRESS**

Mark Zaid
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036

Re:     **The James Madison Project v. CIA, 07-cv-01382 (RMU)**

Dear Mark:

    Enclosed please find an additional twenty-four documents that the CIA is releasing in this case.  Although the CIA believes that its initial search for documents was adequate, in the spirit of cooperation, they addressed the "perceived deficiencies" that you raised in your January 17, 2008 letter to me after their initial response to your FOIA request, and located the twelve non-regulation documents that are enclosed here.  The other twelve documents are rescinded versions of the PRB regulation that the Agency subsequently located, in an attempt to provide you with as complete a response to your FOIA request as possible.

Sincerely yours,

Vesper Mei
Senior Counsel

Enclosures

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT,   )
                                )
        Plaintiff,       )
                                )
     v.                  )   Case No. 1:07cv01382 (RMU)
                                )
CENTRAL INTELLIGENCE AGENCY,   )
                                )
        Defendant.       )
_____)

**DECLARATION OF JOSEPH W. LAMBERT,
DIRECTOR, INFORMATION MANAGEMENT SERVICES,
OFFICE OF THE CHIEF INFORMATION OFFICER,
<u>CENTRAL INTELLIGENCE AGENCY</u>**

**I.**   **<u>INTRODUCTION</u>**

    I, JOSEPH W. LAMBERT, hereby declare and say:

    1.  I am the Director of Information Management Services ("IMS") within the Office of the Chief Information Officer of the Central Intelligence Agency ("CIA"). I was selected for this position on 7 December 2007. I have held several senior, operational, and administrative positions in the U.S. Government since 1984.

    2.  IMS administers the CIA's information management program, which includes information and records management, classification management, declassification review and, when authorized and appropriate, the release of CIA information to the public. The Regulatory Services Branch, a component of IMS,

is responsible for publishing and maintaining all Agency-wide regulatory issuances.

3.  As Director of IMS, I am the exclusive release authority for the disclosure outside of the CIA of any Agency-wide regulatory issuance.

4.  Through the exercise of my official duties, I am familiar with this civil action.  I make the following statements based upon my personal knowledge and information made available to me in my official capacity.

5.  In connection with Plaintiff's Freedom of Information Act ("FOIA") request, reference number F-2007-01553, and with this litigation, I have reviewed thirteen Agency-wide regulatory issuances.  I have determined that six of these documents can be released in their entirety to Plaintiff.  Those documents are identified with the following document numbers:  1531047, 1531048, 1531049, 1531050, 1531051, and 1531052.

6.  I have determined that the seven remaining documents, identified by document numbers 1512158, 1531061, 1531062, 1531063, 1531064, 1531065, and 1531066, can be released in segregable form to Plaintiff.  I have determined that the information withheld from these seven documents is information

about the organization and functions of the CIA and must be protected from public disclosure under Section 6 of the CIA Act.[1]

7.   The CIA, an independent federal agency, was created by the National Security Act of 1947 to support national policymakers through collection of foreign intelligence information by clandestine means.  Congress was so concerned to protect the ability of the CIA to conduct effective clandestine intelligence activities that it enacted, in 1949, a specific legislative provision to shield the CIA's organization and functions from public disclosure.  Section 6 of the Central Intelligence Agency Act of 1949 ("CIA Act") provides that the CIA "shall be exempted" from the provisions of any laws which require "publication or disclosure of the organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."  The Section 6 exemption has been substantively unchanged since it was enacted in 1949.

8.   Section 6 of the CIA Act specifically states that the exemption of CIA's organization and functions from public disclosure is enacted to serve the interest of the foreign intelligence activities of the United States.  Since 1949, Section 6 has represented a clear and consistent expression of Congressional intent to protect the CIA's ability to fulfill its foreign intelligence mission by shielding its organization and

---

[1] 50 U.S.C. § 403g (Supp. V 2005).

functions from any laws requiring public disclosure.  For over

fifty years, Congress has maintained this essential protection

for the CIA.

9.    The Section 6 protection for CIA organization and

functions has such enduring importance to our nation's security

that when Congress enacted the Freedom of Information Act to

provide for public access to official agency records, Congress

ensured that Section 6 of the CIA Act would override any

obligation to release CIA information to FOIA requesters.  FOIA

exemption (b)(3) provides that FOIA does not require the release

of information:

> specifically exempted from disclosure by
> statute (other than section 552b of this
> title) provided that such statute (A)
> requires that the matters be withheld from
> the public in such a manner as to leave no
> discretion on the issue, or (B) establishes
> particular criteria for withholding or
> refers to particular types of matters to be
> withheld.[2]

The legislative history of the FOIA specifies, and the courts

have consistently determined, that Section 6 exempts information

disclosing CIA organization or functions from public release,

through the incorporation of the CIA Act as a withholding

statute under Exemption (b)(3).  Further, courts have recognized

that the Section 6 protection is absolute, and therefore that

the CIA is not required to make any showing of harm in order to

_____

[2]  5 U.S.C. § 552(b)(3).

4

withhold information protected by Section 6 from public disclosure.

10.  I determined that the following information withheld from document number 1512158 and from document number 1531061 requires continued protection and is exempt from disclosure under Section 6 of the CIA Act:  internal regulation numbers, internal organizational units, abbreviations for internal organizational units, official titles, CIA facility names and locations, employee room numbers, employee fax numbers, employee phone numbers, e-mail addresses identifying specific CIA organizational units, procedures and functions of CIA organizational units, and an internal CIA form number.

11.  Further, I determined that the following information withheld from document number 1531062 requires continued protection and is exempt from disclosure under Section 6 of the CIA Act:  internal regulation numbers, internal organizational units, abbreviations for internal organizational units, official titles, CIA facility names and locations, employee room numbers, employee fax numbers, employee phone numbers, e-mail addresses identifying specific CIA organizational units, procedures and functions of CIA organizational units, an internal CIA form number, and the name of a CIA database used in connection with a CIA form.

12.   Further, I determined that the following information withheld from document numbers 1531063, 1531064, 1531065, and 1531066 requires continued protection and is exempt from disclosure under Section 6 of the CIA Act:   internal CIA regulation numbers and internal CIA organizational data, units, and functions.

<div align="center">*   *   *   *</div>

I hereby declare under penalty of perjury that the foregoing is true and correct.

Executed this 27th day of May, 2008.

_____
Joseph W. Lambert
Director
Information Management Services
Office of the
Chief Information Officer
Central Intelligence Agency

6