IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |
|---|---|
| THE JAMES MADISON PROJECT | * |
| Plaintiff, | * |
| v. | * Civil Action No. 07-01382 (RMU) |
| CENTRAL INTELLIGENCE AGENCY | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \*

## ERRATA

Plaintiff The James Madison Project, by and through its undersigned counsel, hereby submits for filing and consideration a revised copy (correcting paragraph mis-numbering) of the Rule 56(f) Declaration of Mark S. Zaid, Esq. attached as Exhibit "1" to its Opposition to Defendant's Motion for Summary Judgment (filed July 14, 2008).

Date:   July 14, 2008

                                                                Respectfully submitted,

                                                                /s/
                                                                _____
                                                                Mark S. Zaid, Esq.
                                                                DC Bar #440532
                                                                Bradley P. Moss, Esq.
                                                                D.C. Bar #975905
                                                                Mark S. Zaid, P.C.
                                                                1250 Connecticut Avenue, N.W.
                                                                Suite 200
                                                                Washington, D.C. 20036
                                                                (202) 454-2809

                                                                Attorneys for Plaintiff

James Madison Project v. CIA, 07-1382 (D.D.C.)(RMU)

# EXHIBIT "1"

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| THE JAMES MADISON PROJECT | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 07-01382 (RMU) |
| CENTRAL INTELLIGENCE AGENCY | * | |
| Defendant. | * | |

RULE 56(f) DECLARATION OF
EXECUTIVE DIRECTOR MARK S. ZAID, ESQ.

I, MARK S. ZAID, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a person over eighteen (18) years of age and competent to testify. I make this Declaration on personal knowledge and in support of the plaintiff's Opposition to Defendant's Motion for Summary Judgment (filed May 30, 2008).

2. I am the Executive Director of the plaintiff James Madison Project ("JMP") and have served in that position since I founded the organization in 1998. JMP is a Washington, D.C.-based non-profit organization created for the primary purpose of educating the public on issues relating to intelligence gathering and operations, secrecy policies, national security and government wrongdoing. Much of the work undertaken by JMP involves litigation under disclosure acts such as the Freedom of Information Act ("FOIA"). The principles underlying the objectives of the JMP are derived from the 1997 findings of The Commission on Protecting and Reducing Government Secrecy. Our website, which contains further information and examples of JMP's activities, can be viewed at www.JamesMadisonProject.org.

3. I am also an attorney of record in this litigation for JMP. I am admitted to practice law in the States of New York, Connecticut, Maryland and the District of Columbia, as well as the D.C. Circuit, Second Circuit and Fourth Circuit Court of Appeals, and the United States District Courts for the District of Columbia, Maryland, Eastern District of New York, Northern District of New York, Southern District of New York and the Court of Claims. I have been litigating FOIA cases since 1993. I have been teaching the D.C. Bar Associations CLE courses on FOIA since 2003, and I have been the co-editor of LITIGATION UNDER THE FEDERAL OPEN GOVERNMENT LAWS since 2002.

**Procedural Background**

4. By letter dated June 26, 2007, I submitted to the Central Intelligence Agency ("CIA") on behalf of JMP a FOIA request which sought "copies of all internal CIA documents constituting guidelines, regulations, or policy memoranda pertaining to the creation and operation of the Publications Review Board ("PRB")."

5. By letter dated July 4, 2007, the CIA acknowledged receipt of the request and assigned it Request No. F-2007-01553.

6. No further response was ever received from the CIA. As the twenty working days time limit expired on July 26, 2007, JMP filed suit in this court on July 30, 2007.

. 7. On November 1, 2007, I spoke with Vesper Mei, the Department of Justice attorney representing the CIA, and we negotiated the following: (1) the CIA will complete processing of the documents responsive to plaintiff's request and release to plaintiff any non-exempt documents or portions of documents by January 11, 2008; (2) the parties will confer with respect to the CIA's release (if any) of documents by January 25, 2008; and (3) if, after conferring, the parties do not agree that the CIA's

release of any non-exempt documents or portions of documents resolves the issues in this case, the CIA will move for summary judgment on or before March 25, 2008.

8. By letter dated January 11, 2008, the CIA released 9 documents that had been previously withheld in their entirety in segregable form. The CIA indicated that it was withholding information from those 9 documents based upon FOIA exemptions One, Two, Three and Five. The CIA also noted that it was withholding 3 additional documents in their entirety based upon the same FOIA exemptions.

