# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE JAMES MADISON PROJECT,   )
        )
        Plaintiff,   )
        )
        v.   )   Case No. 1:07cv01382 (RMU)
        )
CENTRAL INTELLIGENCE AGENCY,   )
        )
        Defendant.   )
        )
_____)

## DEFENDANT'S REPLY IN FURTHER SUPPORT OF
## <u>MOTION FOR SUMMARY JUDGMENT</u>

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director

VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov

Counsel for Defendant

August 11, 2008

**INTRODUCTION**

In its Plaintiff's Opposition to Defendant's Motion for Summary Judgment ("Pl's Opp."), plaintiff challenges the adequacy of the CIA's search, as well as the CIA's assertion of Exemptions 1, 2, 3, and 5 over certain documents. As set forth more fully below, however, the CIA's search was not only adequate, but went far beyond what was required, and the CIA's assertion of Exemptions 1, 2, 3, and 5 should be upheld. As a result, summary judgment should be granted to the CIA.

**ARGUMENT**

**I.     THE CIA'S SEARCHES WENT BEYOND WHAT WAS REQUIRED.**

Summary judgment on the issue of the adequacy of the search is proper unless plaintiffs can contradict the CIA's account of the search procedure or raise evidence of the CIA's bad faith. See, e.g., Founding Church of Scientology of Washington D.C., Inc. v. National Security Agency, 610 F.2d 824, 836 (D.C.Cir.1979); Greenberg v. U.S. Dept. of Treasury, 10 F.Supp.2d 3, 13 (D.D.C.,1998). Further, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." Iturralde v. Comptroller of Currency, 315 F.3d 311, 316 (D.C. Cir. 2003) (quoting SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1201 (D.C.Cir.1991)). Here, where plaintiff has not challenged the CIA's good faith in conducting its search, and has offered nothing other than speculation that additional responsive documents may exist, summary judgment should be granted to the defendant.

As set forth in its opening brief, after receiving plaintiff's FOIA request, the CIA tasked the seven CIA components that it determined were most likely to have responsive records to search their relevant record systems for documents responsive to plaintiff's FOIA request. Lutz Decl. ¶ 28. The CIA's broad search terms were designed to locate all documents that mentioned the Publications Review Board, the PRB, and a number of other related terms. See Lutz Decl. ¶ 29. That search, in

itself, was adequate.  Oglesby v. Dep't of the Army, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").

After the plaintiff reviewed the responsive documents, it sent the CIA a letter identifying seven perceived deficiencies in the CIA's initial response.  As a result of that letter, the CIA undertook additional searches for documents.  Plaintiff bases its challenge to the adequacy of the search on the CIA's inability to locate all of the documents that plaintiff identified in its clarifying letter.  Pl's Opp. 8-9.  The CIA, however, was not required to undertake the additional searches, and the fact that it did weighs even more heavily in favor of the adequacy of its search.  See Kowalczyk v. DOJ, 73 F.3d 386, 388 (D.C. Cir. 1996) ("A reasonable effort to satisfy [a FOIA] request does not entail an obligation to search anew based upon a subsequent clarification.").  Further, simply because it did not locate the additional documents identified by plaintiff does not render the search inadequate.  Weisberg v. DOJ, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (court's inquiry regarding the adequacy of a search is the search itself and not the results of the search).

Plaintiff contends that in performing its second search, rather than tasking the PRB with finding the PRB-related records, the CIA should have also tasked the other six components initially tasked as well.  Pl's Opp. 9.  However, with the exception of MORI 1512163, which was the report of the CIA's Office of the Inspector General ("OIG") on the PRB (and for which the OIG was specifically asked to look in the second search), all of the documents sought by plaintiff after the initial search were PRB-related, and the PRB would have been the most likely component to have

them.[1]  See, e.g., Jan. 17, 2008 letter from Zaid to Mei, Ex. E to Lutz Decl.  (Item 1: slides for PRB

PowerPoint presentations; Item 2: briefing information on the PRB process; Item 3: contemplated

guidance on the PRB process to be given to supervisors and contracting officers (it is not clear

whether this proposal was implemented); Item 4: document pertaining to PRB authority or process

that applies to employees within the DCI (Director of Central Intelligence) area; Item 5: memo from

the Deputy Director for Planning and Coordination ("DDP&C"), "appointing document" containing

a statement of the PRB members' duties and Headquarters Handbook referenced in document

number 1512163; and Item 6: additional policy/internal memoranda related to the PRB).  Given that,

the PRB was the logical place in which to undertake any additional search for these documents, and

the additional search terms were reasonably designed to uncover any of those documents that might

exist.  Lutz Decl. ¶ 32.  Nor, given the breadth of the search terms, would input from the former PRB

Chairmen (who were not in any case identified by name in the January 17, 2008 letter) have been

of any benefit.  And similarly, with respect to plaintiff's contention that he should have received

documents related to former CIA officers Frank Snepp and Michael Scheuer, Pl's Opp. 9, the

breadth of the two searches would have pulled up any documents that mentioned both those

individuals' names and the PRB; any other search terms (for example, "Snepp" and/or "Scheuer")

would have pulled up far more documents (for example, the entire litigation files, which would not

have been responsive) than would have been responsive to plaintiff's FOIA request in this case.

Finally, plaintiff contends that the Lutz Declaration and Vaughn index are insufficient to

show that the CIA's search was adequate.  Pl's Opp. 10-11.  In order to find an adequate search, the

court may rely on "[a] reasonably detailed affidavit, setting forth the search terms and the type of

---

[1] In fact, the PRB did locate additional documents sought for Items 1and 5.

search performed, and averring that all files likely to contain responsive material (if such records exist) were searched." Oglesby, 920 F.2d at 68. The Lutz Declaration sets forth in exhaustive detail the search terms, identifies the offices that were determined the most likely to contain responsive material and describes the type of searches performed. Lutz Decl. ¶¶ 19-41. Summary judgment should be granted to the CIA on the adequacy of its search.

