**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| THE JAMES MADISON PROJECT, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-1382 (RMU) |
| | : | | |
| v. | : | Document No.: | 9 |
| | : | | |
| CENTRAL INTELLIGENCE AGENCY, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING IN PART AND DENYING IN PART THE
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This matter comes before the court on the defendant's motion for summary judgment.

The plaintiff – a nonprofit organization created to educate the public on issues relating to

intelligence gathering, secrecy policies, national security and government wrongdoing –

submitted a request to the defendant under the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552, seeking copies of guidelines, regulations or policy memoranda pertaining to the operation of

the Central Intelligence Agency's ("CIA") Publications Review Board ("PRB").  The PRB is an

"internal administrative component charged with the responsibility of reviewing the written

documents to ensure that classified information is not inadvertently disclosed while also seeking

to avoid infringing upon the First Amendment rights of the writer."  Pl.'s Opp'n at 1.  The

defendant produced documents responsive to the plaintiff's request, but also withheld some

responsive materials, claiming four of the exemptions enumerated in FOIA.  The defendant has

filed a motion for summary judgment, asserting that it has produced all of the information that

FOIA requires.  The plaintiff opposes the defendant's motion.  Based on the court's

determination that the defendant's search was reasonable, that it produced some, but not all, non-exempt documents and that it properly segregated exempt from non-exempt documents, the court grants in part and denies in part the defendant's motion for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The plaintiff submitted a FOIA request to the defendant in June 2007 seeking "copies of all internal Central Intelligence Agency ('CIA') documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the [PRB]."  Def.'s Mot. at 2.[1] After the defendant notified the plaintiff that it would be unable to respond to the FOIA request within the statutory time limit because of a backlog of FOIA cases, the plaintiff filed the instant suit in July 2007.  *See* Compl.  The parties jointly agreed that the defendant would process and release any non-exempt materials responsive to the plaintiff's request on or before January 11, 2008.  Def.'s Mot. at 2.

On that date, the defendant produced nine documents that it had partially redacted based on four of the exemptions established in FOIA: 5 U.S.C. § 552(b)(1) ("Exemption 1"), 5 U.S.C. § 552(b)(2) ("Exemption 2"), 5 U.S.C. § 552(b)(3) ("Exemption 3") and 5 U.S.C. § 552(b)(5) ("Exemption 5").  *Id.* at 2-3.  The defendant also withheld three documents in their entirety based on Exemptions 1, 3 and 5.  *Id.* at 3.  The plaintiff then identified seven perceived deficiencies in the defendant's production of responsive documents, and in May 2008, "in order to avoid protracted litigation in this case," the defendant produced an additional eleven documents, which

---

[1] The plaintiff's opposition to the defendant's motion for summary judgment incorporates by reference the defendant's account of the factual and procedural background of this case.  Pl.'s Opp'n at 5.

it partially redacted based on Exemptions 2, 3 and 5. *Id.* at 3-4. In addition, "to provide Plaintiff with as complete a response as possible," the defendant searched for versions of the defendant's PRB regulation that had since been rescinded. *Id.* at 4-5. The defendant had originally produced only the current version of the regulation. *Id.* at 4. The renewed search yielded twelve rescinded versions of the regulation, six of which the defendant produced in their entirety and six of which the defendant produced in redacted form. *Id.* at 5.

The defendant has moved for summary judgment, asserting that it conducted a reasonable search for responsive records, *id.* at 7-11; it properly invoked Exemptions 1, 2, 3 and 5, *id.* at 11-31; and it reasonably segregated exempt from non-exempt documents, *id.* at 31. The plaintiff opposes the defendant's motion, claiming that the search was inadequate, Pl.'s Opp'n at 6-11; the defendant failed to justify its invocation of the exemptions, *id.* at 11-34; and the defendant did not adequately segregate exempt information from non-exempt information, *id.* at 35-36. Alternatively, the plaintiff requests that the court allow it to conduct discovery to ascertain the reasonableness of the defendant's search for responsive records and the appropriateness of the defendant's withholdings, *id.* at 36-39, a request the defendant opposes, Def.'s Reply at 21-24. The court turns now to the parties' arguments.

## III.  ANALYSIS

### A.  Legal Standard for Summary Judgment in FOIA Cases

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). In deciding whether there is a genuine issue of material fact, the court is to view the record in the light most favorable to the party opposing the motion, giving the non-movant the benefit of all favorable inferences that can reasonably be drawn from the record and the benefit of any doubt as to the existence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

FOIA affords the public access to virtually any federal government record that FOIA itself does not specifically exempt from disclosure. 5 U.S.C. § 552; *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). FOIA confers jurisdiction on the federal district courts to order the release of improperly withheld or redacted information. 5 U.S.C. § 552(a)(4)(B). In a judicial review of an agency's response to a FOIA request, the defendant agency has the burden of justifying nondisclosure, and the court must ascertain whether the agency has sustained its burden of demonstrating that the documents requested are exempt from disclosure under FOIA and that the agency has adequately segregated exempt from non-exempt materials. 5 U.S.C. § 552(a)(4)(B); *Al-Fayed v. CIA*, 254 F.3d 300, 305 (D.C. Cir. 2001); *Summers v. Dep't of Justice*, 140 F.3d 1077, 1080 (D.C. Cir. 1998); *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). An agency may meet its burden by providing the requester with a *Vaughn* index, adequately describing each withheld document and explaining the reason for the

4

withholding.  *Summers*, 140 F.3d at 1080; *King v. Dep't of Justice*, 830 F.2d 210, 224 (D.C. Cir.

1987); *Vaughn*, 484 F.2d 820 (fashioning what is now commonly referred to as a "*Vaughn*

index").