9. By letter dated January 17, 2008, based upon my review of the released records, I identified several deficiencies in the CIA's search and provided suggestions and clarifications to be used in a revised search.

10. By letter dated May 27, 2008, the CIA released 11 more documents that had been found based upon the revised search scope and methodology. All of the documents contained redactions. The CIA also released, in their entirety, six rescinded versions of the CIA's PRB regulation and, with redactions, six other rescinded versions of the PRB regulation.

11. From the CIA's filing of its Motion for Summary Judgment, the CIA claims it identified 36 responsive documents, of which 27 were partially released, 3 withheld in full and 6 released in full. Upon review of released records I determined that JMP would challenge the withholdings in several of the documents partially released, and all of the 3 records withheld in full.

**Substantive Response**

12. The CIA relies on the Declaration of Joseph W. Lambert, Director, Information Management Services, Office of the Chief Information Officer (dated May 27, 2008) and

3

the Declaration of Martha M. Lutz, Information Review Officer (dated May 30, 2008)("Lutz Decl.") to support its withholding determinations. I have personally reviewed both documents.

    13. In my private capacity as an attorney I have been representing federal employees, particularly within the Intelligence Community, for over 15 years. I can safely say that I have litigated more prepublication review challenges than anyone else. See e.g. Boening v. CIA, Civil Action No: 07-430 (D.D.C.)(EGS); Sterling v. CIA, Civil Action No: 03-0603 (D.D.C.)(TPJ); Wendy Lee v. CIA, Civil Action No. 03-0206 (D.D.C.)(TPJ); Waters v. CIA, Civil Action No: 06-383 (D.D.C.)(RBW); Stillman v. CIA 209 F. Supp. 2d 185 (D.D.C. 2002)(EGS), rev'd on other grounds, 319 F.3d 546 (D.C. Cir. 2003). I have also handled numerous administrative prepublication review challenges at multiple federal agencies, to include the CIA, over the years. My involvement in prepublication review challenges has led to my being interviewed on numerous occasions by the media to provide expert commentary on prepublication matters. See e.g., *New York Sun,* "White House Now Grows Skittish Over Iranian Demarche of 2003", December 19, 2006; *Los Angeles Times*, David Wise, "Talker, author, censor, spy; More and more intelligence officials are sharing their secrets in books, but it's the CIA that usually gets the last word", May 6, 2007;.*USA Today*, "Surge in spy-and-tell books, like Tenet's, strains CIA review board", April 30, 2007; *Publishers Weekly*, "Are Spy Books Spooking the CIA?", October 2, 2006; *New York Sun*, "Here's the Buzz on Valerie Plame: She'll Break Her Silence for $2.5M", May 11, 2006; *New York Times*, "C.I.A. Crackdown Seeks To Tighten Agency's Secrecy", April 24, 2006; *New York Times*, "Book Due Soon By Wen Ho Lee Is Causing Stir", August 5, 2001. I have also published op-ed and commentaries

4

on the topic. See e.g., *Washington Times*, Muzzling the messenger, August 10, 2004, attached at Exhibit "A".

14. I have also litigated dozens of FOIA lawsuits over the last 15 years. As noted above, I have been teaching the D.C. Bar Associations CLE courses on FOIA since 2003, and I have been the co-editor of LITIGATION UNDER THE FEDERAL OPEN GOVERNMENT LAWS since 2002.

15. With respect to the issue of adequacy of search, the CIA has failed to demonstrate it has acted reasonably and processed all responsive records. In my letter dated January 17, 2008, I articulated the search issues that JMP identified as deficient. Lutz Decl., Exhibit "E". Ms. Lutz attempted to respond to the specific concerns that I raised in her declaration. Id. at ¶¶30-40. A review of those responses, however, demonstrates the deficiencies that continue to exist regarding the CIA's adequacy of search and require denial of its Motion without prejudice at this time. For one thing, quite a number of the records that JMP identified as responsive were not located. I did not speculate as to the existence of the specific records referenced in my letter. My information was based on a specific and personal review of released responsive records pertaining to this case. Indeed, I had to provide copies of records to the CIA, which the CIA had initially failed to identify as responsive, in order to assist the CIA in locating additional, clearly relevant, records.