## II.     THE CIA HAS PROPERLY INVOKED EXEMPTIONS 1, 2, 3, AND 5.

Plaintiff contends that the CIA's affidavit is not sufficient to support its invocation of Exemptions 1, 2, 3, and 5. As set forth below, however, the combination of the Lambert Declaration and the Vaughn index sufficiently details the CIA's withholdings. The CIA properly invoked Exemptions 1, 2, 3, and 5, and these withholdings should be upheld by the Court.

### A.     The Declarations and Vaughn Index are Sufficiently Detailed.

Plaintiff's challenges to the CIA's withholdings are based not on the substance of the information withheld, but on what plaintiff alleges are the inadequacies of the Lutz and Lambert Declarations and accompanying Vaughn index. Pl's Opp. 11-13. At the outset, plaintiff contends that the agency "must provide 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." King v. DOJ, 830 F.2d 210, 219 (D.C. Cir. 1987). But in Morley v. CIA, 508 F.3d 1108, 1123 (D.C. Cir. 2007), the D.C. Circuit specifically approved a Vaughn index like the one provided by the CIA in this case:

> Although the CIA has not matched each redaction with a specific exemption, its Vaughn index does identify the exemptions claimed for each individual document. . . . [t]he descriptions of the documents in the Vaughn index, while categorical and with little variation from page to page, convey enough information for [plaintiff] and the court to identify the records referenced and understand the basic reasoning behind the claimed exemptions. Summary judgment was therefore appropriate on

the adequacy of the CIA's <u>Vaughn</u> index.

Here, as in <u>Morley</u>, the CIA's <u>Vaughn</u> index does identify the exemptions claimed for each individual document, with enough description to allow the plaintiff and the Court to identify the records referenced and understand the basic reasoning behind the claimed exemptions.  As a result, here, as in <u>Morley</u>, summary judgment is appropriate on the adequacy of the CIA's <u>Vaughn</u> index. <u>See</u> <u>also</u> <u>Judicial Watch, Inc. v. FDA</u>, 449 F.3d 141, 148 (D.C. Cir. 2006) ("The FDA's decision to tie each document to one or more claimed exemptions in its index and then summarize the commonalities of the documents in a supporting affidavit is a legitimate way of serving those functions [of a <u>Vaughn</u> index]").[2]

### B.    The CIA's Exemption 3 Withholdings Should be Upheld.

As set forth in the Lutz and Lambert Declarations, the CIA withheld information in the documents under Exemption 3 that would disclose CIA intelligence sources, intelligence methods, organization, functions, employee names, and official titles.  Lutz Decl. ¶ 80; Lambert Decl. ¶ 10-12. Section 102A(i)(1) of the National Security Act, section 6 of the CIA Act, and, thus, FOIA Exemption 3, specifically exempt this information from disclosure, and justify withholding all of

---

[2] In any case, if the Court were to find that the defendant's submission is inadequate to permit the Court to conduct a <u>de novo</u> review, rather than order discovery or the immediate release of the documents in question, the Court should remand to the agency and order submission of a more detailed index.  <u>See</u>, <u>e.g.</u>, <u>Campbell v. DOJ</u>, 164 F.3d 20, 31 (D.C. Cir. 1998) ("On remand, the district court can either review the documents <u>in camera</u> or require the FBI to provide a new declaration. . . . The latter course is favored where agency affidavits are facially inadequate[.]") (citation omitted); <u>The Nation Magazine v. Customs Serv.</u>, 71 F.3d 885, 892, 895 (D.C. Cir. 1995) (remanding for Customs to provide additional information and affidavits); <u>Meeropol v. Meese</u>, 790 F.2d 942, 960 (D.C. Cir. 1986) (remanding to district court to order FBI to reprocess certain records); <u>Greenberg</u>, 10 F. Supp. 2d at 20 (directing agency to produce new, more detailed <u>Vaughn</u> index);  <u>Branch v. FBI</u>, 658 F. Supp. 204, 206 (D.D.C. 1987) (remand to order agency to submit more detailed index).

the information withheld from the documents in this case. <u>See</u> Lutz Decl. ¶ 42, Lambert Decl. ¶¶ 7-9.

Through the combination of the Lutz and Lambert Declarations and the <u>Vaughn</u> index, the CIA has properly and adequately detailed its Exemption 3 withholdings, and its determination that such information should not be disclosed is entitled to deference by the Court. <u>CIA v. Sims</u>, 471 U.S. 159, 180 (1985). As set forth in defendant's opening brief, with respect to the CIA's Exemption 3 claims, the sole task for the court "is to determine whether or not the material withheld falls within the exemption claimed." <u>Fitzgibbon v. CIA</u>, 911 F.2d 755, 62 (D.C. Cir. 1990). In making this determination, the court is to "accord substantial weight and due consideration to the CIA's affidavits." <u>Id.</u> Here, the CIA has provided sufficient information for the Court to determine that the information withheld under Exemption 3 in fact falls within that exemption.