The court may grant summary judgment to an agency on the basis of its affidavits if they:

> [(a)] describe the documents and the justifications for nondisclosure with reasonably
> specific detail, [(b)] demonstrate that the information withheld logically falls within
> the claimed exemption, and [(c)] are not controverted by either contrary evidence in
> the record nor by evidence of agency bad faith.

*Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

## B.  The Court Grants in Part and Denies in Part the
## Defendant's Motion for Summary Judgment

### 1.  Adequacy of the Defendant's Search

#### a.  Legal Standard for FOIA Adequacy of Agency Search

"A requester dissatisfied with the agency's response that no records have been found may

challenge the adequacy of the agency's search by filing a lawsuit in the district court after

exhausting any administrative remedies."  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321,

326 (D.C. Cir. 1999).  To prevail on summary judgment, "the agency must demonstrate beyond

material doubt that its search was reasonably calculated to uncover all relevant documents."

*Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995)

(internal quotations and citations omitted).  An agency must search for documents in good faith,

using methods that are reasonably expected to produce the requested information.

*Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby v. U.S. Dep't of Army* ("*Oglesby I*"), 920 F.2d

57, 68 (D.C. Cir. 1990)).  The principal issue is not whether the agency's search uncovered

responsive documents, but whether the search was reasonable.  *Oglesby I*, 920 F.2d at 67 n.13

(citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C. Cir. 1986)); *Moore v. Aspin*, 916 F. Supp. 32, 35 (D.D.C. 1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Servs., Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document if "the agency is no longer in possession of the document[] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201.

Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby I*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

### b. The Defendant's Search Was Reasonable

The court may rely on the declarations of Martha M. Lutz, Information Review Officer for the Director of Central Intelligence Area of the CIA ("the Lutz declaration"), and Joseph W. Lambert, Director of Information Management Services within the Office of the Chief Information Officer of the CIA ("the Lambert declaration"), as well as the *Vaughn* index to determine whether the defendant's searches for documents responsive to the plaintiff's request were reasonable. *Founding Church of Scientology v. Nat'l Sec. Agency*, 610 F.2d 824, 836 (D.C.

6

Cir. 1979).  The Lutz declaration explains the defendant's performance of the initial search as follows: upon receipt of the plaintiff's FOIA request, the defendant determined that seven divisions of the CIA were most likely to possess records responsive to the plaintiff's request.[2] Def.'s Mot., Ex. 1 ("Lutz Decl.") ¶ 28.  Therefore, the defendant ordered those divisions to search their records systems for the current version of the PRB regulation, as well as for "copies of all internal [CIA] documents constituting guidelines, regulations or policy memoranda pertaining to the creation and operation of the [PRB]."[3]  *Id.*  Although the initial search yielded twelve responsive documents, the plaintiff was dissatisfied with the search and wrote the defendant a letter identifying several perceived deficiencies in the search.  *Id.* ¶ 30.  In response, the defendant conducted an additional search for PRB-related items.  *Id.* ¶¶ 31-32.  The defendant also searched for earlier versions of PRB regulations that the defendant had since rescinded.  *Id.* ¶ 18.  These two additional searches turned up documents that the initial search had not.  *Id.*

The defendant asserts that its searches for records responsive to the plaintiff's request were reasonable.  *Id.* at 7-11.  Indeed, it claims it "went far beyond what was necessary to fulfill its [search] obligations" by conducting the two additional searches after the plaintiff identified the perceived deficiencies in the defendant's initial search.  *Id.* at 8.  In the defendant's view, the fact that it undertook the additional searches even though it was not required to "weighs even more

---

[2]     These seven divisions were the Office of General Counsel, the Office of Public Affairs, the CIA Director's Action Center, the Office of the Inspector General, the PRB, the Historical Regulations Repository and the Information Management Services.  Lutz Decl. ¶ 28.

[3]     The Lutz declaration specifies that the defendant used the following search terms: "Publications Review Board; b) Publications Review; c) PRB OR Publications Review Board AND Policy AND Operations AND creation AND guidelines AND regulations; d) Publication Review Board AND PRB; e) PRB; f) Publication; and (g) the CIA's internal regulation number for the PRB regulation."  *Id.* ¶ 29.

heavily in favor of the adequacy of the search."  Def.'s Reply at 2.

The plaintiff believes there are still deficiencies in the defendant's search for responsive records, notwithstanding the additional searches that the defendant conducted in response to the plaintiff's concerns.  Pl.'s Opp'n at 6-11.  Specifically, the plaintiff points out that the defendant restricted its "follow-up" search to the PRB, only one of the seven divisions whose records the defendant searched originally.  *Id.* at 9.  The defendant responds that because the plaintiff focused on the PRB when complaining that the initial search was inadequate, "the PRB was the logical place in which to undertake any additional search" for responsive documents.  Def.'s Reply at 3.  The plaintiff also complains that the defendant should have sought assistance from two former Chairmen of the PRB in order to locate records responsive to the plaintiff's request.  Pl.'s Opp'n at 9.  But the defendant counters that given how broad the initial search was, it did not believe that seeking input from the PRB Chairmen would yield any documents that the defendant's search did not.  Def.'s Reply at 3.

The plaintiff also identifies what it deems a positive indication of overlooked materials: the plaintiff believes that the defendant's search should have produced records concerning two former CIA officers who prompted "significant changes within the . . . PRB system" by writing books about their experience working for the CIA.  Pl.'s Opp'n at 9.  The defendant responds by explaining that a search for the two former officers' names would have been vastly overbroad because it would have yielded many results that had nothing to do with the plaintiff's request.  Def.'s Reply at 3.  Finally, the plaintiff complains that the Lutz declaration and the *Vaughn* index do not create enough context to demonstrate that it conducted a reasonable search, Pl.'s Opp'n at 9, a contention the defendant disputes, Def.'s Reply at 4.