16. Most importantly, the CIA concedes that in pursuing its search of those records identified by JMP as responsive it restricted its follow-up solely to the PRB only. Lutz Decl. at ¶31. At a minimum the CIA should have also tasked the other six components that were originally identified as likely to maintain possession of responsive records. Id.

at ¶28. Additionally, there is no evidence that the CIA sought input from two former PRB Chairmen – John Hollister Hedley and Scott Koch – in order to obtain assistance in locating the relevant responsive records notwithstanding the fact that I noted in my letter that these individuals, though I did not specifically name them in the letter, remain employed by or affiliated with the CIA. Id. at Exhibit "E".

17. Moreover, while my letter pertains to the existence of specific identified records I also raised concerns regarding a category of records pertaining to former CIA officers Frank Snepp and Michael Scheuer, both of whom were involved in prepublication review matters that led to significant changes within the CIA PRB system. The Snepp litigation, which arose from the publication of his book *Decent Interval* (Random House, 1977), lies at the heart of the CIA's current framework for the PRB. See *www.FrankSnepp.com*. Mr. Scheuer's publication *Imperial Hubris* (Potomac Books Inc. 2004) was the subject of significant controversy within the CIA and also led to specific changes within the PRB's processing of submitted employee writings. See Mark S. Zaid, "CIA Insider's Harsh Critique of U.S. Terror Tactics: A Review Of Imperial Hubris: Why The West Is Losing The War on Terror", *Findlaw.com*, at Exhibit "B". Yet not one document has been released pertaining to these matters. Nor has the CIA addressed either issue within its declarations or Vaughn index.

18. Because material facts, such as described above, still remain at issue, JMP should be permitted to undertake limited discovery in order to address the disputes surrounding the CIA's adequacy of search and the appropriateness of its Exemption invocations. Discovery need not be overly burdensome or excessive in scope. At a minimum, supplemental CIA affidavits could fill at least some of the evidentiary gaps identified by

JMP. In addition, a limited number of interrogatories and depositions would be helpful to assess whether the CIA's search methodology was reasonably calculated to uncover all responsive documents in light of that information.

19. Finally, given my extensive experiences with the CIA's Prepublication Review Board, I find I am compelled to respond to the CIA's argument that disclosure of allegedly-exempt information contained within four different versions of an internal handbook for CIA publication reviewers would "significantly risk circumvention of the regulations from which the information came" by way of providing a blueprint for ways to circumvent the prepublication review process. See CIA's Memo at 23-24 (citation omitted). See also Lutz Decl. at ¶¶71-72 (arguing that disclosure of the information "would allow a would-be author to 'game the system' and force the disclosure of classified information that could damage the national security"). The CIA is essentially arguing that disclosure of the information would render operationally useless the effectiveness of the prepublication review process in general and the usefulness of the documents in particular. Id. at ¶72. This argument is patently absurd, and the CIA should be pressed further to specifically elaborate to this Court how exactly such a scenario would come to pass.

20. The prepublication review process exists to ensure classified information is not inadvertently published. Former and current CIA employees/contractors and others are required, in perpetuity, to submit their writings concerning matters regarding which they had authorized access to classified information. An unequivocal First Amendment right exists to publish unclassified information except for the limited extent current employees/contractors face certain additional restrictions. There is no legitimate method

7

to "circumvent" the CIA's prepublication review process other than to refuse to comply with the procedures that are set out in both secrecy/non-disclosure forms and the PRB's internal regulations. If an individual were to gain access to this internal (b)(2) information and somehow "game the system", exactly what is meant by this statement? If, for example, the internal records reveals that certain information need not be submitted for prepublication review than exactly how is disclosing that information to prospective authors circumventing a system that does not require submission? Or if the information reveals how text can be written in such a way not to be considered classified, on what grounds would such a "manipulation" circumvent a review system that seeks to minimize suppression? The text is legally publishable whether the CIA objects or not. Either the information *is* considered classified and can not be published or it is *not* considered classified and it can be published. Of course, so long as the CIA asserts the information is classified the opinion of the author to the contrary matters not, until such time a federal district judge says otherwise.

    I do solemnly affirm under the penalties of perjury and upon personal knowledge that the contents of the foregoing paper are true to the best of my knowledge.

Date:   July 14, 2008

/s/
_____
Mark S. Zaid