Plaintiff does not dispute that the CIA's intelligence sources and methods, as well as organizational and functional information, are absolutely protected from disclosure under the National Security Act and the CIA Act. Instead, plaintiff contends that the CIA's declarations and <u>Vaughn</u> index amount to "boilerplate, conclusory affidavits," Pl's Opp. 20, and insufficiently demonstrate that material withheld falls within Exemption 3 – "i.e., whether it relates to intelligence sources and methods." Pl's Opp. 19. In the end, plaintiff's specific Exemption 3 challenge consists of two points: 1) that neither the Lutz nor the Lambert Declaration addresses the three denied-in-full documents, all of which contain Exemption 3 redactions, Pl's Opp. 21; and 2) that "the CIA's identification of 'internal CIA regulation numbers' as falling within the scope of permissible withholdings by way of the NSA Act or CIA Act is without merit." <u>Id.</u>

Plaintiff, however, ignores the actual language of the declarations and <u>Vaughn</u> index. The

declarations specifically set forth the information withheld, see, e.g., Lutz Decl. ¶¶ 80-84; Lambert Decl. ¶¶ 10-12.  Further, as the Lutz Declaration explains (and plaintiff does not challenge) the definition of "intelligence methods" is broad:  "[T]he term 'intelligence methods' is not limited to sophisticated techniques and electronic devices.  Rather, 'intelligence methods' also include the special internal practices and procedures of an intelligence agency."  Lutz Decl. ¶ 56.  Such information is protected from disclosure by the National Security Act.  Id. ¶ 75.  In addition, aside from the National Security Act's protection of intelligence methods, the CIA Act also provides protection from disclosure of the "organization, functions, names, official titles, salaries, or numbers of personnel employed by the Agency."  See 50 U.S.C. § 403g, as amended.  As set forth in the Lutz Declaration, and unchallenged by plaintiff, "CIA employees' names and personal identifiers, . . . titles, file numbers, and internal organizational data are specifically and absolutely protected from disclosure by the CIA Act."  Lutz Decl. ¶ 78.  Taken together, these two statutes provide broad protection to the CIA's internal practices and procedures.  And the Lutz and Lambert Declarations further set forth the specific information withheld under those statutes and Exemption 3, and provide ample basis for the Court to find that the material withheld falls within that exemption.

    In addition to the explanations provided in the Lutz and Lambert Declarations, the Vaughn index details the information withheld in each document under Exemption 3.  See, e.g., MORI 1512160 ("Information withheld pursuant to FOIA exemption (b)(3) includes: internal CIA Web page URLs, an internal CIA Employee Bulletin number, internal CIA regulation and form numbers, the name of the CIA's intranet, CIA employee email addresses, CIA employee telephone numbers, CIA employee identification numbers, internal CIA organizational information, and CIA addresses.").  Taken together, the Lutz and Lambert Declarations, as well as the Vaughn index,

provide more than enough information upon which the Court may find the CIA's Exemption 3 assertions sufficient.[3]

Plaintiff's additional arguments may be quickly rejected. With respect to plaintiff's argument that the Lutz and the Lambert Declarations are insufficient because neither addresses the three denied-in-full documents (MORI 1512155, 1512156, 1512157), all of which contain Exemption 3 redactions, plaintiff is simply wrong. Pl's Opp. 21. In fact, the Lutz declaration does address those documents generally, with its explanations of the categories of information withheld from the documents containing material withheld under Exemption 3. See Lutz Decl. n. 4, 6. The Vaughn index then provides specific details of the information withheld and links that information to the relevant categories under Exemption 3. See, e.g., MORI 1512155 ("The information withheld pursuant to FOIA exemption (b)(3) would reveal CIA sources, methods, organization, and/or functions, including but not limited to, information related to the CIA's internal policies and regulations. Information withheld pursuant to FOIA (b)(3) includes: internal CIA regulation numbers, CIA employee names, CIA employee titles, CIA employee telephone numbers, CIA employee email addresses, and internal CIA organizational information.").

Plaintiff's argument that CIA cannot withhold internal regulation numbers under the NSA or the CIA Act is also without merit. Internal regulation numbers are contained within the "CIA employees' names and personal identifiers, . . . titles, file numbers, and internal organizational data"

---

[3] Plaintiff cites to Hayden v. National Security Agency, 608 F.2d 1381, 1390 (D.C. Cir. 1979), which in turn cited to Founding Church of Scientology, which rejected a "conclusory affidavit" that contained "no more specifics than that the requested material was obtained through 'lawful signals intelligence activities,' and that disclosure would 'reveal certain functions and activities of the NSA . . . .'" As set forth above, the specific language included in the Lutz and Lambert Declarations and the Vaughn index go far beyond the language rejected in Founding Church of Scientology.

that are protected from disclosure by the CIA Act.  See Lutz Decl. ¶ 78.  Such information was

likewise held to be protected in Morley v. CIA, 453 F.Supp.2d 137, 150 (D.D.C. 2006), rev'd on

other grounds, 508 F.3d 1108 (D.C. Cir. 2007) ("Ms. Dorn also states that defendant withheld CIA

employees' names and personal identifiers (such as signatures, employee numbers, and initials),

titles, file numbers, and internal organizational data.  (Dorn Decl. ¶ 67.)  Such information is

specifically protected from disclosure by Section 6 of the CIA Act of 1949, which provides that no

disclosure of 'the organization, functions, names, official titles, salaries, or numbers of personnel

employed by the Agency' is permitted. 50 U.S.C. § 403(g).  Thus, such information is protected

from disclosure by FOIA Exemption (b)(3).").

     Moreover, simply because the CIA may have released certain internal regulation numbers

in prior, unrelated litigation before this Court, it does not mean that the CIA cannot now withhold

different internal regulation numbers.  See Assassination Archives and Research Center v. CIA, 334

F.3d 55, 61 (D.C. Cir. 2003) (rejecting plaintiff's contention that Agency waived FOIA Exemption

3 where plaintiff had not shown that exact information had already been disclosed).  Here, plaintiff

has not even attempted to show that the internal regulation numbers now being withheld have

previously been disclosed.  The CIA's Exemption 3 assertions should be upheld.

### C.    The CIA's Exemption 1 Withholdings Should be Upheld.

     As set forth in the Lutz Declaration and the Vaughn index, the CIA withheld information

under Exemption 1 in only one document, document number 1512157, a legal memorandum from

the PRB's Associate Legal Advisor to the PRB.[4]  The CIA was fully justified in withholding this

---

[4] Because only one document was withheld on national security grounds, it is not at all
clear why plaintiff complains about "The Excessiveness of Secrecy" in its Opposition.  See Pl's
Opp. 3-5.  In any case, plaintiff's discussion of the Report of the Commission on Protecting and

properly classified national security information, and its assertion of Exemption 1 should be upheld.