The court examines the searches as a whole to determine whether they were "reasonably calculated to uncover all relevant documents," *Nation Magazine*, 71 F.3d at 890, keeping in mind that the defendant is not required to search all of its records or conduct a perfect search, *SafeCard Servs.*, 926 F.2d at 1201.  As the Lutz declaration explains, the defendant identified which divisions of the CIA were most likely to possess records responsive to the plaintiff's request, and created a set of search terms that it expected would produce responsive documents.  Lutz Decl. ¶ 28.  By arguing that the defendant should have searched through the other six divisions' records, that the defendant should have sought input from the former PRB Chairmen and that the defendant's search should have produced documents related to the two former CIA officers, the plaintiff misconstrues the defendant's burden.  The defendant need not show that it has "actually uncovered every document extant," *SafeCard Servs.*, 926 F.2d at 1201; it need only "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby I*, 920 F.2d at 68.  The court determines that the defendant's explanation of its rationale demonstrates that the searches were reasonably calculated to discover the requested documents.  *Compare Founding Church of Scientology*, 610 F.2d at 837 (rejecting the agency's "ill-elucidated assertions of thoroughness in its searches" because the agency failed to explain its filing system in relation to its searches for responsive documents and, instead, merely repeated its bald assertion that "almost always the [searches] were in vain") *with Oglesby v. U.S. Dep't of Army* ("*Oglesby II*"), 79 F.3d 1172, 1186 (D.C. Cir. 1996) (holding that the agency's affidavits, in which the agency explained that it searched one of three categories of its files after determining that "any documents responsive to [the plaintiff's] request which had been retained by [the agency] would be contained in" that

category of files, provided sufficient information to justify the court's determination that the defendant's searches were reasonably calculated to uncover all responsive documents). Accordingly, the court rejects the plaintiff's assertion that the defendant's search was not reasonable.

## 2.  Exemption 1

### a.  Legal Standard for Exemption 1 Withholding

Exemption 1 of FOIA exempts from mandatory disclosure matters that are (1) "specifically authorized under criteria established by an Executive order to be kept secret in the interests of national defense or foreign policy" and (2) "are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1).  Information "must be classified in accordance with the procedural criteria of the governing Executive Order as well as its substantive terms" in order to be properly withheld under Exemption 1.  *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 483 (D.C. Cir. 1980).  An agency that withholds information pursuant to this exemption bears the burden of justifying its decision.  *King*, 830 F.2d at 217 (citing 5 U.S.C. § 552(a)(4)(B)).  Under Executive Order 12,958, an agency may not authorize information to be kept secret unless, *inter alia*, the "disclosure of the information reasonably could be expected to result in damage to the national security."  Exec. Order No. 12,958, 60 Fed. Reg. 19,825 (Apr. 17, 1995).

Courts review challenges to an agency's decision to withhold information *de novo*.  *King*, 830 F.2d at 217; 5 U.S.C. § 552(a)(4)(B).  The court should conduct an *in camera* review if the agency's affidavits are insufficient to make the *de novo* determination.  *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1384-88 (D.C. Cir. 1979).  In reviewing an agency's invocation of an exemption, the court must consider that in enacting FOIA, Congress aimed to

strike a balance "between the right of the public to know what their government is up to and the often compelling interest that the government maintains in keeping certain information private, whether to protect particular individuals or the national interest as a whole." *ACLU v. U.S. Dep't of Justice*, 265 F. Supp. 2d 20, 27 (D.D.C. 2003) (citing *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152-53 (1989)).

The court is to "accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed record." *Military Audit Project*, 656 F.2d at 738 (deferring to the agency's assertions in holding that the information could cause serious damage to the national security); *see also Salisbury v. United States*, 690 F.2d 966, 970 (D.C. Cir. 1982). This is especially true "in a national security case, in which the agency possesses necessary expertise to assess the risk of disclosure," *Schlesinger v. CIA*, 591 F. Supp. 60, 67 (D.D.C. 1984), and judges "lack the expertise necessary to second-guess . . . agency opinions," *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980) (deferring to the agency's opinion and holding that certain CIA affidavits provided ample evidence to show potential harm under a limited *de novo* review). If the court finds that the agency's affidavits are insufficiently detailed, it should deny summary judgment in Exemption 1 cases on procedural grounds. *Campbell v. DOJ*, 164 F.3d 20, 31 (D.C. Cir. 1998) (remanding to the district court to allow the FBI to further "justify" its Exemption 1 claim because its declaration failed to "draw any connection between the documents at issue and the general standards that govern the national security exemption"), *remanded to* 193 F. Supp. 2d 29, 38 (D.D.C. 2001) (holding that a declaration was insufficient by merely concluding, without further elaboration, that "disclosure of [the] information could reasonably be expected to cause serious damage to national security"); *Oglesby II*, 79 F.3d at 1180 (rejecting certain *Vaughn*

indices as insufficient because agencies must itemize each document and adequately explain "the

connection between the information withheld and the exemption claimed"); *Oglesby I*, 920 F.2d at

66 n.12 (noting the detail required in public *Vaughn* affidavits, especially in regard to an agency's

obligation to segregate and release nonexempt material).

### b.  The Defendant Properly Invoked Exemption 1

The defendant invoked Exemption 1 to withhold a memorandum from the PRB's

Associate Legal Advisor to the PRB.  Lutz Decl. ¶ 42 n.11.  As the Lutz declaration explains, the

defendant withheld the memorandum based on the directive in Executive Order 12,958 that

"information shall be classified only when it includes information concerning 'intelligence

activities (including special activities), intelligence sources or methods, or cryptology.'"  *Id.* ¶ 50

(citing Exec. Order 12,958 § 1.4).  The defendant determined that disclosure of the memorandum

"could provide foreign intelligence services with confirmation of various CIA sources and

methods," "would provide foreign intelligence services with insights into the CIA's past activities

and clandestine operations" and "could jeopardize the CIA's liaison relationships and U.S. foreign

policy by revealing CIA activities in certain foreign countries."  Lutz Decl. ¶ 50.