As set forth in the CIA's opening brief, summary judgment for the government in an Exemption 1 FOIA action should be granted on the basis of agency affidavits if they simply contain "reasonable specificity" rather than conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith. Halperin v. CIA, 629 F.2d 144, 148 (D.C. Cir. 1980). The test for the Court is "whether the President has determined by Executive Order that particular documents are to be kept secret." EPA v. Mink, 410 U.S. 73, 82 (1973). The FOIA is not meant to "subject executive security classifications to judicial review at the insistence of anyone who might seek to question them." Id. As set forth in defendant's opening brief, the CIA followed the procedures set forth in Executive Order 12,958, as amended, in classifying the documents withheld under exemption (b)(1), and its judgments in this area are entitled to deference. Def's Mem. 14-15; Students Against Genocide v. Dep't of State, 257 F.3d 828, 837 (D.C. Cir. 2001); Halperin, 629 F.2d at 148 (D.C. Cir. 1980).

Plaintiff contends that the Lutz Declaration and Vaughn index are inadequate because they lack the specificity required to enable the Court to evaluate the appropriateness of the CIA's assertion of Exemption 1. Pl's Opp. 15-16. As is apparent from the actual language of the Lutz Declaration and the Vaughn index themselves, however, this contention is without merit. The Lutz Declaration identifies the categories of classified information withheld from MORI 1512157, both

Reducing Government Secrecy is irrelevant here. None of the examples of "unwarranted excessive secrecy exercised by the past several Administrations" clearly relate to the CIA. More generally, the Commission's Report is certainly not evidence of anything in this case, in which the CIA has properly invoked FOIA Exemptions 1, 2, 3, and 5. Moreover, to the extent that Mr. Zaid seeks to testify in his declaration as to what his experience has been in litigating against the CIA, his testimony is irrelevant to disposition of the CIA's summary judgment motion in this case.

-10-

generally, in terms of categories of the Executive Order (see, e.g., Lambert Decl. ¶¶ 50-56), and

specifically, in terms of the information that would be disclosed:

> This document contains SECRET information regarding the CIA's intelligence activities, sources, and methods. For example, this document discusses the PRB's decision to prohibit publication of details surrounding specific CIA clandestine activities. The document also identifies specific CIA classified sources and methods and discusses how the PRB might handle a request to disclose this information. The release of the withheld information contained in this document could provide foreign intelligence services with confirmation of various CIA sources and methods. Similarly, the release of the withheld information also would provide foreign intelligence services with insights into the CIA's past activities and clandestine operations. Finally, the release of the withheld information in this document could jeopardize the CIA's liaison relationships and U.S. foreign policy by revealing CIA activities in certain foreign countries.

Lutz Decl. ¶ 58. The Lutz Declaration thus identifies the categories of information classified, the

harm to national security that would result from the disclosure of information from each category,

and explains the general information that is classified within MORI 1512157. This is all that is

required under Exemption 1. See Morley, 508 F.3d at 1124 ("[T]he text of Exemption 1 itself

suggests that little proof or explanation is required beyond a plausible assertion that information is

properly classified. [Plaintiff's] argument for declassification does not overcome the *substantial*

*weight* the court must accord to an agency's affidavit concerning the details of the classified status

of the disputed record.") (emphasis in original) (internal citations omitted).

Plaintiff contends, without citation, that the CIA must provide more specific descriptions of

the information withheld under Exemption 1; for example, the Declaration and/or Vaughn index

must specify whether the classified information in the document actually identifies "specific

clandestine activities" or actually identifies "specific CIA classified sources" and/or "specific CIA

classified . . . methods."[5]  Pl's Opp. 15.  First, plaintiff is mistaken – as the Lutz Declaration makes

clear, the document "identifies specific CIA classified sources and methods" and "specific CIA

clandestine activities."  Lutz Decl. ¶ 58.  Second, it is not clear why it is important whether the

document mentions specific intelligence activities, sources, and methods, or talks about them only

generally.  As set forth in the Lutz Declaration, release of the information could 1) provide foreign

intelligence services with confirmation of various CIA sources and methods; 2) provide foreign

intelligence services with insights into the CIA's past activities and clandestine operations; and 3)

jeopardize the CIA's liaison relationships and U.S. foreign policy by revealing CIA activities in

certain foreign countries.  Lutz Decl. ¶ 58.  All of those harms could occur whether the document

included specific intelligence activities, sources, and methods, or just spoke of them generally, for

example, in terms of the types of intelligence sources and methods and/or clandestine activities in

which the CIA might engage.[6]  Nor is it necessary for the CIA to explain why identification of

---

[5] The cases to which plaintiff cites are not to the contrary.  Pl's Opp. 16 n. 6.  In Coldiron
v. DOJ, 310 F. Supp. 2d 44 (D.D.C. 2004), for example, the court ultimately found that, despite
the repetitive nature of the defendant FBI's declaration in that case, the Vaughn index was
sufficient.  The Coldiron court emphasized its "somewhat narrow" scope of review, and stated
that "[o]nce an agency demonstrates that it has tailored its response to the documents requested
by a FOIA plaintiff, the court should not second-guess an agency's 'facially reasonable
concerns' regarding the harm disclosure may cause to national security."  Id. at 54.  In that case,
where the FBI had "provide[d] several pieces of information that make its declaration, and
predictions of likely harm to national security," that seemed tailored to the documents at issue,
the court upheld the FBI's exemption 1 invocation.  Likewise, the description given of the
impact of disclosure of confidential sources in Schrecker v. DOJ, 254 F.3d 162, 166 (D.C. Cir.
2001) that was held sufficient by that court is less detailed than the CIA's description of harm
from disclosure of intelligence sources.  Compare Schrecker, 254 F.3d at 166 ("the unauthorized
disclosure of that source would clearly and demonstrably damage the national security interests
of the United States by harming the FBI's ability to continuously recruit sources for current and
future use") with Lutz Decl. ¶¶ 51-58.