The plaintiff argues that the defendant has failed to demonstrate that it withheld the

memorandum based on a facially reasonable concern for national security.  Pl.'s Opp'n at 13-19.

Observing that the defendant cannot meet its burden solely by invoking the phrase "national

security," the plaintiff contends that the descriptions of the information withheld "fail to provide

this court with sufficiently specific context with which to evaluate the appropriateness of" the

invocation of Exemption 1.  *Id.* at 15.  The plaintiff urges the court to require the defendant to

specify whether the memorandum contains information concerning intelligence activities,

intelligence sources or intelligence methods. *Id.* The plaintiff further argues that the court should require the defendant to demonstrate that the memorandum does, in fact, identify intelligence activities, sources or methods. *Id.* at 15-18.

While vague and conclusory affidavits are insufficient because they do not allow the court "to safeguard the public's right of access to government records, the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007) (citing *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 787 (D.C. Cir.1980)). By asserting that the defendant must elaborate on what "insights into the CIA's past activities and clandestine operations" disclosure of the memorandum would provide, Pl.'s Opp'n at 15-16, as well as articulate "the extent to which the [memorandum] identifies 'specific CIA classified sources,'" *id.* at 16, the plaintiff again misapprehends the defendant's burden, *see King*, 830 F.2d at 223-24. The defendant need only "describe with reasonable specificity the material withheld and demonstrate that it has specifically tailored its description of the harm likely to result from release to each particular redaction." *Id.* The defendant has met this burden here by specifying what portions of the memorandum would pose a risk to national security if disclosed and how disclosure would threaten national security. *See* Lutz Decl. ¶ 58 (explaining that the memorandum "discusses the PRB's decision to prohibit publication of details surrounding specific CIA clandestine activities[,] . . . identifies specific CIA classified sources and methods and discusses how the PRB might handle a request to disclose this information," and stating that some of the information in the memorandum is classified as SECRET, meaning that its unauthorized disclosure reasonably could be expected to result in serious damage to national

security).  Applying "substantial weight" to the defendant's determination that potential harm

merited withholding the memorandum, the court determines that the defendant properly invoked

Exemption 1.  *See Military Audit Project*, 656 F.2d at 738.

### 3.  Exemption 2

#### a.  Legal Standard for Exemption 2 Withholding

Exemption 2 protects materials that are "related solely to the internal personnel rules and

practices of an agency."  5 U.S.C. § 552(b)(2).  Information is exempt under Exemption 2 if it

meets two criteria.  First, the information must be "used for predominantly internal purposes."

*Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073 (D.C. Cir. 1981) (*en*

*banc*); *see also Nat'l Treasury Employees Union v. United States Customs Serv.*, 802 F.2d 525,

528 (D.C. Cir. 1985).  Second, the agency must show either that "disclosure may risk

circumvention of agency regulation," or that "the material relates to trivial administrative matters

of no genuine public interest."  *Schwaner v. Dep't of the Air Force*, 898 F.2d 793, 794 (D.C. Cir.

1990) (citations omitted).

Materials exempt under Exemption 2 fall into two categories: "high 2" and "low 2."

*Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1207 (D.C. Cir. 1992).  "Predominantly

internal documents the disclosure of which would risk circumvention of agency statutes are

protected by the so-called 'high 2' exemption."  *Id.*  "Low 2" exempt materials include such items

as "file numbers, initials, signature and mail routing stamps, references to interagency transfers,

and data processing references," *Scherer v. Kelley*, 584 F.2d 170, 175-76 (7th Cir. 1978), *cert.*

*denied sub nom. Scherer v. Webster*, 440 U.S. 964 (1979), and other "trivial administrative data

such as . . . data processing notations[] and other administrative markings," *Coleman v. FBI*, 13 F.

Supp. 2d 75, 78 (D.D.C. 1998) (citation omitted).

### b. The Defendant Properly Invoked Exemption 2

### i. "High 2" Exemption

The defendant asserts the "high 2" exemption to withhold information in four versions of

an internal handbook for CIA publication reviewers. Lutz Decl. ¶ 71. The redacted information

details the defendant's internal procedures for reviewing materials during the publication review

process. *Id.* The defendant claims that disclosure would risk circumvention of these procedures

because it would provide a "blueprint" on how to "game the system . . . by writing around the

CIA's PRB regulation." Def.'s Mot. at 24.

The plaintiff claims this argument "makes no logical sense." Pl.'s Opp'n at 23. "In what

manner would disclosing [the PRB procedures]," the plaintiff asks, "imbue . . . [individuals

submitting materials to the PRB] with the ability to trick the PRB's well-trained staff into not

noticing the existence of classified information . . . in a written document? How would such an

individual be in a position to 'force' the disclosure of . . . classified information?" *Id.* at 25-26.

The defendant responds by explaining that disclosure of the PRB procedures could, for example,

"allow a would-be author to tailor his or her writings to the PRB requirements, allowing him or

her to couch things in a way that could allow disclosure of information that could damage the

national security while passing PRB review."[4] Def.'s Reply at 15-16.

---

[4]     In addition, the plaintiff avers that some of the information that the defendant redacted in certain
versions of the handbook was disclosed in other versions. Pl.'s Opp'n at 24. The defendant
disputes this contention, asserting that it redacted information consistently across different
version of the handbook. Def.'s Reply at 14-15. Plainly, the plaintiff's contention that the
defendant failed to redact information consistently constitutes speculation, as the plaintiff has no
way of knowing what information the redacted portions of the handbooks contain. Therefore, the
court rejects the plaintiff's argument.