[6] Plaintiff contends that neither the Lutz declaration, Vaughn index, or the CIA's opening
brief sufficiently addresses the issue of "specific CIA clandestine activities."  Pl's Opp. 15.  But

specific clandestine activities would appear in this document, Pl's Opp. 16; it is enough that the CIA states that they do.

Finally, the plaintiff attempts to argue that because the CIA has made public internal regulations with respect to FOIA processing, the PRB's procedures for declassifying and disclosing information must be made public as well. Pl's Opp. 17-18. This argument makes little sense. First, the CIA's FOIA regulations say little about declassifying and disclosing information under FOIA:

> In processing a request, the Agency shall decline to confirm or deny the existence or nonexistence of any responsive records whenever the fact of their existence or nonexistence is itself classified under Executive Order 12958 or revealing of intelligence sources and methods protected pursuant to section 103(c)(5) of the National Security Act of 1947. In such circumstances, the Agency, in the form of a final written response, shall so inform the requester and advise of his or her right to an administrative appeal.

32 C.F.R. § 1900.21(c). The regulations provide no further detail in explaining how to determine whether disclosure of information under FOIA is appropriate. Second, FOIA itself mandates publication in the Federal Register of agency regulations with respect to its implementation. See 5 U.S.C. § 552(a)(1). There is no similar requirement for PRB procedures, which can contain much more sensitive information, as, in fact, this document does.

### D.    The CIA's Exemption 2 Withholdings Should be Upheld.

As set forth in the CIA's opening brief, Exemption 2 protects from disclosure "matters that are . . . related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). Information falls within this category if it is "used for predominantly internal purposes." Schiller v. NLRB, 964 F.2d 1205, 1207 (D.C. Cir. 1992) (quoting Crooker v. ATF, 670 F.2d 1051,

---

clandestine activities are included within intelligence activities, and are discussed in the Lutz Declaration at paragraph 51.

1073 (D.C. Cir. 1981) (en banc)). Plaintiff does not challenge the CIA's determination that its

Exemption 2 withholdings are "used for predominantly internal purposes"; rather, plaintiff focuses

its challenge on the second step of the test: whether "disclosure may risk circumvention of agency

regulation, . . . or the material relates to trivial administrative matters of no genuine public interest."

Morley, 508 F.3d at 1124. Because the CIA's withholdings meet both steps of this test, summary

judgment should be granted for the CIA.

### 1.    The CIA has Sufficiently Justified its "High 2" Withholdings

The CIA asserted the "high 2" exemption in four documents: MORI 1512164, 1531053,

1531068, and 1531069. These documents are different versions of the PRB reviewers' handbooks,

and were produced to the plaintiff in redacted form. Plaintiff contends that the CIA has failed to

apply consistent standards in making redactions, and has not shown that disclosure of the

information would risk circumvention of an agency regulation. Neither of these contentions has

merit.

Plaintiff contends that the CIA has failed to consistently apply Exemption 2 criteria to its

redactions, contending that certain parts of the Table of Contents have been redacted in MORI

1531053, and that "the CIA chose to disclose the very same identifications in the other three

versions of the handbook." Pl's Opp. 24. A review of the documents themselves, however, shows

that this is incorrect. While the CIA redacted items 3-8 and 10 of the Table of Contents in MORI

1531053, it redacted what are the same numbered items in MORI 1512164. MORI 1531069 has no

Table of Contents, and MORI 1531068's Table of Contents is obviously different, with 9 items and

5 figures listed, rather than the 11 items and 2 figures listed in MORI 1512164 and 1531053. In

addition, plaintiff contends that MORI 1531068 redacts a section on assigned dates by which

reviews must be completed (section 2.g. in that document), while MORI 1531053 does not (section 2.f. in that document). Again, however, a look at the documents themselves shows that the material redacted in MORI 1531068 is different from that disclosed in MORI 1531053 – most obviously, the sections are of completely different lengths, indicating that the substance of the sections must be different as well: section 2.g. of MORI 1531068 is only one paragraph long, while section 2.f. of MORI 1531053 is three paragraphs long. Plaintiff thus has no basis on which to argue that the CIA inconsistently redacted identical substantive content; there is no indication that the content was identical at all.

Plaintiff also contends that the CIA's affidavits do not explain how disclosure of the material withheld under the high 2 exemption "would render the prepublication review process operationally useless." Pl's Opp. 24. However, as the Lutz Declaration makes clear:

> The disclosure of the withheld information would significantly risk circumvention of the regulations from which the information came. The information withheld from these documents would provide a blueprint that one could use to circumvent the CIA's prepublication review process. Disclosing the withheld information in these documents would allow a would-be author to "game the system" and force the disclosure of classified information that could damage the national security. Stated simply, the disclosure of the withheld information in these documents would allow an author to write around the CIAs PRB regulation.

Lutz Decl. ¶ 72. This explanation is no less specific than those found adequate in the cases that plaintiff cites. See Pl's Opp. 24-25 (citing cases). Further, while plaintiff argues that the CIA has failed to identify how the "high 2" information could risk circumvention of the PRB regulation, as the Lutz Declaration makes clear, disclosure of the information withheld within the handbooks "would allow a would-be author to 'game the system' and force the disclosure of classified information that could damage the national security." For example, disclosure of the guidelines contained in the handbooks could allow a would-be author to tailor his or her writings to the PRB

requirements, allowing him or her to couch things in a way that could allow disclosure of information that could damage the national security while passing PRB review. Similarly, disclosure of the guidelines would disclose the PRB's internal procedures for resolving conflicts over whether the PRB should authorize certain information. Such information might allow a would-be author to manipulate the review process and, possibly, apply pressure on the PRB decision makers to rule in his or her favor. The Court CIA's "high 2" withholdings should be upheld.