The court first addresses whether the redacted information is "used for predominantly internal purposes," *Crooker*, 670 F.2d at 1073, an issue the plaintiff appears to concede, *see* Pl.'s Opp'n at 22 (recognizing that the "high 2" exemption does not protect a document from disclosure solely because "it is designed for internal agency use").  Because the redacted information comes from internal CIA handbooks, the defendant easily meets the threshold requirement of predominant internality.  *Crooker*, 670 F.2d at 1073.  Thus, the court proceeds to the second prong, which requires the defendant to show that disclosure of the information may risk circumvention of the PRB procedures.  *Schwaner*, 898 F.2d at 794.  The court agrees with the defendant that an individual who sought to publish classified information could better circumvent the PRB if he or she knew the procedures by which the PRB made its decisions.  *See Nat'l Treasury Employees Union*, 802 F.2d at 530-31 (holding that disclosure of the documents withheld would undermine the validity and fairness of the applicant evaluation process).  Accordingly, the defendant properly redacted portions of the documents based on the "high 2" exemption.

## ii.  "Low 2" Exemption

The defendant asserted the "low 2" exemption to withhold "internal housekeeping matters" that have no genuine public interest.  Def.'s Reply at 17-18; *see also* Lutz Decl. ¶¶ 64-70. The plaintiff contests this withholding, claiming that the defendant has failed to provide more than vague references to the information withheld.  Pl.'s Opp'n at 26-28.  The plaintiff argues that the court should require the defendant to provide a more detailed explanation of the justification for the withholdings.  *Id.*

The defendant has the burden of establishing, through affidavits, that the materials

withheld under the "low 2" exemption "relate[] solely to the [defendant's] internal personnel rules

and practices" and are used predominantly for internal purposes, 5 U.S.C. § 552(b)(2), and that

they relate "to trivial administrative matters of no genuine public interest," *Schwaner*, 898 F.2d at

794. As for the first prong, the Lutz declaration asserts that the information withheld includes

internal regulations concerning the PRB, as well as

> CIA employee identification numbers and official titles; CIA employee telephone and
> fax numbers; the names and/or numbers for internal CIA regulations, publications,
> Employee Bulletins, review handbooks, reports, and forms; internal CIA
> organizational information, including but not limited to, component abbreviations;
> internal procedures used by the PRB to resolve intra-PRB disagreements regarding the
> damage to national security that could result from the publication of sensitive
> information; the CIA's internal policy regarding which CIA publications are exempt
> from the PRB regulation; the CIA's internal review process used to evaluate CIA
> employees' resumes; and the CIA's internal policy regarding the [Office of General
> Counsel's] ethics review of the circumstances surrounding the release of publications
> by CIA employees.

Lutz Decl. ¶ 64. These descriptions illustrate the predominantly internal nature of the materials

withheld. *Schiller*, 964 F.2d at 1207 (holding that "[t]hough terse, the [*Vaughn*] index describes

the content of each document in sufficient detail to justify a conclusion that each document

contains predominantly internal information").

Moving to the second prong, the Lutz declaration contends that the materials withheld are

of no genuine public interest because they do "not purport to regulate the public's activities or set

standards CIA personnel must follow when deciding whether to proceed against or take action

affecting members of the public." Lutz Decl. ¶ 64. Although the plaintiff maintains that the Lutz

declaration fails to justify in sufficient detail the defendant's invocation of the "low 2" exemption

by making "vague references to 'internal organizational information' and 'numbers for internal

regulations,'" Pl.'s Opp'n at 27, the court notes that the defendant provided a much more detailed

17

description of the information withheld than the "vague references" that the plaintiffs quote, *see*

Lutz Decl. ¶¶ 65-70 (detailing the information withheld under the "low 2" exemption document-

by-document).  Further, the court determines that the defendant has satisfied its burden by

explaining specifically what information it withheld and articulating its justification for the

withholding.  *Schiller*, 964 F.2d at 1207-08.  The defendant has persuaded the court that the

information withheld – including employees' personal information, internal regulations,

publications and procedures, internal organizational information – are of no genuine public

interest.  *Id.* (concluding that the defendant properly withheld documentation containing only

"trivial administrative matters").  Therefore, the defendant properly invoked the "low 2"

exemption.

### 4.  Exemption 3

#### a.  Legal Standard for Exemption 3 Withholding

Exemption 3 allows an agency to withhold or redact records that are "specifically

exempted from disclosure by statute . . . provided that such statute (A) requires that the matters be

withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes

particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C.

§ 552(b)(3).  In other words, the statute must "on its face, exempt matters from disclosure."

*Reporters Comm. for Freedom of the Press v. U.S. Dep't of Justice*, 816 F.2d 730, 735 (D.C.

Cir.), *modified on other grounds*, 831 F.2d 1124 (D.C. Cir. 1987), *rev'd on other grounds*, 489

U.S. 749 (1989).

#### b.  The Defendant Properly Invoked Exemption 3

All of the partially redacted documents contained information that the defendant withheld

18

based on Exemption 3 after determining that disclosure would reveal "CIA sources, methods, organization, functions, employee names, and official titles."  Lutz Decl. ¶¶ 74, 80; Def.'s Mot., Ex. 2 ("Lambert Decl.") ¶ 10.  In addition, the defendant invoked Exemption 3 to withhold three documents in their entirety.  *Id.* ¶ 8 n.6.  The defendant relies on the National Security Act, 50 U.S.C. § 403-1(i)(1), and the CIA Act, 50 U.S.C. § 403g, to justify its Exemption 3 withholdings.  Lutz Decl. ¶¶ 75-84.  The National Security Act requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure," 50 U.S.C. § 403-1(i)(1), and the CIA Act authorizes the defendant to withhold information that would disclose "the organization, functions, names, official titles, salaries, or numbers of [CIA] personnel," 50 U.S.C. § 403g.  Pointing out that these two withholding statutes do not require it to identify the damage to national security that could result from disclosure, the defendant contends that the Lutz declaration – which determines that the materials withheld contain information that relate to intelligence sources and methods – is entitled to substantial weight.  Def.'s Mot. at 18-19. The plaintiff concedes that the National Security Act and the CIA Act qualify as withholding statutes, but argues that the defendant's affidavits fail to specify how the materials withheld relate to intelligence sources and methods.  Pl.'s Opp'n at 19-21.  The plaintiff raises two disputes in particular: first, it contends that the defendant fails to address why it withheld the three documents in their entirety.  *Id.* at 21.  Second, the plaintiff argues that redacting "internal CIA regulation numbers" after defining them as "intelligence sources and methods" was improper because the defendant has disclosed the numbers of other internal CIA regulations on previous occasions.  *Id.* The defendant responds to the first point by observing that the Lutz declaration and the *Vaughn* index do, in fact, describe the three documents withheld and provide a specific justification for