### 2.     The CIA has Sufficiently Justified its "Low 2" Withholdings

Plaintiff contends that the CIA has insufficiently justified its "low 2" withholdings. The CIA's justifications, however, fully comport with the case law of this Circuit, and summary judgment should be granted to the CIA.

Plaintiff claims that the CIA has "fail[ed] to provide an adequate context in which an assessment can be made of the appropriateness of the 'low 2' withholdings."[7] Pl's Opp. 27. These claims, however, are belied by the Lutz Declaration and the CIA's Vaughn index itself, which describe the exact information withheld. See, e.g., Lutz Decl. ¶ 64 (describing information over which CIA asserted the "low 2" exemption); MORI 1512161 (challenged by plaintiff, stating that information withheld pursuant to the "low 2" exemption includes: "a) internal CIA regulation numbers; b) CIA employees' names and signatures; c) the internal name of a CIA Web site; d) internal CIA addresses; e) internal CIA regulation, publication and form names and numbers; f) a CIA employee's telephone number; g) CIA organizational information, including component

---

[7] Of the eighteen "low 2" documents, plaintiff has specifically challenged only 2: MORI 1512161 (consisting of two internal memoranda recommending approval of a draft PRB regulation), and MORI 1512162 (reviewing PRB standards for nonofficial publications). See Pl's Opp. 28. Both documents were partially released to plaintiff.

abbreviations; h) external and internal mailing addresses, fax numbers, telephone numbers, and email addresses for the PRB; i) internal procedures used by the PRB to resolve intra-PRB disagreements; j) the CIA's internal policy regarding which CIA publications are exempt from the PRB regulation; and k) the CIA's internal management and ethics review process."). These descriptions are far more detailed than the ones, for example, set forth in the <u>Morley</u> case cited by plaintiff, in which the CIA referred only to "CIA internal organizational data" and "internal Agency regulations and practices." <u>Morley</u>, 508 F.3d at 1125. Here, by contrast, the CIA has provided a detailed list of the information withheld under the low 2 exemption for each document affected.

The case law of this circuit requires nothing more. In <u>Schiller</u>, 964 F.2d at 1208, for example, the court upheld the "low 2" exemption where the <u>Vaughn</u> index and affidavit contained no more information than the CIA provided in this case:

> The documents, according to the <u>Vaughn</u> index and affidavit, contain internal time deadlines and procedures, recordkeeping directions, instructions on which agency officials to contact for assistance, and guidelines on when clearance from Washington is needed for certain decisions – housekeeping matters appropriately withheld under exemption 2.

Nor are <u>Fitzgibbon v. U.S. Secret Service</u>, 747 F. Supp. 51, 56-57 (D.D.C. 1990), or <u>Schwaner v. Dep't of the Air Force</u>, 898 F.2d 793, 798 (D.C. Cir. 1990) applicable here. Both of those cases turned on the lack of relationship between the information withheld and "agency rules and practices" – because the information withheld did not relate to an agency rule or practice, it was not found to be within the scope of the low 2 exemption. Here, the two examples cited by plaintiff relate to an internal agency regulation (MORI 1512161) – the very definition of agency rules and practices – and agency rules and practices with respect to PRB standards (MORI 1512162). Consequently, neither <u>Fitzgibbon</u> nor <u>Schwaner</u> applies. Nor has plaintiff cited to any cases in which a court has

rejected an agency's assertion of a low 2 exemption for information like the internal housekeeping matters withheld by the CIA here. The CIA's low 2 withholdings should be upheld.

**E.     The CIA's Exemption 5 Withholdings Should Be Upheld.**

Of the eight documents over which the CIA asserted Exemption 5, the plaintiff challenges only four: the CIA's assertion of deliberative process privilege over MORI 1531057 and 1531058, and the CIA's assertion of attorney-client and work-product privilege over MORI 1512156 and 1512157. The CIA's assertions of Exemption 5 in all of these documents are valid, and should be upheld.

**1.     Deliberative Process Privilege**

Plaintiff challenges the CIA's redactions for deliberative process privilege in MORI 1531057 and 1531058, contending that these documents fail to identify any "decision" or "policy" other than "future decision-making processes," and do not identify any role that the documents would play in the course of those processes. Pl's Opp. 33. The descriptions of the information redacted and the context of the redactions in the documents, however, make clear both what the policies are and what role the documents play in the course of those processes. The Lutz Declaration and the Vaughn index make clear that the deliberative process privilege was asserted over recommendations about how to handle future decision-making processes within the PRB, see Lutz Decl. ¶ 95, MORI 1531057 and 1531058, which, where the recommendations aid in the development of the PRB policies and processes, certainly qualifies as identifying "deliberative or policy-making processes." See Pl's Opp. 31. Moreover, the context of the documents themselves – PowerPoint presentations on the PRB – shows that the documents are included in briefings exploring the policies of the PRB, educating individuals on the process, including highlighting current recommendations and

uncertainties. Specifically, the CIA redacted recommendations, analysis, and discussions regarding who should serve on the PRB and how the CIA could balance a would-be-author's First Amendment rights with the PRB's thirty-day review timeline. Lutz Decl. ¶ 95. Accordingly, the CIA's deliberative process privilege assertions should be upheld.

### 2. Work Product Privilege

Plaintiff challenges the CIA's redactions for work product privilege in MORI 1512156 and 1512157, contending that they lack the specificity necessary to evaluate the reasonableness of the attorney-drafter's belief that litigation could reasonably be anticipated.[8] As plaintiff notes, in order for the work product privilege to apply, litigation does not have to be "actual or imminent," but the party "must at least have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable in the circumstances." Pl's Opp. 34. As set forth below, the CIA's assertion of the work product privilege meets those requirements.