invoking Exemption 3 to withhold them. Def.'s Reply at 8. As for the second point, the

defendant points out that internal regulation numbers are contained within employees' "names and

personal identifiers, . . . titles, file numbers, and internal organizational data" that the CIA Act

specifically exempts from disclosure. *Id.* at 8-9. Further, the defendant claims that the fact that it

disclosed internal regulation numbers in prior, unrelated litigation should not lead the court to

conclude that the defendant improperly withheld a different set of internal regulation numbers in

the instant action. *Id.* at 9.

When analyzing whether the defendant is entitled to invoke Exemption 3, the court need

not examine "the detailed factual contents of specific documents" withheld; rather, "'the sole

issue for decision is the existence of a relevant statute and the inclusion of withheld material

within the statute's coverage.' It is particularly important to protect intelligence sources and

methods from public disclosure." *Morley*, 508 F.3d at 1126 (quoting *Ass'n of Retired R.R.

Workers v. U.S. R.R. Ret. Bd.*, 830 F.2d 331, 336 (D.C. Cir. 1987)). The parties agree that the

National Security Act and the CIA Act are the two relevant withholding statutes; therefore, the

court need only determine whether the withheld material falls within the statutes' coverage, while

remaining cognizant of the importance of preventing the disclosure of intelligence methods.

*Morley*, 508 F.3d at 1126.

> Invoking Exemption 3, the defendant withheld
>
> a) internal CIA policies and regulations; b) CIA employee names; c) CIA employee
> identification numbers; d) CIA employee titles; e) CIA employee telephone numbers;
> f) CIA employee email addresses; g) CIA employee signatures; h) CIA employee fax
> numbers; i) internal CIA Web page URLs; j) CIA addresses; k) CIA regulation,
> publication, form, and Employee Bulletin names and numbers; l) the name of the
> CIA's intranet; and m) internal CIA organizational information.

Lutz Decl. ¶ 80. The CIA Act, which exempts from disclosure "the organization, functions,

names, official titles, salaries, or numbers of [CIA] personnel," plainly protects much of this information, including employee names, titles, signatures and identification numbers; telephone numbers, fax numbers, e-mail addresses and street addresses; internal URLs; and other internal organizational information.  As for the internal regulation, publication, form, and Employee Bulletin names and numbers, the court defers to the defendant's facially reasonable assessment that these materials would present a security risk if released, and therefore "require[] continued protection and [are] exempt from disclosure" under the CIA Act.  *Frugone v. CIA*, 169 F.3d 771, 775 (D.C. Cir. 199) (remarking, "[m]indful that courts have little expertise in either international diplomacy or counterintelligence operations," that the court was "in no position to dismiss the CIA's facially reasonable concerns" about the potential security risk that disclosure would cause).  Bearing in mind its obligation to give "substantial weight and deference" to the Lutz declaration, the court determines that all of the information withheld falls within the scope of the National Security Act and the CIA Act.  *See Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990).  Accordingly, the court holds that the defendant properly invoked Exemption 3.

### 5.  Exemption 5

Exemption 5 of FOIA protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  The Supreme Court and the D.C. Circuit both have construed Exemption 5 to "exempt those documents, and only those documents, normally privileged in the civil discovery context."  *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1184 (D.C. Cir. 1987).  In other words, Exemption 5 incorporates "all civil discovery rules."  *Martin*, 819 F.2d at 1185.  Thus, all discovery privileges

that exist in civil discovery apply to Exemption 5.  *United States v. Weber Aircraft Corp.*, 465

U.S. 792, 800 (1984).  The three traditional privileges that courts have incorporated into

Exemption 5 are the deliberative process privilege, the attorney work-product privilege and the

attorney-client privilege.  *Sears*, 421 U.S. at 149.  The defendant invoked all three privileges in

this case.

### a.  Deliberative Process Privilege

### i.  Legal Standard for Deliberative Process Privilege

The general purpose of the deliberative process privilege is to "prevent injury to the

quality of agency decisions."  *Sears*, 421 U.S. at 151.  The three specific policy objectives

underlying this privilege are: (1) to encourage open, frank discussions on matters of policy

between subordinates and superiors; (2) to protect against premature disclosure of proposed

policies before they are finally adopted; and (3) to protect against public confusion that might

result from disclosure of reasons and rationale that were not in fact ultimately the grounds for an

agency's action.  *Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982); *Coastal

States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980); *Jordan v. Dep't of

Justice*, 591 F.2d 753, 772-73 (D.C. Cir. 1978) (en banc).  In essence, the privilege protects the

"decision making processes of government agencies and focus[es] on documents reflecting

advisory opinions, recommendations and deliberations comprising part of a process by which

governmental decisions and policies are formulated."  *Sears*, 421 U.S. at 150 (internal quotations

omitted).  Thus, the deliberative process ensures that government agencies are not "forced to

operate in a fishbowl."  *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C.

Cir. 1992).