As the Vaughn index and Lutz Declaration indicate, the subject matters discussed in the memoranda, and over which the attorney drafting the memoranda reasonably could anticipate litigation are: 1) the CIA's compliance with the PRB's prescribed timeline (MORI 1512156) and 2) how the CIA reviews factual material in fictional manuscripts (MORI 1512157). While the plaintiff contends that there is no way by which to evaluate the reasonableness of the attorney's determination that litigation over those issues was reasonably foreseeable, a sample of the cases brought on prepublication review grounds shows this contention is meritless.

---

[8] While plaintiff contends that it challenges both the attorney-client and work-product privilege assertions in these two documents, "reasonable anticipation of litigation" applies only to the work-product privilege. And, to the extent that this Court were to find that the work product privilege does not apply, the unchallenged attorney-client privilege would still apply to exempt these documents from disclosure.

Counsel for the plaintiff has himself litigated the PRB's prescribed timeline at least twice, after the date of the memorandum in question. See Stillman v. CIA, 517 F. Supp. 2d 32, 36 (D.D.C. 2007) (dismissing as moot plaintiff's Administrative Procedure Act ("APA") claim, which was "based on defendants' unreasonable delay in 'issuing a final and timely decision regarding the proper classification level of [plaintiff's] manuscript."); March 5, 2007 Complaint in Boening v. CIA, 07-cv-430 (D.D.C.) (Docket #1) ¶¶ 32-34 (asserting APA claim, alleging that "[t]he CIA is required to respond to prepublication reviewed within 30 days" but "routinely fails to meet the required deadline and often, as in this case, neglects to seek or notify the submitter of any need for an extension of time.").

Similarly, with respect to the CIA's review of factual matter in fictional manuscripts, there have been a number of reported cases challenging the CIA's prepublication review process, both before and after the 1987 date of the memorandum. See, e.g., McGehee v. Casey, 718 F.2d 1137 (D.C. Cir. 1983); United States v. Snepp, 897 F.2d 138 (4th Cir. 1990); Stillman v. CIA, 517 F. Supp. 2d 32 (D.D.C. 2007); see also Zaid Decl. ¶ 15 (identifying five prepublication review cases plaintiff's counsel has litigated or is currently litigating against the CIA). Given this fact, it is certainly reasonable for a CIA attorney discussing the subject of prepublication review of factual material in fictional manuscripts to anticipate litigation over that issue. Plaintiff's challenge to the CIA's documents on Exemption 5 work product privilege grounds fails as a result.

## III.    THE CIA HAS DEMONSTRATED THAT ALL SEGREGABLE PORTIONS OF THE RESPONSIVE RECORDS HAVE BEEN RELEASED.

As set forth in the Lutz Declaration, the CIA undertook a page-by-page, line-by-line review of the documents, individually and as a whole, in order to determine whether meaningful, reasonably segregable, non-exempt portions of documents could be released. Lutz Decl., ¶¶ 8, 24, 29, 64, 98-

99. The CIA then released any information that was segregable and not otherwise exempt. <u>Id.</u> ¶ 98. For documents that were denied in full, the CIA determined that no meaningful, non-exempt portion of the documents reasonably could be segregated for release. <u>Id.</u> ¶ 99.

Plaintiff focuses on only one sentence of the Lutz Declaration, that the agency "determined that any non-exempt information is so inextricably intertwined with the exempt information that there are no meaningful, reasonably segregable, non-exempt portions," Lutz Decl. ¶¶ 99, Pl's Opp. 35, and entirely overlooks the detailed description of the processing of the documents and the review for segregability described elsewhere in that Declaration. Contrary to the cases cited by plaintiff, in which more limited boilerplate statements of the agency's release of segregable material were found to be inadequate, <u>see</u> Pl's Opp. 35-36, in this case, Ms. Lutz described the process by which segregability determinations were made, Lutz Decl., ¶¶ 8, 24, 29, 64, 98-99, and explained why further information could not be released. <u>Compare</u> <u>Davin v. DOJ</u>, 60 F.3d 1043, 1052 (3d Cir. 1995) (declaration failed to describe process by which segregability determinations were made); <u>Bay Area Lawyers Alliance for Nuclear Arms Control v. Dep't of State</u>, 818 F.Supp. 1291, 1300 (N.D. Cal. 1992) (rejecting as insufficient statement that "no segregation of non-exempt, meaningful information can be made for disclosure"). As a result, summary judgment should be granted to the CIA on its segregability determinations.[9]

## IV. DISCOVERY IS NOT WARRANTED.

Throughout its brief, plaintiff references its desire for discovery. Pl's Opp. 2, 10, 11, 13, 26, 28, 30, 36-39. Discovery is generally not appropriate in FOIA actions. <u>Wheeler v. CIA</u>, 271 F.

---

[9] Plaintiff states that it has no objection to the Court undertaking an <u>in camera</u> review of the unredacted records. While defendant believes it unnecessary, the defendant has no objection to <u>in camera</u>, <u>ex parte</u> review if it would be of assistance to the Court.

Supp. 2d 132, 139 (D.D.C. 2003) ("Discovery is generally unavailable in FOIA actions."); <u>Judicial Watch, Inc. v. Exp.-Imp. Bank</u>, 108 F. Supp. 2d 19, 25 (D.D.C. 2000) ("[D]iscovery in a FOIA action is generally inappropriate."); <u>Pub. Citizen Health Research Group v. FDA</u>, 997 F. Supp. 56, 72 (D.D.C. 1998) ("Discovery is to be sparingly granted in FOIA actions."), <u>aff'd in part, rev'd in part & remanded</u>, 185 F.3d 898 (D.C. Cir. 1999). "Discovery may be appropriate when the plaintiff can raise sufficient question as to the agency's good faith in processing or in its search." <u>Judicial Watch</u>, 108 F. Supp. 2d at 25. Moreover, in seeking to obtain discovery in a FOIA case, the plaintiff "generally 'must establish how the specific discovery requested would create a genuine issue of material fact.'" <u>Morley v. CIA</u>, 2006 WL 280645, *1 (D.D.C., Feb. 6, 2006). A court may deny a request for discovery by a requester "in the bare hope of falling upon something that might impugn the affidavits." <u>Founding Church of Scientology</u>, 610 F.2d at 836 n. 101.