To invoke the deliberative process privilege, the defendant must establish two prerequisites. *Id.* First, the communication must be "predecisional"; in other words, it must be "antecedent to the adoption of an agency policy." *Jordan*, 591 F.2d at 774; *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1194 (D.C. Cir. 1991). In determining whether a document is predecisional, an agency does not necessarily have to point specifically to an agency's final decision, but need only establish "what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States*, 617 F.2d at 868. In other words, as long as a document is generated as part of such a continuing process of agency decision-making, the deliberative process protections of Exemption 5 may be applicable. *Id.*; *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) (holding that a document is predecisional if it was prepared to assist an agency in arriving at a decision, rather than supporting a decision already made).

Second, the communication must be deliberative; it must be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn*, 523 F.2d at 823-24. The critical factor in determining whether the material is deliberative in nature "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports*, 926 F.2d at 1195 (quoting *Dudman Communications Corp. v. Dep't of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987)).

### ii. The Defendant Properly Invoked the Deliberative Process Privilege with Respect to Only Six Out of the Eight Documents Withheld

Based on the deliberative process privilege, the defendant withheld information from eight documents: a memorandum from the Chairman of the PRB to the Director of the CIA; two legal memoranda from the PRB's Associate Legal Advisor to the PRB; a memorandum to the CIA's

Inspector General; two PowerPoint documents regarding the PRB; an Inspection Report on the PRB created by the CIA Inspector General; and a memorandum from the CIA's Deputy Director for Planning and Coordination to the CIA Inspector General.  Lutz Decl. ¶¶ 85, 92-97.  The plaintiff specifically objects to the invocation of the privilege only with respect to the two PowerPoint documents regarding the PRB (document numbers 1531057 and 1531058).  Pl.'s Opp'n at 32-33.

The defendant asserts that it properly withheld the PowerPoint documents because they "contain recommendations, analyses, and discussions designed to inform or assist in future decision-making processes."  Lutz Decl. ¶ 95.  But the plaintiff asserts that the defendant must specify what decision or policy the documents pertain to, "what role the documents would play in the course of those processes" and the position that the documents' authors occupy in the defendant's chain of command.  Pl.'s Opp'n at 32.  In response, the defendant maintains that it properly invoked the privilege because the recommendations made in the documents "aid in the development of the PRB policies and processes."  Def.'s Reply at 18.  The defendant also points out that the documents included "recommendations, analysis, and discussions regarding who should serve on the PRB and how the CIA could balance a would-be author's First Amendment rights with the PRB's thirty-day review timeline."  *Id.* at 19.  The defendant used these recommendations and analyses in briefings "exploring the policies of the PRB [and] educating individuals on the process."  *Id.* at 18.

For a document to be considered predecisional, "a court must be able 'to pinpoint an agency decision or policy to which the document contributed.'"  *Senate of P.R. on Behalf of the Judiciary Comm. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987) (citing *Paisley v. CIA*, 712 F.2d

686, 698 (D.C. Cir. 1983)).  In addition, the court should focus on two factors to determine

whether the document constitutes part of the deliberative process: "the nature of the

decisionmaking authority vested in the officer or person issuing the disputed document, and the

relative positions in the agency's 'chain of command' occupied by the document's author and

recipient."  *Senate of P.R.*, 823 F.2d at 585 (internal citations omitted).  Here, the defendant has

specified that the documents contributed to a specific policy, namely "who should serve on the

PRB and how the CIA could balance a would-be author's First Amendment rights with the PRB's

thirty-day review timeline."  Def.'s Reply at 19.  But because the defendant has failed to identify

the role played by the author of the PowerPoint documents, the court is unable to assess the

author's decisionmaking authority and the relationship between the documents' author and

recipient.  *See Senate of P.R.*, 823 F.2d at 585.  Therefore, the defendant has failed to persuade the

court that it properly invoked the deliberative process privilege with respect to the two

PowerPoint presentations.

### b.  Attorney Work-Product Privilege

### i.  Legal Standard for Attorney Work-Product Privilege

The second privilege under Exemption 5 is the attorney work-product privilege, which

protects documents and other memoranda prepared by an attorney in contemplation of litigation.

FED. R. CIV. P. 26(b)(3); *Hickman v. Taylor*, 329 U.S. 495, 509-10 (1947).  The privilege

encompasses "the mental impressions, conclusions, opinions, or legal theories of an attorney or

other representative of a party concerning the litigation."  *Id*.  The purpose of the privilege is to

protect the adversarial trial process by insulating the attorney's preparation from scrutiny.  *Jordan*,

591 F.2d at 775.  Accordingly, this privilege ordinarily does not attach until at least "some

25

articulable claim, likely to lead to litigation," has arisen. *Coastal States*, 617 F.2d at 865. The D.C. Circuit has explained that this privilege "extends to documents prepared in anticipation of foreseeable litigation, even if no specific claim is contemplated." *Schiller*, 964 F.2d at 1208. Moreover, the attorney work-product privilege protects both factual and deliberative materials. *Martin*, 819 F.2d at 1189.

### ii. The Defendant Properly Invoked the Attorney Work-Product Privilege

The defendant withheld two documents (numbered 1512156 and 1512157) based on both the work-product privilege and the attorney-client privilege, as well as a third (document number 1512155) based on the work-product privilege but not on the attorney-client privilege. Lutz Decl. ¶¶ 92-93. The plaintiff objects only to the invocation of the work-product privilege, and only with respect to document numbers 1512156 and 1512157. Pl.'s Opp'n at 34-35. By not opposing the invocation of the attorney-client privilege, the plaintiff concedes that the defendant properly withheld document number 1512156 and document number 1512157. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997) (noting that arguments not addressed are treated as conceded). Nonetheless, for the sake of thoroughness the court will address the propriety of invoking the work-product privilege with respect to these two documents.