Here, plaintiff has not raised any arguments that would overcome the presumption against discovery in a FOIA case. First, the plaintiff has not questioned the agency's good faith in either its processing or its search, merely stating that additional responsive documents may exist, and complaining that the agency's declaration and <u>Vaughn</u> index do not provide sufficient detail for the plaintiff or the Court to tell whether the exemptions were properly invoked. Second, plaintiff has not established how the discovery requested would create a genuine issue of material fact. Plaintiff contends only that "[g]iven the insufficiency of the CIA's affidavits and the subsequent inability by the CIA to demonstrate that it conducted an adequate and reasonable search, discovery is necessary and permitted." Pl's Opp. 37. This falls far short of the necessary showing. Nor does plaintiff detail how "a limited number of interrogatories and depositions" would be more than a "bare hope of falling upon something that might impugn the affidavits," <u>Founding Church of Scientology</u>, 610

-22-

F.2d at 836 n. 101, particularly in light of the fact that plaintiff has as yet supplied only speculation that additional documents exist.[10]  Here, where there is no evidence of agency bad faith, and the plaintiff has offered nothing beyond speculation that additional records may exist, discovery is not warranted on the adequacy of the search.

Nor is plaintiff entitled to discovery with respect to the CIA's exemption claims.  While the CIA believes that the affidavit and Vaughn index, taken together, are sufficient for a grant of summary judgment, if the Court disagrees, the proper remedy for this would not be discovery, but a remand to the agency for further description, or in camera, ex parte review by the Court.  See supra n. 2.  In addition, plaintiff has offered no description of the discovery it seeks with respect to the appropriateness of its Exemption 1, 2, 3, and 5 withholdings except to state that "limited discovery will also be necessary."  Pl's Opp. 39.  This argument falls far short of the requirement that plaintiff "establish how the specific discovery requested would create a genuine issue of material fact." Morley v. CIA, 2006 WL 280645 at *1.

In fact, plaintiff's sole argument with respect to discovery on the CIA's justifications for invoking Exemptions 1, 2, 3, and 5 is that "[t]he Vaughn Index in particular fails to adequately

---

[10] In its brief, plaintiff has confused discovery with the possibility of a remand to the agency for a more detailed declaration on the adequacy of the search/justification for the withholdings.  See Pl's Mem. 36.  To this end, neither Oglesby, 920 F.2d at 71; Perry v. Block, 684 F.2d 121, 124-25 (D.C. Cir. 1982); nor Western Ctr. for Journalism v. IRS, 116 F. Supp. 2d 1, 5-6 (D.D.C. 2000) allowed the plaintiff discovery to determine whether the agency's search was adequate; rather, Oglesby remanded to the agency for further information about the search, Perry required an additional two searches, and Western Ctr. for Journalism awarded summary judgment after the agency, of its own accord, conducted an additional search.  Only in Weisberg v. DOJ, 705 F.2d 1344 (D.C. Cir. 1983), was discovery permitted with respect to the adequacy of the agency's search, and in that case the court did not perform any analysis of why discovery should or should not be had under FOIA.  See Weisberg v. DOJ, 543 F.2d 308, 310 (D.C. Cir. 1976).

'describe the injury to national security that would follow from the disclosure' of the regulations." Pl's Opp. 39. This argument, however, applies to only one document, MORI 1512157, the sole document over which the CIA asserted Exemption 1, and the only one for which an injury to national security need be described. Moreover, additional information about the injury to national security that would follow from disclosure of the regulations would risk disclosure of the very information that has been withheld under FOIA Exemption 1, and harm to national security as a result. <u>See</u>, <u>e.g.</u>, <u>Military Audit Project v. Casey</u>, 656 F.2d 724, 751 (D.C. Cir. 1981) ("In national security cases, some sacrifice to the ideals of the full adversary process are inevitable. It is natural that the appellants should seek discovery in the hope that they might turn up details of the government's position that might be turned to the appellant's advantage. In national security cases, however, more detailed information itself may compromise intelligence methods and sources."); <u>accord</u> <u>Laborers' Internat'l Union of N. Am.</u>, 578 F. Supp. 52, 55-56 (D.D.C. 1983) <u>aff'd</u>, 772 F.2d 919 (D.C. Cir. 1984) (memorandum) (agency would not be compelled to respond to discovery requests where response would be tantamount to disclosure of information withheld pursuant to FOIA exemption). The same dangers would hold were plaintiff permitted to take discovery into the propriety of the CIA's withholding claims under Exemptions 2, 3, and 5 – plaintiff has in no way demonstrated either how discovery would create a genuine issue of material fact, or how discovery could be undertaken in a way that would avoid disclosure of the very information that has been withheld under a claim of exemption. As a result, plaintiff is not entitled to discovery.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in the CIA's opening brief, summary judgment should be granted to the defendant.

-24-

Dated: August 11, 2008

Respectfully submitted,

GREGORY G. KATSAS
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO
Assistant Branch Director


 /s/ Vesper Mei
VESPER MEI
(D.C. Bar No. 455778)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
Post Office Box 883
Washington, D.C. 20044
Telephone:  (202) 514-4686
Facsimile:  (202) 616-8470 (fax)
E-mail: vesper.mei@usdoj.gov
Counsel for Defendant