The defendant claims that the documents contain legal advice that the PRB's Associate Legal Advisor gave to the PRB concerning the defendant's compliance with the PRB's prescribed timeline and the way in which the PRB reviews factual material in fictional manuscripts. Lutz Decl. ¶ 93. The defendant further asserts that the Associate Legal Advisor reasonably anticipated that there would be litigation over these two subjects. *Id.* The plaintiff counters that the defendant has failed to "provide a sufficiently adequate context in which to assess the extent to

which Document Numbers 1512156 and 1512157 were drafted in objectively reasonable

anticipation of litigation." Pl.'s Opp'n at 34.  The defendant replies that the Associate Legal

Advisor determined that it was reasonably foreseeable that litigation would ensue over

compliance with the PRB's timeline because the plaintiff's counsel himself has litigated the

PRB's timeline in at least two cases.  Def.'s Reply at 19-20.  In addition, the defendant's review

of factual matter in fictional manuscripts has been the subject of litigation in several cases.  *Id.* at

20.  Because the legal advice contained in the documents covered documents that the defendant

has frequently litigated, the court determines that litigation on these topics was reasonably

foreseeable when the documents were created, even though no specific claim was contemplated at

the time.  *Schiller*, 964 F.2d at 1208 (extending the work-product privilege to documents prepared

in anticipation of foreseeable litigation).  Therefore, the defendant properly invoked the work-

product privilege.

### 6.  Segregability

#### a.  Legal Standard for Segregability Requirement

FOIA mandates that "any reasonable segregable portion of a record shall be provided to

any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. §

552(b).  By 1977, it had "long been the rule in this Circuit that non-exempt portions of a

document must be disclosed unless they are inextricably intertwined with exempt portions."

*Mead Data*, 566 F.2d at 260.  The court "may rely on government affidavits that show with

reasonable specificity why documents withheld pursuant to a valid exemption cannot be further

segregated for this reason."  *Juarez v. Dep't of Justice*, 518 F.3d 54, 61 (D.C. Cir. 2008) (citing

*Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C.Cir.1996)).  The D.C. Circuit

has made clear that "the 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. Envtl. Prot. Agency*, 731 F.2d 16, 21 (D.C. Cir. 1984).  In fact, the segregability requirement is so essential to a FOIA inquiry that "it is error for a district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller*, 964 F.2d at 1210 (D.C. Cir. 1992) (quoting *Church of Scientology v. Dep't of Army*, 611 F.2d 738, 744 (9th Cir. 1979)).

To demonstrate that the withholding agency has disclosed all reasonably segregable material, the agency must supply "a detailed justification for [its] decision that non-exempt material is not segregable." *Mead Data*, 566 F.2d at 261.  The agency, however, is not required to provide so much detail that the exempt material effectively would be disclosed. *Id.*  Furthermore, conclusory language in agency declarations that do not provide a specific basis for segregability findings by a district court may be found inadequate. *Animal Legal Def. Fund, Inc. v. Dep't of Air Force,* 44 F. Supp. 2d 295, 301 (D.D.C. 1999) (Kollar-Kotelly, J.).  The D.C. Circuit, though expressly disclaiming any attempt to provide "an encompassing definition of 'conclusory assertions,'" noted that "it is enough that where no factual support is provided for an essential element of the claimed privilege or shield, the label 'conclusory' is surely apt." *Senate of P.R.*, 823 F.2d at 585.

**b.  The Defendant Properly Segregated Exempt Material from Non-Exempt Material**

The defendant states that it "has provided Plaintiff with as much non-exempt information as possible without compromising the interests in nondisclosure protected by the FOIA."  Def.'s Mot. at 31.  The plaintiff disputes this assertion, arguing that the defendant fails to present "any credible evidence that segregable portions of the records in question cannot be released."  Pl.'s

Opp'n at 35.  The plaintiff contends that by declaring simply that "it determined that any non-exempt information is so inextricably intertwined with the exempt information that there are no meaningful, reasonably segregable, non-exempt portions," the defendant has failed to fulfill its obligation to describe the process by which its segregability determinations were made.  *Id.* at 35-36 (citing Lutz Decl. ¶¶ 98-99).  The defendant responds by pointing out other portions of the Lutz declaration and the *Vaughn* index that describe the process by which the defendant reviewed documents for segregability and the reasons why additional information could not be released.  Def.'s Reply at 20-21 (citing Lutz Decl. ¶¶ 8, 24, 29, 64, 98-99).

The Lutz declaration explains the manner in which Information Review Officers undertook the "laborious and time-consuming" process of determining what information had to be segregated "to avoid the inadvertent disclosure of classified information, information concerning intelligence sources and methods and other information protected by FOIA exemptions."  Lutz Decl. ¶¶ 24-27.  It further asserts that the defendant withheld "non-exempt information [that was] so inextricably intertwined with the exempt information that there [were] no meaningful, reasonably segregable, non-exempt portions."  *Id.* ¶ 99.  Based on this explanation, the court is persuaded that the defendant adequately assessed the risk that exempt material would be disclosed and, accordingly, segregated exempt from non-exempt material.  *See Juarez*, 518 F.3d at 61 (determining that the agency's affidavits provided sufficient information regarding segregability because they stated that the agency "conducted a page-by-page review of all" responsive documents to determine what information was subject to exemptions, and "justified its inability to simply redact sensitive portions . . . from these documents by pointing out that" doing so would create a security risk).  Thus, the defendant has satisfied its burden of establishing that no portion

of the withheld documents can be segregated and released to the plaintiff.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion for summary judgment.[5]  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 26th day of March, 2009.


RICARDO M. URBINA
United States District Judge

---

[5]   As a result, the court rejects as moot the plaintiff's contention that it is entitled to discovery on this motion.  *See,* e.g., *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (holding that the plaintiff was not entitled to discovery because the court properly ruled on the motion for summary judgment based on the agency's affidavits alone).